UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| NICOLAS VALADEZ REY and <br> JESSICA LEANNE QUINN, <br> Individually, and as Next Friends of <br> E.Q., a Minor, J.Q., a Minor, and <br> I.Q., a Minor, <br> <br> **Plaintiffs,** <br> <br> v. <br> <br> GENERAL MOTORS LLC, <br> Serve: CSC of St. Louis County, Inc. <br> 130 South Bemiston Avenue <br> Suite 700 <br> Clayton, MO 63105 <br> <br> **Defendant.** | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br> <br> <br> <br> <br> <br> <br> <br> Civil Action No. 4:19-CV-00714-LMC <br> <br> <br> <br> <br> <br> <br> <br> JURY TRIAL DEMANDED |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs Nicolas Valadez Rey and Jessica Leanne Quinn, Individually, and as Next Friends of E.Q., J.Q., and I.Q., their Minor Children, for their Complaint against General Motors LLC, make the following allegations:

I.

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Nicolas Valadez Rey ("Nicolas") is a resident of Kansas City, Jackson County, Missouri and brings this lawsuit in his Individual capacity and as Next Friend of his Minor Children, E.Q., J.Q, and I.Q.

2. Plaintiff Jessica Leanne Quinn ("Jessica") is a resident of Kansas City, Jackson County, Missouri and brings this lawsuit in her Individual capacity and as Next Friend of his Minor Children, E.Q., J.Q., and I.Q.

3. Plaintiff E.Q., a Minor, is a resident of Kansas City, Jackson County, Missouri.

4. Plaintiff J.Q., a Minor, is a resident of Kansas City, Jackson County, Missouri.

5. Plaintiff I.Q., a Minor, is a resident of Kansas City, Jackson County, Missouri.

6. Defendant GENERAL MOTORS, LLC (hereinafter, "GM" or "Defendant") is a Delaware corporation with its headquarters in Detroit, Michigan. GM is authorized to conduct business in Missouri, conducts substantial and continuing business in Missouri and derives substantial economic profits from Missouri. GM may be served through its registered agent, CSC of St. Louis County, Inc., 130 South Bemiston Avenue, Suite 700, Clayton, MO 63105.

7. In 2009, GM LLC acquired substantially all of the assets of Motors Liquidation Company (formerly General Motors Corporation), and assumed certain liabilities of the former General Motors Corporation, including liability for the claims asserted in this action. (GM LLC and General Motors Corporation are hereinafter referred to collectively as "GM").

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 because there is complete diversity and the amount in controversy exceeds $75,000.00

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) because GM is subject to this Court's personal jurisdiction and therefore resides in this judicial district.

## II.

## FACTS

10. On the morning of August 31, 2019, Nicolas was driving his 2006 GMC Yukon XL, VIN 1GKFK66U06J133348 (the "Subject Vehicle") along Saltillo-Torreon Road in the Municipality of Parras De La Fuente, Coahuila, near Kilometer 157+090. His wife, Jessica, was in the front passenger seat, and their three minor children, E.Q., J.Q., and I.Q., were buckled in the backseat with them.

11. As Nicolas proceeded down the road, for unknown reasons, he lost control of the Subject Vehicle which then rolled off the level highway.



*Figure 1* The Subject Vehicle after the Rollover Event

12. During the rollover, the interior compartment of the vehicle, particularly over the driver's side of the vehicle, buckled and the roof crashed down on Nicolas.



*Figure 2* A side view of the Subject Vehicle after the Rollover Event

13. Nicolas suffered serious and permanent injuries, including, but not limited to: paraplegia from spinal shock, spinal trauma with a fracture and dislocation of the C6 and C7 discs; bilateral pulmonary contusions; dysesthesia; parathesia; subgaleal hematoma; has been on a mechanical ventilator that may require tracheostomy; among other complications. In all probability, there is a 95% chance that Nicolas will never walk again. He will never work again in the construction industry as he had prior to this near fatal injury to provide for his family. He will never enjoy the things he did prior to this injury. In addition, he will suffer the medical complications associated with paraplegia. Jessica has lost much about the husband she dearly loves. The children have suffered losses as well. Fortunately, Nicolas is still alive but his life is now very hard. The entire family will continue to suffer these losses and the effects of this incident for the rest of their lives.

14. Although properly belted, Nicolas could do nothing to escape a roof collapsing in on and crushing his head, neck, and body.



*Figure 3* The visor now sits below the steering wheel demonstrating how severe the roof crushed here and how much it intruded into the survival space of the occupant. This is *never* supposed to happen.

15. Jessica, who wore her seatbelt, was scratched up and sore from the rollover, but the roof did not crush over her head and she did not suffer the life-threatening and permanently disabling injuries her husband did.

16. The children, all of whom were properly belted, suffered injuries and had to be hospitalized as well. E.Q. suffered severe trauma to his face, requiring numerous stitches, as well as having "blood pockets" on his brain. J.Q. jaw was extremely swollen and during the rollover event bit her tongue almost severing it entirely. She now has a significant permanent speech impediment. I.Q. was badly scratched from the shattering glass on his sides, arms, and wrist.

17. The Subject Vehicle was originally designed, engineered, manufactured, tested, marketed, and placed into the stream of commerce by GM, where it reached the consumer in this case in substantially the same condition as when it left the control of GM. It had not been materially altered, modified, or damaged.

18. Immediately prior to the accident on August 31, 2019, the Subject Vehicle was in substantially the same condition as when it left the control of GM and had not been materially altered, modified, or damaged prior to this incident.

19. At the time of the accident, the Subject Vehicle was being used as intended and in a manner reasonably foreseeable to GM.

20. At the time the Subject Vehicle was sold new, it was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended when it left GM's control. Specifically, control of the vehicle was inexplicably lost, it rolled while it was on the pavement, and the integrity of the roof was not maintained, as it should have been, which thereby crushed Nicolas' head and caused his life-altering, life-threatening permanently disabling injuries. This is a classic "roof crush" case. The vehicle was not equipped with certain safety features such as electronic stability control, rollover protection, and rollover protection airbags, despite those safety features being known, available, and economically feasible at the time the vehicle was manufactured.

21. The accident and danger posed by the defective and unreasonably dangerous condition of the Subject Vehicle was known or should have been known to GM.

22. The Subject Vehicle failed to function as expected.

23. Alternative feasible designs existed that would not impair the Subject Vehicle's usefulness or desirability.

24. The alternative feasible designs would have prevented the harm and Plaintiffs' injuries, particularly those of Nicolas.

25. As a direct and proximate result of GM's conduct, acts and omissions, Plaintiffs, especially Nicolas, suffered devastating, permanent, and life-threatening injuries and other physical, mental, emotional injuries, and economic damages.

26. At all times relevant to the Plaintiffs' Petition, GM designed, manufactured, marketed, and sold the subject 2003 Chevrolet C1500 Suburban, VIN 1GNEC16Z83J220730, which the Decedent owned and was driving when the incident which took her life occurred.

27. Yukons have a high center of gravity making them more prone to rolling over even on pavement, as was the case here. In other words, the vehicles do not have to be taken off road in order to experience this heightened risk of rollover. These vehicles are particularly dangerous in rollover events because a roof crush can occur if the integrity of the support beams are not maintained resulting in roof collapse and crush. This is all known to GM and was at the time this vehicle was designed, tested, manufactured, and marketed.

28. Had the roof not been defective and lacking in the structural integrity, Nicolas would have had the same, more positive outcome as his wife who was sitting next to him. Rollovers are imminently survivable events. Published literature indicates, without ejection, that about 97.4% of belted and 92.2% of unbelted occupants in rollovers had less than an AIS Level 3 injury. But that does not apply when the roof crushes.

29. Generally, rollovers are actually relatively benign events and most occupants walk away with minor injuries (as did the other passengers in the vehicle) – but that assumes that the crashworthiness safety systems are installed and do not fail, and that the structural integrity and strength of the roof are maintained. Moreover, expert biomechanical analysis has been conducted

of over 900 full scale laboratory tests with male and female pilots with nominal accelerations being at 10 g. Some of the tests had accelerations of approximately 15 g. No injuries resulted to any of the test subjects. Therefore, the level of acceleration measured at the vehicles' center of gravity during a rollover event is within human tolerances.

30. GM may claim or argue that no safety features could have avoided the injuries suffered by Nicolas and that his injuries were unavoidable. GM may try to blame Nicolas. However, it should be noted that Nicolas' wife, who was in the front passenger seat next to him, and who was also properly belted, walked away from this accident with minor injuries. The primary issue here is that the roof was defective in that it did not maintain its structural integrity above the driver.

31. Photographic evidence makes the unreasonably dangerous nature of the vehicle, especially due to the failure of the roof to maintain its structural integrity, indisputable as shown above.

### III.

### CAUSES OF ACTION

**A.  COUNT I – STRICT PRODUCT LIABILITY**

32. Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

33. GM designed, tested, manufactured, fabricated, assembled, distributed, warranted, marketed, and/or sold the Subject Vehicle, with one or more design defects, more particularly set forth in the preceding paragraphs in this Complaint, including a roof that was not crashworthy, lack of ESC, lack of rollover prevention, and lack of rollover safety canopy airbags. GM designed the 2006 GMC Yukon XL and knew of safer alternative designs that existed at the time of

production that would have prevented or significantly reduced the above risks without substantially impairing the vehicle's utility, and was economically and technologically feasible at the time that the subject vehicle left GM's control by the application of existing or reasonably achievable scientific knowledge. GM breached its duty to design a reasonably safe, crashworthy vehicle, which was the proximate cause of the injuries described herein.

34. GM knew that the Subject Vehicle would reach consumers without substantial change in the condition in which it was sold and that, at the time the Subject Vehicle left GM's control, it was defective and in an unreasonably dangerous condition when used as foreseeably intended and involved in a motor vehicle accident, which was likewise reasonably foreseeable.

35. The design of the product is inconsistent with a consumer's reasonable expectations of safety when using the products as intended by GM. Indeed, consumers who purchase and drive large SUVs like expect them to be safer, sturdier, made of heavier, stronger steel, and that they will protect them in the event of crashes, including rollovers. They do not expect them to cave in as this one clearly did and crush its drivers or passengers.

36. The design defects, manufacturing defects, or both, rendered the 2006 GMC Yukon XL unreasonably dangerous by making the automobile dangerous to an extent beyond that which would be contemplated by the ordinary consumer with the knowledge common to the community as to its characteristics. The vehicle was unreasonably dangerous as designed, tested, manufactured, marketed, distributed, assembled, and/or tested because GM knew and/or should have know of the following non-exhaustive list of defects:

    a. The Subject Vehicle failed to provide proper rollover protection;
    b. The Subject Vehicle allowed excessive roof crush and did not maintain adequate survival space for all occupants;
    c. The Subject Vehicle failed to have electronic stability control to help prevent a rollover event;

d. The Subject Vehicle failed to have a rollover safety canopy, or rollover airbags;
   e. The structure of the Subject Vehicle, including the roof, doors, body joints, supporting pillars, and driver side structural support was defective and unreasonably dangerous because it failed to protect the occupants in a foreseeable accident sequence such as a rollover event;
   f. The Subject Vehicle was manufactured with insufficient bonds, welds, and seams of the driver side structural support; and/or
   g. Such further defects as the evidence will reveal.

37. The foregoing action and/or omissions of GM were the producing, direct, and/or proximate causes of the injuries and damages of all Plaintiffs for which GM is strictly liable. GM failed to use technologically feasible and available alternatives for each of the defects set forth above.

38. GM failed to adequately test the Subject Vehicle before and during the design, production, and sale of the Subject Vehicle to the public and/or knowingly placed the dangerously designed and defective vehicle into the stream of commerce.

39. GM also rendered the Subject Vehicle defective and unreasonably dangerous by failing to adequately warn consumers about the hazard of driving the vehicle with a defective and/or inadequately designed, tested, and manufactured electronic stability control, structural system, and rollover protection system.

40. At this point, GM is in possession of all the technical materials and other documents regarding the design, manufacture, and testing (if any) of the vehicle in question. GM is also in possession of what, if any, engineering analysis and testing it performed. GM is also in possession of information as to how susceptible to loss of control, rollover, and roof crushes its Yukons (and sister vehicles such as Tahoes) are in general and the 2006 Yukon XLs in particular. Preliminary research indicates that this is far from an isolated incident.

41. However, it is expected that after all of these materials are produced in discovery and after GM's employees and corporate representatives have been deposed, additional allegations and defects may come to light.

42. The defective and unreasonably dangerous condition of the Subject Vehicle was the direct and proximate cause of Nicolas' catastrophic, permanent injuries and the injuries and damages of all Plaintiffs in this case.

43. Plaintiffs, especially Nicolas, have suffered and will continue to suffer severe physical and emotional pain and mental anguish.

44. Plaintiffs have become indebted for extensive reasonable and necessary medical care and treatment and will continue to incur further expenses in the future. Nicolas will need permanent and continuous medical care, including in-home nursing care and assistance, for the rest of his life. Jesslyn will need corrective surgeries, speech and other therapies, and other medical care as well.

45. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Vehicle, Nicolas' ability to labor and earn wages and income has been, and will continue to be, lost, diminished, and/or impaired.

46. At the time GM sold the Subject Vehicle, GM knew of the defective condition of it.

47. The aforesaid misconduct of GM constituted gross indifference and a willful, wanton, and reckless disregard for the safety of the general public, including Plaintiffs.

**B.  COUNT II – NEGLIGENCE**

48. Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

49. At all times relevant to the Complaint, GM owed to the general public, including Plaintiffs, a duty to design, test, manufacture, and market only such vehicles as were not defective and unreasonably dangerous to use.

50. GM breached its duty to Plaintiffs by designing, manufacturing, and marketing the 2006 GMC Yukon, including the Subject Vehicle, in a defective and unreasonably dangerous condition, in that the Subject Vehicle's electronic stability control, structural system, and air bad system, were defective and unreasonably dangerous as set forth above. Additionally, the Subject Vehicle was not crashworthy and lacked available technologically feasible safety features and alternative designs as set forth above.

51. GM was negligent in designing, manufacturing, and/or selling the 2006 GMC Yukon XL, with one or more design defects, more particularly set forth above.

52. GM knowingly failed to adequately inspect and/or test the 2006 GMC Yukon, including the Subject Vehicle, before and during the design, production, and sale of the vehicle to the public and/or knowingly placed the defective and unreasonably dangerous vehicle in the stream of commerce.

53. GM negligently, recklessly, and/or knowingly sold the 2006 GMC Yukon, including the Subject Vehicle, without technologically available safety features, despite being fully aware of the important benefits provided by such systems.

54. GM negligently, recklessly, and/or knowingly failed to warn of the potential dangers posed to consumers and the public by the use of the Subject Vehicle.

55. GM's negligent acts included, but are not limited to, the following acts and/or omissions:

a. Negligently designing and manufacturing the vehicle from and occupant protection and occupant containment standpoint including negligently designing and manufacturing the restraint system, body joints, roof, pillars, and driver side structural support;
b. Negligently failing to test the vehicle to ensure the design provided reasonable occupant protection and occupant containment in the event of a rollover;
c. Failing to disclose and warn of known defects and problems;
d. Failing to meet or exceed internal corporate guidelines;
e. Failing to comply with the standards of care applicable in the automotive industry insofar as providing reasonable occupant protection and occupant containment in a rollover;
f. Failing to comply with applicable and necessary Federal Motor Vehicle Safety Standards;
g. Failing to notify consumers, as required by law, that a defect existed in the vehicle that related to public safety;
h. Negligent design and manufacture of the airbag system, body joints, roof, pillars, and driver side structural support, which caused them to fail during the rollover in question, to the extent that some of these systems were even in the Subject Vehicle;
i. Negligently selecting body and pillar materials;
j. Negligently designing and manufacturing the body and pillars;
k. Negligently failing to test the body joints in order to ensure that they would not fail during a rollover;
l. Negligently failing to test the welds, seams, and bonding of the roof, pillars, and driver side structural support to ensure that they would not fail during a rollover;
m. Negligent failure to warn of the dangers associated with the defective airbag system, body joints, roof, pillars, and driver side structural support;
n. Negligent failure to disclose post-sale information known about the dangers and defects associated with the airbag system, body joints, roof, pillars, and driver side structural support;
o. Negligent concealment of the known dangers and defects associated with the airbag system, body joints, roof, pillars, and driver side structural support;
p. Negligent failure to warn consumers of known airbag system, body joints, roof, pillars, and driver side structural support failures during rollovers; and
q. Such further negligent and careless acts and omissions as the evidence and discovery will reveal.

56. At all times relevant herein, GM knew or should have known, by the use of ordinary care, of the above described dangerous conditions of the Subject Vehicle, and, at all relevant times

herein, Plaintiffs did not know, and by using ordinary care, could not have known, of such dangerous conditions and defects.

57. The defective and unreasonably dangerous condition of the Subject Vehicle was the direct and proximate cause of Nicolas' catastrophic, permanent injuries and the injuries and damages of all Plaintiffs in this case.

58. Plaintiffs, especially Nicolas, have suffered and will continue to suffer severe physical and emotional pain and mental anguish.

59. Plaintiffs have become indebted for extensive reasonable and necessary medical care and treatment and will continue to incur further expenses in the future. Nicolas will need permanent and continuous medical care, including in-home nursing care and assistance, for the rest of his life. Jesslyn will need corrective surgeries, speech and other therapies, and other medical care as well.

60. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Vehicle, Nicolas' ability to labor and earn wages and income has been, and will continue to be, lost, diminished, and/or impaired.

61. At the time GM sold the Subject Vehicle, GM knew of the defective condition of it.

62. The aforesaid misconduct of GM constituted gross indifference and a willful, wanton, and reckless disregard for the safety of the general public, including Plaintiffs.

C. **COUNT III – LOSS OF CONSORTIUM**

63. Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

64. At all times relevant hereto, Plaintiff Jessica Leanne Quinn was the lawfully wedded spouse of Plaintiff Nicolas Valadez Rey.

65. As a direct result of the conduct of GM as described above, Jessica sustained the loss of services, society, companionship, and consortium of her husband. She also sustained expenses for the necessary medical care, treatment, and services received by her husband. Jessica will continue to sustain such losses in the future. Further, Jessica has sustained extreme emotional distress and mental anguish brought about by seeing her husband's injuries, the effects they are having, have had, and will continue to have on him, and their marriage and family.

## PRAYER

WHEREFORE, Plaintiffs Nicolas Valadez Rey and Jessica Leanne Quinn, Individually, and as Next Friends of E.Q., J.Q., and I.Q., their Minor Children pray for judgment against General Motors LLC for a fair and reasonable amount in excess of Seventy-Five Thousand Dollars ($75,000.00), for actual damages; medical bills in the past and future; lost earning capacity and lost wages, in the past and future; mental anguish, pain, and suffering, in the past and future; costs and attorney fees; pre- and post-judgment interest; and for such other relief as is warranted in this matter.

Respectfully submitted,

**BRENES LAW GROUP, P.C.**

/s/ *Adam M. Evans*
ADAM M. EVANS
Missouri Bar #60895
Email: aevans@breneslawgroup.com
800 E. 101st Street, Suite 350
Kansas City, MO 64131
T: (949) 397-9360
F: (949) 607-4192

        **LEGER KETCHUM & COHOON, PLLC**

        /s/ *Bradley L. Leger*
        **BRADLEY L. LEGER**
        *(Pro Hac Vice Application Forthcoming)*
        Texas State Bar No. 24039899
        SDTX Bar No. 38360
        Email: bleger@lkclawfirm.com
        **KASSI DEE PATRICK MARKS**
        *(Pro Hac Vice Application Forthcoming)*
        Texas State Bar No. 24034550
        Email: kmarks@lkclawfirm.com
        10077 Grogan's Mill Road, Suite 325
        The Woodlands, Texas 77380
        T: 832.764.7200
        F: 832.764.7211

        **ATTORNEYS FOR PLAINTIFF**