**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **NICOLAS VALADEZ REY and** | § | |
| **JESSICA LEANNE QUINN,** | § | |
| **Individually, and as Next Friends of** | § | |
| **E.Q., a Minor, J.Q., a Minor, and** | § | |
| **I.Q., a Minor,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:19-CV-00714-** |
| | § | |
| **GENERAL MOTORS LLC,** | § | |
| | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

---

**PLAINTIFFS' MOTION TO EXCLUDE GM's EXPERT**
**DAVID M. CADES, Ph.D. and SUPPORTING SUGGESTIONS**

---

COME NOW, Plaintiffs, by and through their undersigned attorneys, and submit their Motion to Exclude GM's Expert David M. Cades, Ph.D. and Supporting Suggestions, and in support thereof state as follows:

## I.
### SUMMARY OF MOTION

Defendant General Motors LLC ("GM") has designated David M. Cades, Ph.D. to opine on human factors issues in the case. Plaintiffs submit that Dr. Cades' testimony should be excluded because his opinions lack a reliable basis in fact, are not sufficiently linked to the facts in this case, would not be helpful to the jury in the determination of the pertinent facts in this case, and are irrelevant.

## II.
### STATEMENT OF FACTS[1]

This case was filed on June September 6, 2019. (Doc. 1.) Plaintiffs Fourth Amended Complaint was filed August 18, 2020. (Doc. 61.) As set forth therein:

> 10. On the morning of August 31, 2019, Nicolas was driving his 2006 GMC Yukon XL, VIN 1GKFK66U06J133348 (the "Subject Vehicle") along Saltillo-Torreon Road in the Municipality of Parras De La Fuente, Coahuila, near Kilometer 157+090. His wife, Jessica, was in the front passenger seat, and their three minor children, E.Q., J.Q., and I.Q., were in the backseat with them. All were properly buckled which has been confirmed by the physical evidence in this case, *inter alia*. Unfortunately, however, the occupant protection system in the Subject Vehicle, which includes both the safety belt restraint system and the roof, failed to provide the protection is should have due to defective designs in both.

*Id.* at ¶10.

Plaintiffs allege a tire failure – a punctured tired – caused Mr. Rey to lose control of the vehicle which then rolled over resulting in a roof crush over Mr. Rey. *Id.* at ¶11-13.

Mr. Rey suffered a catastrophic injury resulting in permanent quadriplegia. *Id.* at ¶¶13-23. The other passengers had only minor injuries consistent with a rollover. *Id.*

Plaintiffs have alleged defects in the occupant protection system of the vehicle which includes both the safety belt restraint system and the roof. *Id.* at ¶¶10, 24-42. Plaintiffs allege GM knows of these defects and risks to consumers. *Id.* at ¶¶43-46. Plaintiffs also allege that GM has a history of blaming injured drivers and victims. *Id.* at ¶47-49.

Plaintiffs have brought a crashworthiness case involving allegations of strict

---

[1] Plaintiffs set forth the basic facts in this case in terms of the pleadings and allegations. Additional facts relevant to opinions given will be set forth in the Supporting Suggestions, *infra*.

Case 4:19-cv-00714-DGK   Document 86   Filed 10/09/20   Page 2 of 23

product liability and negligence claims for design defects and failure to warn. *Id*. at ¶¶50-88. Plaintiff Jessica Quinn has also brought a claim for loss of consortium. *Id*. at ¶¶89-91. Plaintiffs seek damages for medical bills (past and future), lost earning capacity for Mr. Rey (past and future), mental pain and anguish (past and future), attorneys fees, costs, and interest. *Id*. at 28.

The Scheduling and Trial Order of December 9, 2019, requires the following for Expert Designations and Reports:

> 3. **Expert Witnesses**. Any witness who will give an expert opinion is an expert witness. Plaintiff shall designate any expert witnesses it intends to call at trial on or before <u>April 2, 2020</u>, and Defendant shall designate any expert witnesses it intends to call at trial on or before <u>May 4, 2020</u>. This requirement applies to all witnesses—retained or non-retained—from whom expert opinions will be elicited at trial. All expert witnesses must submit an expert report as provided in paragraph 4, with a partial exception for treating physicians as discussed in paragraph 5.

> 4. **Affidavits for Experts**. Along with each party's designation of expert witnesses, each party shall provide the other parties with an affidavit from each expert witness. The affidavit shall include a complete statement of all opinions to be expressed and the basis and reasons therefor, the data or other information considered by the witness in forming the opinions, any exhibits to be used as a summary of or support for the opinions, the qualifications of the witness (including a list of all publications authored by the witness within the preceding ten years), the compensation to be paid for the study and testimony, and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Expert witnesses may testify only as to matters contained in the affidavit described above unless leave of Court is granted upon good cause shown.

Doc. 20 at 2-3.

The deadlines were most recently extended in this Court's July 2, 2020, Order Granting in Part Third Motion to Amend Scheduling Order and Setting Trial Date. (Doc.

41.) Plaintiffs' expert reports were served timely pursuant to this Order on August 3, 2020.[2]

In response, GM timely served its expert designations on September 1, 2020. (**Ex. A**.) This

included the designation of Dr. Cades. (**Ex. B**.) Plaintiffs chose not to depose him.

---

[2] The previous deadline for Plaintiffs' expert designations pursuant to the prior extension was July 1, 2020. (Doc. 33 extending the deadlines set out in Doc. 26.) Plaintiffs were still operating under these deadlines and served their initial expert designations timely on that date before the latest extension was granted.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

III.    PLAINTIFFS' SUPPORTING SUGGESTIONS ................................................1

      A.    Introduction ................................................................................1

      B.    The Applicable Legal Standards & Considerations ...................................1

            1.  The Legal Standard for Expert Testimony .............................................1

            2.  The Enhanced Injury Doctrine Dictates What Expert
               Testimony Is Relevant & Admissible in this Case ................................5

      C.    The Legal Standards Applied to Dr. Cades' Opinions ..............................9

            1.  Dr. Cades' First, Second and Fourth Opinions: ................................10

            2.  Dr. Cades' Third Opinion: ....................................................................12

            3.  Dr. Cades' Fifth Opinion: .....................................................................13

            4.  Dr. Cades' Sixth Opinion: ....................................................................14

IV.    CONCLUSION ......................................................................................15

### CASES

*Barrett v. Rhodia, Inc.*,
    606 F.3d 975 (8th Cir. 2010) ...................................................................................4

*Bavlsik v. Gen. Motors, LLC*,
    No. 4:13- cv-0509-DDN (E.D. Mo. Sept. 8, 2015) ..................................................6

*Blue Dane Simmental Corp. v. Am. Simmental Ass'n*,
    178 F.3d 1035 (8th Cir. 1999) ..................................................................................3

*Bogosian v. Mercedes–Benz of N. Am., Inc.*,
    104 F.3d 472 (1st Cir. 1997) ....................................................................................3

*Claar v. Burlington N.R. Co.*,
    29 F.3d 499 (9th Cir. 1994) ......................................................................................4

*Cryts v. Ford Motor Co.*,
    571 S.W.2d 683 (Mo. App. E.D. 1978) ....................................................................7

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) ..............................................................................2, 4

*Daubert v. Merrel Dow Pharmaceuticals*,
    509 U.S. 579 (1993) ......................................................................................1, 2, 3, 4

*Donze v. Gen. Motors, LLC*,
    420 S.C. 8 (2017) ......................................................................................................6

*General Electric Co. v. Joiner*,
    522 U.S. 136 (1997) ..............................................................................................2, 4

*Gerow v. Mitch Crawford Holiday Motors*,
    987 S.W.2d 359 (Mo. Ct. App. W.D. 1999).........................................................5, 6

*Kumho Tire Co. v. Carmichael*
    526 U.S. 137 (1999) ..........................................................................................2, 3, 4

*LaHue v. General Motors LLC*,
    716 F. Supp. 407 (W.D. Mo. 1989) ..........................................................................5

*Larsen v. General Motors Corp.*,
    391 F.2d 495 (8th Cir. 1968) ....................................................................................5

*Lauzon v. Senco Products, Inc.,*
    270 F.3d 681 (8th Cir. 2001) ....................................................................1, 2, 4, 5

*McGuire v. Davidson Mfg. Corp.,*
    238 F. Supp. 2d 1096 (N.D. Iowa 2003) ..................................................2

*Moore v. Ford Motor Co.,*
    332 S.W.3d 749 (Mo. 2011) ................................................................14

*Nesselrode v. Executive Beechcraft, Inc.,*
    707 S.W.2d 371 (Mo. banc 1986) .....................................................5, 7

*Norman v. Textron Inc.,*
    2018 WL 3199487 (W.D. Mo. 2018) ....................................................5

*Peitzmeier v. Hennessy Indus., Inc.,*
    97 F.3d 293 (8th Cir. 1996) ..................................................................3

*Polk v. Ford Motor Co.,*
    529 F.2d 259 (8th Cir. banc 1976) .......................................................7

*Reinken v. Big Game Tree Stands,*
    2018 WL 10625889 (N.D. Iowa) ......................................................2, 3

*Roberts v. Gen. Motors*, LLC,
    No. 4:13-cv-0541-CAS (E.D. Mo. 2015) .............................................6

*Thornton v. Gray Automotive Parts Co.,*
    62 S.W.3d 575 (Mo. Ct. App. W.D. 2001).......................................5, 6

*Threats v. Gen. Motors Corp.,*
    890 S.W.2d 327 (Mo. Ct. App. E.D. 1994) ......................................5, 7

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,*
    254 F.3d 706, 715 (8th Cir. 2001) .......................................................3

## R<small>ULES</small>

Federal Rule of Evidence 702 ..................................................................1, 2, 3

**III.**
**PLAINTIFFS' SUPPORTING SUGGESTIONS**

**A.     Introduction**

Dr. Cades' opinions are completely irrelevant in this enhanced injury doctrine crashworthiness case. They are entirely focused on the cause of the accident, rather than the cause of the injuries to Mr. Rey in this case. As such, even were they not otherwise inadmissible – *e.g.*, for lacking reliable bases – they should be excluded in their entirety.

**B.     The Applicable Legal Standards & Considerations**

**1.     *The Legal Standard for Expert Testimony***

"The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence."[3]

Expert testimony must meet the requirements of Federal Rule of Evidence 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*[4] and its progeny, guide and govern how Rule 702 is applied. The Eight Circuit sets out the standard:

The ***proposed expert testimony must meet three prerequisites in order to be admitted under Rule 702***. 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.02[3] (2001). First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. *Id.* This is the basic rule

---

[3] *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) citing *Daubert, infra*, 509 U.S. at 592.
[4] 509 U.S. 579 (1993).

of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. *Id*. Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires ...." *Id*.; *see also Daubert,* 509 U.S. at 591, 113 S.Ct. 2786.[5]

To summarize: the expert's testimony must be (1) relevant to deciding an ultimate issue of fact; (2) the expert must be qualified; and (3) the evidence must be reliable.

First, the evidence must be relevant and relate to issues in the case, which is sometimes referred to as "fit."[6] Stated another way, "[e]ven a theory that might meet certain *Daubert* factors, such as peer review and publication, testing, known or potential error rate, and general acceptance, ***should not be admitted if it does not apply to the specific facts of the case***."[7] ***An expert must consider all relevant facts when forming his opinions***; otherwise, "[i]f a party believes that an expert opinion has not considered all of the relevant facts, an objection to its admission is appropriate." *Id*. If the opinion offered is not sufficiently tied to the facts of the case, it will not aid a jury in resolving the factual dispute, and will not be helpful or relevant to the jury.[8]

Second, the evidence must be presented by a qualified expert. The determination of whether a witness is qualified is largely guided by Rule 702 above. "A court should consider the expert's practical experience and academic or technical training when determining whether an expert is qualified to give an opinion in a certain area."[9]

---

[5] *Id*. at 686.
[6] *Concord Boat*, 207 F.3d at 1055 citing *Daubert*, 509 U.S. at 591.
[7] *Concord Boat*, 207 F.3d at 1056 (emphasis added) citing *Kumho Tire,* 526 U.S. at 154; *Joiner*, 522 U.S. at 146. The expert in question in *Concord* was found to have "ignored inconvenient evidence" and did not "incorporate all aspects of the economic reality" when rendering his economic opinions and should not have been admitted. *Id*. at 1056-1057.
[8] *Lauzon*, 270 F.3d at 694.
[9] *Reinken v. Big Game Tree Stands*, 2018 WL 10625889, at *7 (N.D. Iowa 2018) citing *McGuire v. Davidson Mfg. Corp.*, 238 F. Supp. 2d 1096, 1101 (N.D. Iowa 2003).

"Furthermore, an expert witness cannot testify beyond the scope of his expertise."[10] An expert can be qualified for certain of his opinions, but then go beyond those qualifications for others.[11]

Third, the evidence must be reliable. *Lauzon* continued with the analysis for determining reliability:

> The basis for the third prerequisite lies in the recent amendment of Rule 702, which adds the following language to the former rule: "(1) the testimony is **based upon sufficient facts or data**, (2) the testimony is the product of **reliable principles and methods**, and (3) the witness has **applied the principles and methods reliably** to the facts of the case." Fed. R. Evid. 702. The language of the amendment codifies *Daubert* and its progeny. *Id*. Comm. Note.

> In *Daubert*, the U.S. Supreme Court emphasized the district court's gatekeeper role when screening expert testimony for relevance and reliability. *Daubert*, 509 U.S. at 591–93, 113 S.Ct. 2786; *see also Blue Dane Simmental Corp*. *v*. *Am. Simmental Ass'n,* 178 F.3d 1035, 1040 (8th Cir. 1999) (during the evaluation "of expert testimony under Federal Rule of Evidence 702, the district court must look to both the relevancy and the reliability of the testimony"). *Daubert* provides a number of <u>**nonexclusive factors**</u> a court can apply in performing this role: "(1) whether the theory or technique 'can be (and has been) tested'; (2) 'whether the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) whether the theory has been generally accepted." *Peitzmeier v*. *Hennessy Indus*., *Inc*., 97 F.3d 293, 297 (8th Cir. 1996) (citing *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786). *Daubert* 's progeny provides <u>**additional factors**</u> such as: whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case. *Bogosian v*. *Mercedes–Benz of N*. *Am*., *Inc*., 104 F.3d 472, 479 (1st Cir. 1997) (finding testimony of the expert and the plaintiff must be sufficiently related); *Daubert v*. *Merrell Dow Pharm*., *Inc*., 43 F.3d 1311, 1317 (9th Cir. 1995) (addressing whether opinion was developed naturally out of research or solely for litigation);

---

[10] *Id*. citing *Wheeling Pittsburgh Steel Corp*. *v*. *Beelman River Terminals, Inc*., 254 F.3d 706, 715 (8th Cir. 2001).
[11] *See, e.g*., *Reinken*, 2018 WL 10625889, at *11.

*Claar v. Burlington N.R. Co.*, 29 F.3d 499 (9th Cir. 1994) (discussing **whether the expert accounts for obvious alternative explanations[12]**).[13]

The Supreme Court in *Kumho Tire Co. v. Carmichael* then clarified that *Daubert* applied to non-scientific experts, but re-iterated that "a trial court *may* consider one or more of the specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability" but emphasized flexibility and that the "list of specific factors neither necessarily nor exclusively applies to all experts or in every case."[14] But such flexibility can only go so far. The Supreme Court has long explained that:

> conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But **nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *A court may conclude that there is simply too great an <u>analytical gap</u> between the data and the opinion proffered.*[15]**

*Kumho Tire* noted that "**where such [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question**, [ ] the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline."[16] In addition, it should be noted that where an unreliable basis forms the opinions of one expert that other experts rely upon for their opinions, those are likewise unreliable.[17] That will be an issue for Dr. Cades and an additional reason why his own opinions lack a reliable foundation and are inadmissible.

---

[12] This is an issue in several of the Motions to exclude GM's experts that Plaintiffs filed, including this one.
[13] 270 F.3d at 686-87; *see also, Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010).
[14] 526 U.S. 137, 141 (1999) (emphasis in original).
[15] *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (emphasis added); *see also, Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055 (8th Cir. 2000).
[16] 526 U.S. at 149 (emphasis added).
[17] *See, e.g., Barrett*, 606 F.3d at 982 (expert's opinions about the source of the plaintiff's toxic tort exposure was properly stricken when based entirely on another expert's opinion in the case "which had been deemed excessively speculative").

2. ***The Enhanced Injury Doctrine Dictates What Expert Testimony Is Relevant & Admissible in this Case***

(a) **The Law**

This is a crashworthiness[18] case and as such any alleged negligence on the part of Plaintiffs in causing the accident itself is not admissible under the enhanced injury or second collision doctrine. The fairly recent case of *Norman v. Textron Inc.* is instructive and sets out the law in this regard:

> Here, the Court finds that Plaintiff's comparative fault, as well as the fault of others in causing the original accident, is not admissible in this crashworthiness, enhanced injury case, and therefore, Plaintiff's motions in limine[19] 1-6 should be granted. ***In a crashworthiness, enhanced injury case, "[i]f the plaintiff's use (or misuse) of the product sets the injury-causing sequence in motion, and that use was reasonably foreseeable by the manufacturer, then the doctrine holds that the plaintiff's conduct is not relevant***." *Thornton v. Gray Automotive Parts Co.*, 62 S.W.3d 575, 587 (Mo. Ct. App. W.D. 2001) (citing *Gerow v. Mitch Crawford Holiday Motors*, 987 S.W.2d 359, 362-363 (Mo. Ct. App. W.D. 1999)). "The U.S. Court of Appeals for the Eighth Circuit noted that Missouri courts have found *misuse* to be reasonably anticipated." *Gerow*, 987 S.W.2d at 363 (emphasis in original) (internal citations omitted); *See also Threats v. Gen. Motors Corp.*, 890 S.W.2d 327, 329 (Mo. Ct. App. E.D. 1994) (quoting *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 381 (Mo. banc 1986) ("The concept of reasonably anticipated use ... includes misuse and abnormal use which is objectively foreseeable.")).
>
> The Court finds Plaintiff's operation of the forklift in this case to be a reasonably anticipated and foreseeable use of a rough terrain forklift. Even assuming *arguendo* that the operation of the forklift in the original accident by Plaintiff was a misuse of the forklift, such ***misuse would still be reasonably foreseeable***. The Court believes that the operation of the forklift in this case is an objectively foreseeable use of a rough terrain forklift on a construction site. *See Gerow*, 987 S.W.2d at 363 ("The fact that Barbara

---

[18] "Crashworthiness" was succinctly defined in *LaHue v. General Motors LLC*, as "products liability cases concerning manufacturers' duty to use reasonable care in designing automobiles." 716 F. Supp. 407, 409, n.1 (W.D. Mo. 1989) citing *Larsen v. General Motors Corp.*, 391 F.2d 495, 503 (8th Cir. 1968). The *LaHue* Court continued: "Ordinarily the injuries occur when, in an accident, occupants collide with the interior of their cars or are thrown from the cars and collide with something else. The cases also are known variously as 'second collision' cases and 'enhanced injury' cases. They focus on injuries attributable to alleged design defects, rather than initial impacts." *Id.*

[19] While *Norman* is in the context of motions *in limine*, for the purposes of determining the relevance and helpfulness of expert opinion it is analogous, and its guidance is appropriate to consider.

Gerow was ***driving the vehicle on a highway was an intended use. Driver error which resulted in unintentional misuse was therefore reasonably foreseeable, and the nature of the error was irrelevant to proving an enhanced injury claim.***") (internal citations omitted).

The Court acknowledges that Mo. Rev. Stat. §537.765 provides that "[t]he doctrine of pure comparative fault shall apply to products liability claims." However, this statute, which became effective July 1, 1987, was in effect and cited to by the Missouri Court of Appeals in Gerow. It appears to this Court that the precedent in the state of Missouri, albeit not by the Missouri Supreme Court, is that ***in crashworthiness, enhanced injury cases, the fault of Plaintiff in causing the original accident is not to be considered if the use, or even misuse, of the product was reasonably anticipated***. *Gerow*, 987 S.W.2d at 362-63; *B.B. v. Cont'l Ins. Co.*, 8 F.3d 1288, 1291 (8th Cir. 1993) (internal citations omitted) ("Decisions of Missouri's intermediate appellate courts are not binding on this court, but they are persuasive authority, and this court must follow them when they are the best evidence of Missouri law."). *See also Bavlsik v. Gen. Motors, LLC*, No. 4:13- cv-0509-DDN (E.D. Mo. Sept. 8, 2015); *Roberts v. Gen. Motors, LLC*, No. 4:13-cv-0541-CAS (E.D. Mo.); *Donze v. Gen. Motors, LLC*, 420 S.C. 8, 25, 800 S.E.2d 479, 488 n.3 (2017) (citing *Thornton v. Gray Automotive Parts Co.*,[20] 62 S.W.3d 575 (Mo. Ct. App. W.D. 2001) and Missouri as being a state that does not allow comparative negligence in crashworthiness cases). Having found Plaintiff's operation of the forklift to be a reasonably anticipated use, the Court finds any fault of behalf of Plaintiff in causing the original accident to be irrelevant and inadmissible in this crashworthiness, enhanced injury case.[21]

The Court concluded, "Plaintiff's fault, as well as the fault of his employer and others, in causing the original accident is not admissible in this crashworthiness, enhanced injury case."[22] *Gerow* involved defenses by Chrysler alleging, just as GM does in the case *sub judice*, that Ms. Gerow had fallen asleep and veered off the highway causing the accident.[23] But the enhanced injury doctrine distinguishes between the cause of the accident versus the cause of the injury.[24] The *Gerow* Court explained:

---

[20] *Thornton* made clear the enhanced injury doctrine an "evidentiary issue." 62 S.W.3d at 588.
[21] 2018 WL 3199487, at *2 (W.D. Mo. 2018) (emphasis added).
[22] *Id.* at *3.
[23] 987 S.W.2d at 363.
[24] *Id.*

The U.S. Court of Appeals for the Eighth Circuit noted that Missouri courts have found *misuse* to be reasonably anticipated. *Polk [v. Ford Motor Co.]*, 529 F.2d [259] at 266 [(8th Cir. banc 1976)]. "[T]he intended use doctrine necessarily includes foreseeable consequences of (unintentional) misuse." *Id.* "The concept of reasonably anticipated use includes misuse ... and abnormal use which is objectively foreseeable." *Threats v. General Motors Corp.*, 890 S.W.2d 327, 329 (Mo. App. E.D. 1994) (*quoting Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 381 (Mo. banc 1986)). ***The fact that Barbara Gerow was driving the vehicle on a highway was an intended use***. Driver error which resulted in unintentional misuse was therefore reasonably foreseeable, and the nature of the error was irrelevant to proving an enhanced injury claim. *Cryts [v. Ford Motor Co.]*, 571 S.W.2d [683] at 687 [(Mo. App. E.D. 1978)]. ***Chrysler's suggestion that Barbara Gerow fell asleep or was not alert inappropriately suggested comparative fault in the context of a claim which should have centered entirely on whether the design of the vehicle and placement of the fuel tank contributed to the fuel-fed fire***.[25]

The Court also noted that:

***Since <u>any error</u> on the part of Barbara Gerow which might have caused the original accident is irrelevant in this enhanced injury case, Chrysler's argument as to the reasonableness of her failure to correct her direction was unwarranted***. This is particularly so since the trial court had already found that there was no evidence that Barbara Gerow failed to use the vehicle as reasonably anticipated by the manufacturer or that she used it for a purpose not intended by the manufacturer. Indeed, the trial court had ruled that, ***for purposes of the enhanced injury theory, veering off the roadway and being involved in an accident was a reasonably anticipated use***.[26]

The nature of this crashworthiness case and the evidentiary doctrine that applies to such cases cannot be ignored even at this stage of the proceedings.

### (b) The Pertinent Facts of this Case Applied to the Enhanced Injury Doctrine

It is undisputed that Nicolas Rey was driving the vehicle on a roadway in Mexico at the time of the accident.[27] Plaintiffs contend there was a tire puncture that preceded the loss of control and rollover, which is supported by the Police Report, photographs,

---

[25] *Id.* (emphasis added).
[26] *Id.* (emphasis added).
[27] *See,* Ex. C, Police Report at 1.

Plaintiffs' testimony, and Plaintiffs' accident reconstructionist, Dr. Ziejewski's report.[28] GM contends that Mr. Rey was speeding, inattentive, and fell asleep or dozed off and that caused the accident.[29] Even if GM were correct, these are not misuses of the Subject Vehicle; rather, everything GM claim Nicolas did wrong is considered a reasonably anticipated use under the law. GM admits that rollovers are foreseeable accidents.[30] Importantly, it is undisputed that Mr. Rey was properly wearing his seatbelt which GM's own expert Michael E. Klima admits in his report.[31] Notably, Dr. Cades did not review this report in preparing his own or take into consideration this crucial detail.[32]

The evidence is that but for the roof crush and/or combination of roof crush and excess excursion, Mr. Rey would not have received the catastrophic injuries that he did.[33] It is undisputed that no one else in the vehicle suffered the same level of catastrophic injuries that Mr. Rey did. In other words, but for the design defects alleged, Mr. Rey would not have been injured excessively as he was in this case. Mr. Rey is not seeking recovery for injuries associated with the rollover, but only the roof crush. None of GM's experts

---

[28] *See,* Ex. C at 26; Ex. D, Expert report of Dr. Mariuz Ziejewski, at 9; Ex. E, Plaintiff Jessica Quinn's Deposition Excerpts, at 70:20-71:8; Ex. F, Plaintiff Nicolas Rey's Deposition Excerpts, at 12:9-15.
[29] *See,* Ex. B, Dr. Cades' Report at 8, 26, 33-34; Ex. G, GM's Expert Nicholas J. Durisek, Ph.D., P.E.'s Report at 15-16; *see also,* Ex. C at 17.
[30] *See,* Ex. H, GM Corporate Representative Deposition Excerpts, at 92:2-5.
[31] *See,* Ex. I, GM's Expert Michael E. Klima's Report, at 8, 9. Mr. Klima conducted a surrogate study with a man roughly the same height and weight of Mr. Rey who then wore the seatbelt as the measurements show Mr. Rey must have. It was determined that "the length of webbing exhibited by the scene photograph is similar to the length of webbing documented for the properly belted surrogate driver" *Id.* at 8. Thus, the conclusion has to be that Mr. Rey was also properly wearing his seatbelt. *Id.* To make matters even clearer, Mr. Klima also states, "there is no physical evidence of misuse of the seatbelt." *Id.* at 9. *See also,* Ex. L, Dr. Marth's Report at 6, 7, 10, and 12, which Dr. Cades also did not review but agrees with Klima's conclusion.
[32] *See,* Ex. B at Appendix B, the List of Materials that Dr. Cades reviewed which does not include Klima's. The full implications of this omission for Dr. Cades' opinions will be explored more fully *infra*. It should also be noted that the fact that Mr. Rey was properly belted means that there can be no failure to mitigate or comparative fault in the cause of his injuries. *See, e.g.*, *Norman*, 2018 WL 3199486, at *2 ("evidence regarding any comparative fault attributable to Plaintiff in causing his enhanced injuries, including his failure to wear a seatbelt, is admissible in this case") (other citations omitted).
[33] Ex. D at 27; 42, ¶21.

make this distinction including Dr. Cades who only discusses the "incident" which is clearly referring to the accident itself and not the injuries Mr. Rey received. For instance, Dr. Cades states in his report: "In suggesting that the incident would not have occurred if a warning were present, Dr. Laux [Plaintiffs' human factors expert] fails to acknowledge that case facts are consistent with driver inattention and fatigue, and that scientific literature suggests that inattention, fatigue, and distraction are predominant."[34] It is clear that the focus is entirely on the cause of the accident, not the cause of the injuries to Mr. Rey. All of GM's experts likewise all conflate the cause of the accident with the cause of Mr. Rey's injuries, but logically, factually, and legally, that cannot be done.

Thus, this is a classic crashworthiness, enhanced injury, or second collision case as described above. The issue is not what caused the *accident*, but what caused the *injuries*. Although Plaintiffs vehemently dispute that Mr. Rey was in any way responsible for or negligent in the occurrence of the accident, that is not what caused his injuries; GM's defective vehicle did. Whatever preceded the accident that GM claims is Mr. Rey's fault is irrelevant and inadmissible in this case. As a result, even if Dr. Cades was fully qualified to render each opinion and each opinion were properly supported with reliable facts and foundations and tied specifically to this case, his testimony is entirely irrelevant and inadmissible as a matter of law.

**C.    The Legal Standards Applied to Dr. Cades' Opinions**

For the reasons set forth above regarding the enhanced injury doctrine, Dr. Cades' testimony should be precluded entirely as inadmissible. In the alternative and in addition,

---

[34] Ex. B at 33. The only time Dr. Cades addresses roof crush at all is when he is reciting the facts or allegations of Plaintiffs or their experts' opinions. He does not independently address roof crush or the cause of Mr. Rey's injuries at all.

Dr. Cades offers six opinions which are inadmissible for running afoul of the relevant expert opinion analysis, which Plaintiffs take in turn.

1. **_Dr. Cades' First, Second, and Fourth Opinions_**

Dr. Cades' first, second, and fourth opinions are very similar and rely on the same unreliable foundations to support them and are all fatally flawed as a result. The opinions are stated as follows:

- [1] An alert and attentive driver in the position of Mr. Rey had sufficient cues to maintain position in the roadway.
- [2] Mr. Rey was not alert and attentive at the time of the incident.
- [4] The subject incident is consistent with driver fatigue.[35]

These opinions fail to take into consideration that there is evidence and testimony of a tire blowout that preceded the accident, which Dr. Cades notes in his report but then dismisses this in conclusory fashion as follows: "According to the accident reconstruction analysis conducted by defense expert Dr. Durisek, there is no evidence of tire failure, rather the puncture marks and tears in the left-front and left-rear tire are consistent with damage that occurred during the rollover event. Thus, any opinion relying on a tire blowout is irrelevant and has nothing to do with this incident."[36] Dr. Cades did not take into consideration all of the facts and evidence available to him which makes his opinion here unreliable under the law set forth above. He does not explain why the evidence of punctures in the tires is not considered, as set forth in Dr. Ziejewski's report. He also does not explain

---

[35] Exhibit B at 33.

[36] _Id_. at 31. Dr. Cades states that: "Testimony that Mr. Rey was not asleep at the time of the incident does not negate evidence suggesting that Mr. Rey was driving under conditions of inattention and fatigue." _Id_. at 27. Why? Dr. Cades does not explain why sworn testimony by the witnesses to the incident is negated by "evidence suggesting...inattention and fatigue." The only evidence is a Police Report's assumption based on a lack of tire marks that GM admits would not be there anyway because of ABS brakes. The better evidence that is summarily dismissed is that of a tire blowout which can result in the same accident sequence which Dr. Cades neither acknowledges nor excludes as an obvious alternative cause of the incident.

why he ignores this part of the Police Report and deposition testimony. In addition, he relies entirely on Dr. Durisek's unreliable opinions as bases for his own opinions.[37] Thus, Dr. Cades' opinions must be stricken for this reason.

Dr. Cades also dismisses without explanation the testimony that Mr. Rey was alert and not sleeping when the accident happened and looks only to the Police Report.[38] Indeed, Mr. Rey actually felt the blowout happen, something he could not have done were he asleep at the time. Dr. Cades does not explain why he ignores this testimony in his opinions which means he has failed to rule out other causes of the accident. Much of Dr. Cades' report is based on what literature has shown can happen under various circumstances that he lacks the evidence to tie to the facts of this case.[39]

Importantly, the Police Report was not an accident reconstruction and no qualifications are given for those who drafted it. It relies solely on the lack of tire marks for the conclusion that Mr. Rey must have been sleeping or dozing. The Police Report does not state any alternative explanation for a lack of tire marks on the road and then rule them out; nor do GM's experts Dr. Durisek and Dr. Cades. An important fact is that the Subject Vehicle was equipped with ABS brakes which even GM counsel admits prevents skidding, when he stated on the record while deposing Ms. Quinn: "…it's actually not a good idea to pump the brakes. You just want to press the brake hard. That prevents the skidding with that."[40] It is simply too great an analytical gap and too speculative to conclude that Mr. Rey

---

[37] Plaintiffs' Motion to Exclude Dr. Durisek is incorporated herein by reference as if set forth fully.
[38] Ex. B at 5; *but see*, Ex. E at 78:7-22 (Ms. Quinn testified that she heard the blowout and was familiar with that sound, having experienced a blowout before. She also testified that her husband was not asleep). Mr. Rey testified that he was not asleep and felt the tire blowout just prior to losing control of the vehicle. Ex. F at 12:9-17.
[39] *See, e.g.*, Ex. B at 19-25.
[40] Ex. E at 76:19-24.

was sleeping and that caused the rollover in this case based on the true state of the evidence.

Specifically, with regard to his first opinion, Dr. Cades does not state what cues were relevant and went unheeded for Mr. Rey in the context of a tire blowout and loss of control relating therefrom. Specifically, with regard to his second opinion, Dr. Cades states definitively that "Mr. Rey was not an alert and attentive driver at the time of the incident." However, he does not explain clearly how he can state that given the contrary evidence. But then for his fourth opinion, Dr. Cades states that "The subject incident is consistent with driver fatigue." However, that does not state that the incident was *caused* by driver fatigue as opposed to anything else, such as a tire blowout. Dr. Cades does not have sufficient reliable bases to support his first, second, and fourth opinions and they should be excluded.

### 2. *Dr. Cades' Third Opinion*

Dr. Cades' third opinion is: "Mr. Rey's excessive speed increased his likelihood of a crash."[41] Dr. Cades is not qualified as an accident reconstructionist and his opinion in this regard seems entirely dependent upon that of Dr. Durisek. Both ignore the testimony that Mr. Rey and Mrs. Quinn both testified that Mr. Rey was not speeding at the time.[42] Dr. Cades does not address the questions raised in Dr. Ziejewski's report about the veracity and reliability of the data concerning the speed in the CDR report.[43] Other than relying on Dr. Durisek's opinion, which is itself unreliable as discussed in that Motion to Exclude, Dr. Cades has no reliable bases upon which to render this opinion. In addition, Dr. Cades is speaking generally here and not rendering an opinion specific to this case. He does not

---

[41] Ex. B at 33.
[42] Ex. E at 79:11-17; Ex. F at 13:15-16.
[43] Ex. D at 14-16.

say that Mr. Rey's alleged excessive speed *did* or *more likely than not* caused this crash or his injuries. As the case law above holds, he must tie his opinions to the facts of this case. He did not do so here. Dr. Cades' third opinion should be excluded.

### 3. *Dr. Cades' Fifth Opinion*

Dr. Cades' fifth opinion is: "Information available to Mr. Rey, if read, understood, and followed, would have allowed him to avoid this incident."[44] Dr. Cades' opinion here is problematic because it is so general and not clearly tied to the facts of this case. Dr. Cades relies on the 2006 GMC Yukon Denali XL Owner's Manual, the Missouri Driver's Guide, and the Kansas Driving Handbook (which was odd because the Plaintiffs were licensed Missouri drivers).[45] He quotes extensive passages from them that contain tips and warnings about sitting in a reclined seat, wearing seatbelts, driving off road, airbags, driving up steep hills, wheel sizes, speed, fatigue, distracted driving, and so forth. Dr. Cades does not explain how each of these is relevant to the facts, injuries, and claims involved in this case.

The only potentially relevant quotations are to the Owner's Manual, none of which discuss the risk of rollover in the event of a tire blowout, much less a roof crush in the event of a rollover.[46]  And, most critically of all, none of them warn a driver or occupant of this GM vehicle that even wearing their seatbelt, they will not be protected from a catastrophic injury where there is a rollover with roof crush, which is what happened here. Dr. Cades does not explain how Mr. Rey – a properly belted driver[47] – failed to follow any of these

---

[44] Ex. B at 34.
[45] Ex. B at 11-18.
[46] *Id*. at 12.
[47] Indeed, Dr. Cades seems to ignore the undisputed fact – indeed the fact proven up by GM's own expert, Mr. Klima – that the Plaintiffs were belted and spends a good bit of his report addressing the importance of seatbelts. Ex. B at 28-29.

warnings and how that affected the roof crush and cause of Mr. Rey's injuries in this rollover. Given that Dr. Cades never addresses the real issue – the cause of Mr. Rey's injuries – he never provides any opinions that are relevant, including those related to warnings.[48] His fifth opinion should be excluded.

### 4. *Dr. Cades' Sixth Opinion*

Dr. Cades' sixth opinion is: "Dr. Laux's analysis and opinions related to warnings, purchasing decisions, and the factors that contributed to the incident are flawed, unsupported by scientific literature, and inconsistent with the facts of this incident."[49]

The criticism of Dr. Laux's[50] opinions suffers the same fatal flaw as so many of the rest of Dr. Cades' opinions: he focuses on the alleged cause of the accident, not the cause of the injury and the nature of the defect that caused that injury. There was no warning in this case that would have let Plaintiffs know that even properly belted, in the event of a rollover, the seatbelt would not protect them from a roof could crushing in on an occupant rendering them quadriplegic.[51] That is indisputed and unaddressed by Dr. Cades. It is not merely the rollover risk, but that the rollover risk here is higher along with the potential to have a roof crush in on the occupant – who even properly belted – is not protected.

Similarly, Dr. Cades' opinions also fail to take into consideration what the nature of a failure to warn claim entails.[52] There is a particular danger that Plaintiffs faced because

---

[48] He also undermines his report and opinions blaming Mr. Rey when he acknowledges that: "Although SUVs have an increased risk of rollovers, SUVs are perceived by drivers as safe vehicles." Ex. B at 25.
[49] Exhibit B at 34.
[50] Ex. J, the Expert Report of Dr. Lila Laux, Plaintiffs' Human Factors Expert.
[51] Ex. H at 290:15-19; 292:9-17. GM admitted it did not warn consumers.
[52] Among the elements of a cause of action for strict liability failure to warn are: "(2) the product was unreasonably dangerous at the time of the sale when used as reasonably anticipated without knowledge of its characteristics; (3) the defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) the plaintiff was damaged as a direct result of the product being sold without an adequate warning." *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. 2011). Missouri law presumes that Plaintiffs would have heeded any warnings. *Id.* at 762. Plaintiffs have also pleaded failure to

of the defects inherent in this vehicle that they were not warned about. Dr. Cades does not correctly represent the Plaintiffs' testimony about whether they would have purchased this vehicle had they been warned about this catastrophic injury occurring from the defects in this vehicle.[53] Dr. Cades ignores that he pointed out that consumers believe larger SUVs to be safer.[54] Plaintiffs had no warnings to tell them otherwise. As to the rest, Dr. Laux herself addressed the flaws in Dr. Cades' report and his criticism of her.[55] Dr. Cades has no reliable bases to opine as he has with regard to his sixth opinion which should be excluded entirely.

## IV.
### CONCLUSION

Plaintiffs respectfully request that the Court GRANT Plaintiffs' Motion to Exclude Dr. Cades in his entirety and such other and further relief to which they are entitled.

---

warn under negligence.
[53] Ms. Quinn was asked "[i]f car companies told you about all the different ways you could be injured in a car crash, would that stop you from buying cars or riding in them?" to which she responded, "No…" Ex. E at 35:12-19. That is very different than if she had been asked about this particular injury in this particular vehicle. *Mr. Rey testified that had he known of the roof crush risk, he would not have driven the Yukon or put his family into it.* Ex. F at 41:8-12. Plaintiffs thought the Escalade was an entirely different vehicle than the Yukon. *Id*. at 41:13-23.
[54] Ex. B at 25. Dr. Cades' mention of open and obvious risks that do not require warnings and the risk of "overwarning" in the context of criticizing Dr. Laux is unavailing. Ex. B at 32. These defects are latent. And Dr. Cades and GM do not even admit they exist, so of course, they have not warned of them nor are they open and obvious.
[55] Ex. K at 92:12-93:8; 140:16-147:7.

Respectfully submitted,

**LEGER KETCHUM & COHOON, PLLC**

*/s/ Bradley L. Leger*
**BRADLEY L. LEGER**
Attorney in Charge
*(Admitted Pro Hac Vice)*
Texas State Bar No. 24039899
S.D. TX Bar No. 38360
Email: bleger@lkclawfirm.com
**KASSI DEE PATRICK MARKS**
*(Admitted Pro Hac Vice)*
Texas State Bar No. 24034550
Email: kmarks@lkclawfirm.com
10077 Grogan's Mill Road, Suite 325
The Woodlands, Texas 77380
T: 832.764.7200
F: 832.764.7211

**ADAM M. EVANS**
Missouri Bar #60895
Email: aevans@breneslawgroup.com
800 E. 101st Street, Suite 350
Kansas City, MO 64131
T: (949) 397-9360
F: (949) 607-4192

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the foregoing on the 9th day of October, 2020, via the Court's electronic filing system, which will generate a notice to all counsel of record.

*/s/ Bradley L. Leger*
BRADLEY L. LEGER