IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

NICHOLAS VALADEZ REY and
JESSICA LEANNE QUINN,
Individually, and as Next Friends of E.Q.,
a Minor, J.Q., a Minor, and I.Q., a Minor,

        Plaintiffs,        Civil Action No. 4:19-CV-00714-DGK

    v.        **ORAL ARGUMENT REQUESTED**

GENERAL MOTORS LLC,

        Defendants.

**DEFENDANT GENERAL MOTORS LLC'S SUGGESTIONS IN OPPOSITION TO
PLAINTIFFS' MOTION TO EXCLUDE DAVID M. CADES, Ph.D.**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

A.     Dr. Cades' opinions on the cause of the crash are admissible because Plaintiffs have a separate failure to warn claim that GM LLC is entitled to defend and because the foreseeability of Mr. Rey's product misuse is a fact issue for the jury. ........... 2

     1.     Mr. Rey's comparative fault is admissible to defend against Plaintiffs' separate failure-to-warn claims. ............................................................................. 2

     2.     The jury must determine whether Mr. Rey's product misuse of driving inattentively at 92 mph was reasonably foreseeable. ............................................. 5

B.     Plaintiffs' substantive challenges to Dr. Cades' opinions all go to weight and not admissibility. ................................................................................................. 6

     1.     Dr. Cades' opinions relating to the cause of the crash are reliable. ....................... 6

     2.     Dr. Cades' opinions about the crash circumstances are also helpful to the jury. ... 8

     3.     Plaintiffs obfuscate Dr. Cades' fifth summary opinion. ......................................... 9

     4.     Plaintiffs' criticism of Dr. Cades' final summary opinion – his critique of Dr. Laux – offers no basis for exclusion. ........................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*C.C. v. Suzuki Mgf. Am. Corp.*,
No. 4:16CV1271ERW, 2018 U.S. Dist. LEXIS 137022 (E.D. Mo. Aug. 14, 2018) ................................................................................................................................5

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ................................................................................................6, 9

*Dejana v. Marine Tech., Inc.*,
No. 4:11-CV-1690-JAR, 2013 U.S. Dist. LEXIS 42204 (E.D. Mo. Mar. 26, 2013) .............................................................................................................................2, 5

*Hose v. Chicago Nw. Transp. Co.*,
70 F.3d 968 (8th Cir. 1995) ................................................................................................6

*Kuhn v. Wyeth, Inc.*,
686 F.3d 618 (8th Cir. 2012) ................................................................................................11

*Morris v. Mitsubishi Motors N. Am., Inc.*,
782 F. Supp. 2d 1149 (E.D. Wash. 2011) ................................................................................................6

*N. States Power Co. v. City of Ashland*,
12-cv-602-bbc (W.D. Wis. Apr. 16, 2015) ................................................................................................7

*Olson v. Ford Motor Co.*,
481 F.3d 619 (8th Cir. 2007) ................................................................................................7

*Samuel v. Ford Motor Co.*,
112 F. Supp. 2d 460 (D. Md. 2000) ................................................................................................8

*Storie v. Duckett Truck Ctr., Inc.*,
No. 4:06 CV 1238 DDN, 2007 U.S. Dist. LEXIS 92083 (E.D. Mo. Dec. 14, 2007) ................................................................................................7

*Stutzman v. CRST, Inc.*,
997 F.2d 291 (7th Cir.1993) ................................................................................................8

*United States v. 1014.16 Acres of Land*,
558 F. Supp. 1238 (W.D. Mo. 1983), *aff'd*, 739 F.2d 1371 (8th Cir. 1984) ................................7

*United States v. Oldrock*,
867 F.3d 934 (8th Cir. 2017) ................................................................................................5

**State Cases**

**State Cases**

*Cryts v. Ford Motor Co.*,
 571 S.W.2d 683 (Mo. Ct. App. 1978)........................................................................2

*State v. Price*,
 165 S.W.3d 568 (Mo. Ct. App. 2005).......................................................................9

**State Statutes**

Mo. Stat. § 537.765..........................................................................................2, 3, 5

# DEFENDANT GENERAL MOTORS LLC'S SUGGESTIONS IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DAVID M. CADES, Ph.D.

The Court should deny Plaintiffs' Motion to Exclude GM LLC's expert human factors scientist, David M. Cades, Ph.D. (Doc. 86, the "Motion".)

Dr. Cades primarily focuses on Plaintiffs' defective warnings claims, offering a critique of the opinions of Plaintiffs' human factors expert, Dr. Lila Laux. Dr. Cades opines that her opinions are "flawed, unsupported by scientific literature, and inconsistent with the facts of this incident." (*See* Doc. 86, at Ex. B (hereinafter "Cades Report") at 34.) Dr. Cades also formed human factors opinions about Mr. Rey's driving behavior leading up to the rollover crash at issue. Specifically, he concludes that Mr. Rey was not an alert, attentive driver and that excessive speed likely contributed to the crash. (*Id*. p. 25-29.)

None of these opinions are objectionable, but Plaintiffs largely cut and paste their attacks from their separate motion attacking Dr. Nicholas Durisek to mount similar attacks here. These arguments are no better the second time around. For example, Plaintiffs still do not enjoy immunity from contrary expert testimony merely because they have styled their case as a crashworthiness claim. Dr. Cades' opinions on the cause of the crash are admissible to rebut Plaintiffs' failure to warn claims; likewise, they go to Mr. Rey's product misuse. Further, Plaintiffs' substantive critique of Dr. Cades' other opinions—to the extent that the random collection of bric-a-brac can even be called "substantive"—goes to weight and not admissibility. The jury can hear those arguments (for whatever they are worth), but they are no reason to exclude Dr. Cades' testimony outright.

**A.  Dr. Cades' opinions on the cause of the crash are admissible because Plaintiffs have a separate failure to warn claim that GM LLC is entitled to defend and because the foreseeability of Mr. Rey's product misuse is a fact issue for the jury.**

As discussed further in GM LLC's response to Plaintiffs' motion relating to Dr. Durisek, Missouri law generally deems a plaintiff's comparative fault irrelevant in pure "crashworthiness" cases. But this exception to the general rule of admissibility does not limit Dr. Cades' opinions here. This case is *not* a "pure" crashworthiness case, and Dr. Cades' testimony goes directly to two key disputed issues.

**1.  Mr. Rey's comparative fault is admissible to defend against Plaintiffs' separate failure-to-warn claims.**

So long as Plaintiffs continue to pursue failure to warn claims, the default rule applies that Mr. Rey's comparative fault for causing the crash is admissible. *See e.g.*, Mo. Stat. § 537.765. Missouri courts bar evidence of accident-causing fault only in strict liability design and manufacturing defect causes or actions involving enhanced injury, second collision allegations. *Dejana v. Marine Tech., Inc.*, No. 4:11-CV-1690-JAR, 2013 U.S. Dist. LEXIS 42204, at *8 (E.D. Mo. Mar. 26, 2013)*; see also Cryts v. Ford Motor Co.*, 571 S.W.2d 683, 687 (Mo. Ct. App. 1978) (second collision doctrine applies to cases "in which the construction or design of its product has caused separate or enhanced injuries"). But a failure to warn claim is distinct from a manufacturing or design defect claim. The point need not be belabored any further; GM LLC further explained this in its response to the motion relating to Dr. Durisek, and it incorporates that analysis by reference here.

Moreover, Plaintiffs' Complaint puts the rollover risk of the subject vehicle directly at issue. (*See e.g.* 4th Am. Comp. ¶¶ 43, 85. ¶ 43.) And, as Plaintiffs' expert Dr. Laux stated in her deposition, Plaintiffs contend GM LLC should have warned consumers about a general risk of *rollover* for all SUVs:

> Q. All right. So what I understand from your report is that because of your understanding of the characteristics of SUVs, they should have a warning that advises purchasers about the specific risk of rollover, is that fair to say?
>
> A. Yes, I do. And I think NHTSA has agreed with me generally, although they don't carry it over to vehicles of this size and weight, they certainly were interested in warning people. I have a little 2002 Ford Explorer that doesn't have that warning in it, it's a sport, so it's a small one. So they were interested in doing this, but somehow it never got done.

(*See* Doc. 94, Ex. B to Declaration of Michael Cooney in Support of GM LLC's Opposing Suggestions, Laux Dep., at 29:4-15; *see also id*. at 41:25 – 42:5.) Dr. Cades' opinions relating to the cause of the crash – inattention and speeding – therefore, are not only admissible for all purposes permitted under Mo. Stat. § 537.765, but they also tend to prove SUV roll propensity was not what caused this crash.

Further, no one seems to challenge the notion that Mr. Rey's poor driving, as opposed to increased roll propensity, caused the vehicle to roll. First, Plaintiffs' accident reconstructionist, Dr. Ziejewski, conceded that he will not opine that some defect beyond Mr. Rey's control caused this accident:

> Q. All right. I just want to make sure when we get to trial that we're not going to hear you and your colleagues give an opinion that the crash occurred because of a defect in the vehicle?
>
> A. The defect of the tire.
>
> Q. There was a defect in the tire that caused the crash?
>
> A. No, no, you said vehicle again.
>
> Q. That, that caused the crash to occur, caused the rollover to occur, something in the tire which would be part of the vehicle?
>
> A. I understand what you are –
>
> Q. That would be part of the vehicle?

> A. I understand what you are saying and I'm not, I don't think that anybody is saying that tire was defective.
>
> Q. All right. How about the vehicle other than, so we have something that caused the crash and then we have what happened during the crash which is considered typically like a crash worthiness or second collision type injury. And what I'm trying to just make sure is we're not going to hear from you and as far as you know from anyone else that there was some defect in the subject vehicle that caused the crash itself to occur?
>
> A. Yeah, I, I don't know.
>
> MR. LEGER: Objection, form.
>
> A. I, I don't know anything about it, I don't, I will never mention that. I didn't hear anybody else saying that, so.

(Ex. A to Cooney Dec., Ziejewski Dep., at 54:17—55:20.) Second, when asked about this concession, Dr. Laux also confirmed that neither she nor any other expert purports to say that a defect in the handling or stability of the subject vehicle caused this rollover:

> Q. Dr. Ziejewski was deposed on Monday, and counsel can correct me if I'm misstating his testimony, but it was my understanding that he did not allege or state that a handling or stability defect in the subject vehicle caused this rollover. Do you have any reason to disagree with that?
>
> A. Well, first of all, I don't know how he defined defect and so I can't agree or disagree with that. Did he say there was no defect in the vehicle?
>
> Q. So I'm just wondering, do you have a disagreement with the statement he made?
>
> A. I don't know exactly what the statement was, can you read it again.
>
> Q. Well, let's just put it this way, are you aware in this case if there is an allegation that the cause of the crash was a defect in the handling or stability of the subject vehicle?
>
> A. I don't know. I don't know if that's the allegation is what I'm saying, I don't know if that's the allegation.

4

> Q. Are you aware of any of the other experts in this case who have made that assertion that a handling or stability defect caused the crash to occur?
>
> A. Well, I've only read Dr. Z and Dr. Cades, so I don't know all the other experts and what they're alleging.

(Laux Dep., at 80:8—81:8.) Ultimately, because one facet of Plaintiffs' failure to warn claims asserts that SUVs are prone to rollover, Dr. Cades' opinions tending to prove that this particular rollover occurred due to other factors (e.g., dangerous, negligent driving) are relevant and admissible to rebut Plaintiffs' assertions. True, Plaintiffs appear unlikely to meet their burden to prove a connection between the handling and stability characteristics of the subject vehicle and this particular rollover event. But that does not change the reality that Plaintiffs have made the argument; GM LLC should now be allowed to rebut it. And, of course, as discussed above, Dr. Cades' opinions would be independently relevant and admissible to rebut Plaintiffs' failure to warn claims pursuant to Mo. Stat. § 537.765, where the crashworthiness doctrine bar on comparative fault only applies to design and manufacture strict liability claims.[1]

### 2. The jury must determine whether Mr. Rey's product misuse of driving inattentively at 92 mph was reasonably foreseeable.

The jury must also be permitted to consider whether Mr. Rey's misuse of the subject vehicle – namely excessive speeding of 92 miles per hour – was reasonably foreseeable. *C.C. v. Suzuki Mgf. Am. Corp.*, No. 4:16CV1271ERW, 2018 U.S. Dist. LEXIS 137022, at *8 (E.D. Mo. Aug. 14, 2018); *Dejana v. Marine Tech., Inc.*, No. 4:11-CV-1690-JAR, 2013 U.S. Dist. LEXIS 42204, at *8 (E.D. Mo. Mar. 26, 2013). In his report, Dr. Cades describes the increased risk of

---

[1] This evidence can also serve as useful background evidence, helping the jury understand how this accident came to be. *See United States v. Oldrock*, 867 F.3d 934, 940 (8th Cir. 2017) (endorsing the use of "background evidence," which helps the jury understand how events "proceeded").

rollover and injury in rollover events attributable to excessive speed. (Cades Report, p. 27.) This testimony will assist the jury in determining whether Mr. Rey's misuse of the subject vehicle was or was not foreseeable. As GM LLC explained in its response to Plaintiffs' motion attacking Dr. Durisek, the Court should not try to resolve this disputed issue of fact in a *Daubert* motion. *Cf. Morris v. Mitsubishi Motors N. Am., Inc.*, 782 F. Supp. 2d 1149, 1161 (E.D. Wash. 2011) (finding that evidence of the plaintiff's inattentiveness and positioning were relevant in crashworthiness case and not properly resolved on summary judgment).

### B. Plaintiffs' substantive challenges to Dr. Cades' opinions all go to weight and not admissibility.

Plaintiffs lodge several confused attacks on Dr. Cades' analysis. These challenges largely focus (improperly) on the bullet-point summary of opinions at the end of Dr. Cades' 34-page report. And most are attacks on the factual basis of Dr. Cades' conclusions. But Dr. Cades' opinions—especially when considered in their full context—are based on sound methodology and substantial evidence. Plaintiffs' complaints can be addressed at trial. *See Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.").

#### 1. Dr. Cades' opinions relating to the cause of the crash are reliable.

As with Dr. Durisek, Plaintiffs assert that Dr. Cades failed to consider certain evidence, namely: tire blow-out testimony, tire blow-out physical evidence, and testimony that Mr. Rey was an alert driver. Dr. Cades in fact considers all of this evidence in his report.

Dr. Cades considers and discusses Mr. Rey and Mr. Quinn's testimony at length. (Cades Report, p. 5-7; p. 25-28.) However, like Dr. Durisek, he reached a contradictory opinion about what actually occurred after considering all the evidence as a whole. As set forth in his detailed

6

report, that contradictory conclusion is based on his thorough human factors analysis. (*Id*. p. 19-25.) It is not unusual in an automotive products liability case that interested parties' accounts of what happened are rejected and discredited by experts. And the Eighth Circuit has recognized that, too:

> [E]xpert testimony does not have to be consistent with all eyewitness testimony in order to be admissible. Because eyewitness testimony is often contradictory, expert testimony often cannot avoid conflicting with something that an eyewitness said. A conflict between the testimony of an eyewitness and the testimony of an expert witness does not mean that the latter was unreliable. After all, it could have been the eyewitness, and not the expert witness, who was wrong.

*Olson v. Ford Motor Co.*, 481 F.3d 619, 629 (8th Cir. 2007).

Similarly, Dr. Cades accounted for the purported physical evidence of a tire blow-out. Dr. Cades is not an accident reconstruction expert, of course, but he relies on Dr. Durisek to conclude that damage to the tire occurred in the crash, rather than on-road. Experts routinely rely upon other experts' opinions. *United States v. 1014.16 Acres of Land*, 558 F. Supp. 1238, 1242 (W.D. Mo. 1983), *aff'd*, 739 F.2d 1371 (8th Cir. 1984) (it is reasonable to expect that experts will rely on opinions of expert in other fields as background material for arriving at opinion); *Storie v. Duckett Truck Ctr., Inc.*, No. 4:06 CV 1238 DDN, 2007 U.S. Dist. LEXIS 92083, at *13 (E.D. Mo. Dec. 14, 2007) (same); *N. States Power Co. v. City of Ashland*, 12-cv-602-bbc, at *7-8 (W.D. Wis. Apr. 16, 2015) ("It is well established that experts may rely on other experts' opinions in formulating their own."). And, notably, when asked about this at his deposition, Plaintiffs' own accident reconstruction expert, Dr. Ziejewski, agreed he is unable to say when the punctures occurred – either before or during the crash:

> Q.   All right. Now if we were to look at a photograph of the tire we would see there are a couple pretty obvious gashes in it, right, you're familiar with those?
>
> A.   Yes.

>   Q.   And, and so if I understand your prior answer correctly, those gashes, you're not able to make a determination of whether those were the tire puncture failures that precipitated the crash or if those were physical evidence left during the crash, is that correct?
>
>   A.   That's correct.
>
>   Q.   All right. So in other words, anything, any physical evidence that may or may not be on the rear left tire, you're not able to make a determination as you sit here today between whether those were tire failure evidence from prior to the crash that may have caused it or from interaction with objects and ground and other things possibly during the rollover phase of the crash, is that correct?
>
>   A.   Correct.

(Ziejewski Dep., at 60:22—61:17.) Dr. Cades is hardly going out on a limb in rejecting Plaintiffs' tire blow-out story.[2] As his report demonstrates, his human factors analysis is thorough and sound.

### 2. Dr. Cades' opinions about the crash circumstances are also helpful to the jury.

Plaintiffs also take umbrage with Dr. Cades' opinion that the crash is consistent with, as opposed to definitively caused by, driver fatigue. Similarly, they criticize Dr. Cades for opining that excessive speed increased the likelihood of a crash.

Although Dr. Cades does not say Mr. Rey was asleep, or that his speeding necessarily caused the crash, the Federal Rules of Evidence do not require certainty for opinion testimony to be admissible at trial. *Stutzman v. CRST, Inc.,* 997 F.2d 291, 296 (7th Cir.1993); *see also Samuel v. Ford Motor Co.*, 112 F. Supp. 2d 460, 470 (D. Md. 2000) ("When applying the rules of evidence that govern admissibility of expert opinion testimony, the court must be sensitive to the fact that

---

[2] Similarly, Plaintiffs also raise questions about why Dr. Cades did not address Dr. Ziejewski's suspicion about the reliability of the Electronic Data Recorder ("EDR") download data, sometimes referred to as CDR data. Again, those suspicions presume that Mr. Rey and Mrs. Quinn's story that they were driving under speed limit when a tire blow-out occurred is true. But that story directly contradicts the EDR download. Only one version of what happened can be true. Dr. Cades' rejection of Plaintiffs' version, and of Dr. Ziejewski's suspicions, is therefore implicit.

they do not require the expert to testify with absolute certainty, or without any doubt whatsoever. So long as the opinion has a tendency to prove a consequential fact by probability, it will be relevant."). As *Daubert* itself recognizes, "it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993). Missouri law does not impose the extreme certainty requirement that Plaintiffs demand, either. *See State v. Price*, 165 S.W.3d 568, 573 (Mo. Ct. App. 2005) (holding that an expert's testimony that certain scarring was "consistent with" sexual abuse was admissible expert testimony). Plaintiffs are free to press Dr. Cades on his degree of certainty during cross-examination at trial.

Ultimately, Dr. Cades' opinions are helpful to the jury in understanding, from a human factors perspective, what caused the crash. As he explains in his report, Dr. Cades' work "routinely relates to analysis and evaluation of human behavior and performance, including issues as to … attention and control … and accident avoidance." (Cades Report, p. 1.) Here, based on his extensive background, training, and experience, as well as numerous peer-reviewed studies and other literature cited in his report, Dr. Cades disclosed human factors opinions that will assist the jury in making sense of the conflicting accounts of why Mr. Rey left the roadway. Plaintiffs do not agree with his opinions, but that is a good reason for a trial—not a favorable *Daubert* ruling.

### 3. Plaintiffs obfuscate Dr. Cades' fifth summary opinion.

Dr. Cades' fifth bullet point in his summary of opinions relates to whether, had Mr. Rey heeded warnings and instructions to obey the speed limit and to not drive while fatigued, he would have been able to avoid this crash. Dr. Cades says it would. (Cades Report, p. 29.) Plaintiffs' criticism is that this opinion does not address "the real issue." (Motion, p. 14.) What Plaintiffs actually mean is that Dr. Cades' opinion does not adopt their narrative – that a tire blow-out caused the crash. The logical fallacy plaguing many of Plaintiffs' arguments, exemplified here, is that they

9

fail to consider that a jury may not agree with their version of the events. The test for relevancy of Dr. Cades' opinions is not whether they support *Plaintiffs'* claims.

Moreover, Dr. Cades' opinion about Mr. Rey having all the information available to him to avoid the crash is, on its face, fairly straight-forward and uncontroversial. Dr. Cades supports it by applying human factors principles, but it also fits common sense. It was a clear day and the road was straight and well-marked. If Mr. Rey was tired, he should have stopped driving. Plenty of material available to him, as described by Dr. Cades, advised Mr. Rey to take appropriate precautions. (Cades Report, p. 10-18; p. 27-29.)

Finally, despite Plaintiffs' mischaracterizations of Dr. Cades' opinions, he does discuss warnings relating to rollover risk at length, particularly in his critique of Dr. Laux's opinions. (*Id.* p. 29-33.) Paraphrasing his report, Dr. Cades does not agree that providing a warning like the one Plaintiffs suggest would be appropriate or effective. He lays out numerous reasons for that view throughout his report. (*Id.* p. 29-33.) Suggesting his report "never provides any opinions that are relevant" on the subject of warnings as to rollovers and rollover risk is therefore inaccurate. Dr. Cades' report speaks for itself.

### 4. Plaintiffs' criticism of Dr. Cades' final summary opinion – his critique of Dr. Laux – offers no basis for exclusion.

Plaintiffs' final argument is largely unintelligible. Contrary to Plaintiffs' suggestion that Dr. Cades focused on the wrong issue, Dr. Cades' critique of Dr. Laux's opinion goes directly to Plaintiffs' failure to warn claims – that Dr. Laux's warning opinions are either plain wrong, do not follow science, or are unsupported by the evidence. Plaintiffs again ignore that they have pleaded two separate failure to warn claims, which GM LLC is entitled to respond to.

Dr. Cades and Dr. Laux disagree about the appropriateness and effectiveness of a warning that SUVs are prone to rollover and the function of the seat belt in rollover crashes. Plaintiffs need

Dr. Laux's testimony to support their warnings claims. And Dr. Cades provides – among other opinions – a critique of Dr. Laux's work. These opinions are the product of reliable methodology and are supported by reliable facts and data. Plaintiffs have provided no discernable, valid basis for their exclusion. As best GM LLC can tell, Plaintiffs seem to argue that Dr. Cades' critique should be excluded because Plaintiffs and their experts find it unconvincing. Unsurprisingly, they cite no authority for that remarkable idea. *See Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012) ("Proponents of expert testimony need not demonstrate that the assessments of their experts are correct, and trial courts are not empowered to determine which of several competing scientific theories has the best provenance." (internal quotation marks omitted)).

In conclusion, for the reasons stated above, the Court should deny Plaintiffs' motion to exclude the opinion testimony of Dr. Cades.

Respectfully submitted,

DYKEMA GOSSETT PLLC

/s/ Michael P. Cooney
Michael P. Cooney (P39405)
Brian T. Smith (P56174)
John D. Black (P81027)
400 Renaissance Center
Detroit, MI 48243
(313) 568-6800
mcooney@dykema.com
btsmith@dykema.com
jblack@dykema.com

Michael R. Carey
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612)486-1589
mcarey@dykema.com

Stephen J. Torline MO #49483
Benjamin T. Friesen MO #67377
KUCKELMAN TORLINE KIRKLAND
10740 Nall Ave., Suite 250
Overland Park, KS 66211
T: (913) 948-8610 / F: (913) 948-8611
storline@ktk-law.com
bfriesen@ktk-law.com

*Attorneys for Defendant*

Dated:  October 26, 2020