# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| NICOLAS VALADEZ REY and<br>JESSICA LEANNE QUINN,<br>Individually, and as Next Friends of<br>E.Q., a Minor, J.Q., a Minor, and<br>I.Q., a Minor,<br><br>　　　Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br><br><br><br>Civil Action No. 4:19-CV-00714-DGK<br><br><br><br><br>JURY TRIAL DEMANDED |

### PLAINTIFFS' REPLY SUGGESTIONS IN SUPPORT OF THEIR MOTION TO EXCLUDE GM's EXPERT DAVID M. CADES, Ph.D.

Plaintiffs submit their Reply Suggestions and state as follows:

#### SUMMARY

GM has not met its burden to prove by a preponderance of the evidence that the testimony of Dr. Cades is admissible. His opinions lack a sufficient basis in fact, are not based on reliable foundational data, failed to consider relevant facts of the case (without explanation), his conclusions not are not sufficiently linked to or fit the facts in this case, and would not be helpful to the jury in the determination of the pertinent facts in this case, or have some combination of the foregoing deficiencies. Further, Dr. Cades' opinions are irrelevant given this enhanced injury case – which focuses on the *cause of the injuries* from a defective product, not the cause of the accident – because without the defects (in this case either the weak roof, a defective restraint system, or a combination of the two), the injuries would not have occurred. Because this *case* is an enhanced injury *case*, Plaintiffs' asserted

*causes of action* regarding the defects, whether brought under strict products liability, negligent design, or failure to warn under either strict products or negligence, are all part of this enhanced injury case and subject to the application of the doctrine.

**PLAINTIFFS' SUPPORTING REPLY SUGGESTIONS**

A.     **The Enhanced Injury Doctrine, Comparative Fault, & Failure to Warn Claims**

Just as GM is incorrect that Dr. Durisek's accident reconstruction falls outside the enhanced injury doctrine, it is incorrect as the enhanced injury doctrine does not apply to render Dr. Cades' testimony inadmissible.[1] Like Dr. Durisek's, Dr. Cades' testimony, is focused on placing blame on Mr. Rey for the cause of the accident (not the injury) and is not admissible in this enhanced injury case. GM argues that "This case is *not* a 'pure' crashworthiness case, and Dr. Cades' testimony goes directly to two key disputed issues."[2] GM misunderstands the enhanced injury doctrine in Missouri. As set forth *infra*, "***Crashworthiness, second collision, and enhanced injury are <u>all treated the same</u> in Missouri case law***."[3]

GM next contends that "[s]o long as Plaintiffs continue to pursue failure to warn

---

[1] Plaintiffs appreciate GM's representation to this Court in its response to Plaintiffs' Motion to Exclude Dr. Durisek that it acknowledges the application of the enhanced injury doctrine to crashworthiness cases, which does not allow the admission of a "plaintiff's accident-causing fault" and that GM "will not violate this doctrine through Dr. Durisek's testimony or otherwise." GM's Durisek Resp., Doc. 95 at 5-6 wherein GM cited *Norman v. Textron, Inc.*, 2018 WL 3199487, at *2 (W.D. Mo. 2018) and *Gerow v. Mitch Crawford Holiday Motors*, 987 S.W.2d 359, 362-63 (Mo. Ct. App. 1999). (Plaintiffs will use the Pacer pagination; thus, this would be page 5 of 19.) Plaintiffs are uncertain if GM makes that same representation here, although it liberally cites its Response to Plaintiffs' Motion to Exclude Dr. Durisek without limitation or exception. Notably, Plaintiffs discussed *Norman* and the enhanced injury doctrine at length in their Motions to Exclude Dr. Durisek and Dr. Cades. *See,* Pls. Motion to Exclude Durisek, Doc. 83 at 11-16; Pls. Motion to Exclude Cades, Doc. 86 at 12-16. The doctrine precludes this sort of evidence and did not limit it as GM suggests: "Plaintiff's comparative fault, as well as the fault of others in causing the original accident, is not admissible in this crashworthiness, enhanced injury case…'[i]f the plaintiff's use (or misuse) of the product sets the injury-causing sequence in motion, and that use was reasonably foreseeable by the manufacturer, then the doctrine holds that the plaintiff's conduct is not relevant.'" 2018 WL 3199487, at *2 (other citations omitted).
[2] GM Resp., Doc. 96 at 6 (emphasis by GM). GM misunderstands the enhanced injury doctrine in Missouri.
[3] *C.C. v. Suzuki Manufacturing of Am. Corp.*, 2018 WL 3861354, at *2, n.2 (E.D. Mo. 2018) (emphasis added).

PLAINTIFFS' REPLY SUGGESTIONS IN SUPPORT OF THEIR MOTION TO EXCLUDE DAVID M. CADES, PH.D.     2

claims, the default rule applies that Mr. Rey's comparative fault for causing the crash is admissible."[4] It argues that "a failure to warn claim is distinct from a manufacturing or design defect claim" and then refers this Court to its Response to Plaintiffs' Motion to Exclude Dr. Durisek.[5] In the Durisek Response, GM cited *Moore v. Ford Motor Co.* for the proposition that "design defect and failure to warn theories constitute distinct theories aimed at protecting consumers from dangers that arise in different ways."[6] It is true that the causes of action are distinct with their own elements.[7] However, as *C.C. v. Suzuki Manufacturing of Am. Corp.*, a case cited by GM in the Durisek Response, held:

> **An enhanced injury** *case* is a case in which "a manufacturer's liability is extended to situations in which the construction or design of its product has caused separate or enhanced injuries in the course of an initial accident brought about by an independent cause." It is **different from strict liability cases** because "the defect would not have produced any injury in the absence of an intervening cause which sets the injury producing cycle into action." [Citation omitted.] **In an enhanced injury** *case* [FN], *any potential error* **committed by the Plaintiff which might have caused the initial accident is** *irrelevant <u>and</u> inadmissible* **under Missouri law**.[8]

Plaintiffs' failure to warn claims are part of this enhanced injury case, are based on the lack of crashworthiness of the Subject Vehicle and the catastrophic injuries the defect

---

[4] GM Resp. at 6 citing Mo. Stat. §537.765.
[5] *Id*. citing *Dejana v. Marine Tech., Inc.*, 2013 WL 1282327 (E.D. Mo. 2013) and *Cryts v. Ford Motor Co.*, 571 S.W.2d 683, 687 (Mo. Ct. App. 1978). These cases state general propositions but do not restrict enhanced injury cases only to strict products liability design or manufacturing defect claims.
[6] GM Durisek Resp., Doc. 95 at 8 citing 332 S.W.3d 749, 757 (Mo. 2011).
[7] "The elements of a cause of action for strict liability failure to warn are: (1) the defendant sold the product in question in the course of its business; (2) the product was unreasonably dangerous at the time of the sale when used as reasonably anticipated without knowledge of its characteristics; (3) the defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) the plaintiff was damaged as a direct result of the product being sold without an adequate warning." *Moore*, 332 S.W.3d at 756 citing *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 13 (Mo. 1994).
[8] *C.C.*, 2018 WL 3861354, at *2 (emphasis added) citing *Dejana*, 2013 WL 1282327, at *3 and *Gerow*, 987 S.W.2d at 363. The FN within the quote is as follows: "***Crashworthiness, second collision, and enhanced injury are all treated the same in Missouri case law***." *C.C.*, 2018 WL 3861354, at *2, n.2 (E.D. Mo. 2018) (emphasis added). *See also, Donze, infra*, 420 S.C. at 20 (relying on Missouri case law, *inter alia*, to discuss the crashworthiness/enhanced injury doctrine and finding "no reason to distinguish between these theories of liability when utilized in conjunction with the crashworthiness doctrine.")

and failure to warn of the defect caused, and are not treated differently from the other claims they have brought. All arise out of the defective nature of the Subject Vehicle and the injury-causing defects. None of Mr. Rey's injuries – arise out of the accident itself, that is, the rollover, but are all from the roof crush and/or ineffective restraint system in the event of a roof crush.[9]

GM claims that Plaintiffs' observation about the higher center of gravity in Yukons puts Mr. Rey's conduct into issue opening the door to GM discussing Mr. Rey's conduct as a cause of the accident. First, that is not correct as a matter of law for the reasons set forth above. The focus is on the injury. Second, GM seems to claim that Plaintiffs have asserted a failure to warn cause of action based on the rollover risk and that Plaintiffs have put the rollover risk into issue. Plaintiffs have asserted no injuries as a result of the higher

---

[9] *See* GM's Cades Resp., Doc. 96 at 6-9. GM states that "one facet of Plaintiffs' failure to warn claims asserts that SUVs are prone to rollover." *Id*. at 9. GM earlier cited ¶85 of Plaintiffs' 4th Amended Complaint, Doc. 61. However, GM takes Plaintiffs' statement about rollover risk out of its full context. The entirety of ¶85 of Pls. 4th Amended Complaint is: "It is undisputed that GM provided *no* warnings about the higher rollover risk of Yukons or structurally inadequate roof design that allows excessive intrusion in a very foreseeable and low severity rollover environment. GM also provides *no* warnings about its defectively designed safety belt restraint system and that a seatbelt will not protect an occupant in the event of a roof crush." Doc. 61 at 26-27. GM also cites to Plaintiffs' Complaint at ¶43 which states in full:

> Yukons have a high center of gravity making them more prone to rolling over even on pavement, as was the case here. In other words, the vehicles do not have to be taken off road in order to experience this heightened risk of rollover. These vehicles are particularly dangerous in rollover events because a roof crush can occur if the integrity of the support beams are not maintained resulting in roof collapse and crush, as set forth above. This is all known to GM and was at the time this vehicle was designed, tested, manufactured, and marketed.

*Id*. at 15, ¶43. Plaintiffs have asserted no injuries as a result of the higher rollover risk, nor have they asserted that that in and of itself was as defect. But rather, when the higher rollover risk exists (whether it is a defect or not) and the roof is weak and/or the restraint system is of no benefit in the context of a rollover and/or roof crush (even GM's diving theory can only occur because the restraint system is inadequate and defective), GM is under an even greater obligation to warn about these defects. Plaintiffs have not put handling and stability at issue, nor have they put Mr. Rey's driving at issue. The only issue is the defective nature of GM's roof and/or restraint system that caused his injuries. Plaintiffs have clarified that they are not making a design defect claim for the higher rollover propensity of the Yukon or a failure to warn of that specifically in their Motion for Leave to File their Fifth Amended Complaint. (Doc. 102.)

rollover risk, nor have they asserted that that in and of itself was as defect. But rather, when the higher rollover risk exists (whether it is a defect or not) and the roof is weak and/or the restraint system is of no benefit in the context of a rollover and/or roof crush (even GM's diving theory can only occur because the restraint system is inadequate and defective), GM is under an even greater obligation to warn about these defects. Plaintiffs have not put handling and stability at issue, nor have they put Mr. Rey's driving at issue or alleged that any defect caused the accident.[10] The only issue is the defective nature of GM's roof and/or restraint system that caused his injuries and the failure to warn about them.[11]

GM argues that "no one seems to challenge the notion that Mr. Rey's poor driving, as opposed to increased roll propensity, caused the vehicle to roll."[12] That is an odd statement because it assumes facts not in evidence and claims not made. Plaintiffs have

---

[10] Indeed, GM's quotation of Plaintiffs' experts' testimony only serves to reinforce the fact that Plaintiffs are not bringing a claim based on a defect in stability and handing, which undermines its argument for why Dr. Cades' testimony is relevant or admissible here. *See, e.g.,* GM Resp. at 8, 1st line after block quote. Even in the excerpts GM cited, Dr. Laux stated she did not know of any claims made by Plaintiffs "that the cause of the crash was a defect in the handling or stability." GM Resp. at 8, citing GM's Ex. B, Doc. 94-2 at 6, 80:21-25. Likewise, Dr. Ziejewski's deposition testimony cited by GM confirmed that he did not know of any claim "that there was some defect in the subject vehicle that caused the crash itself." GM's Ex. A, Doc. 94-1 at 4, 55:8-20. GM also notes that it asked Dr. Laux's about her opinion that "because of the characteristics of SUVs, they should have a warning that advises purchasers about the specific risk of rollover." GM Resp. at 6-7. However, that is not the same as alleging causes of action for a design defect or a failure to warn of that defect or unreasonably dangerous nature caused a plaintiff's injuries. The fifth element of strict product liability failure to warn as set out in *Moore* is "the plaintiff was damaged as a direct result of the product being sold without an adequate warning." 332 S.W.3d at 756. Plaintiffs have not made that allegation with regard to the rollover risk. Again, the focus must be on the injury-causing conduct and condition which is actually also consistent with the enhanced injury doctrine. GM continues to try to offer Dr. Cades' testimony here for the cause of the crash. *See, e.g.,* GM Resp. at 7, 2nd line after block quote. Finally, GM's mischaracterization of Dr. Ziejewski's testimony must be corrected where GM claims that "Dr. Ziejewski conceded that he will not opine that some defect *beyond Mr. Rey's control* caused this accident." GM Resp. at 7 (emphasis added). That is not correct. As noted above, Dr. Ziejewski testified that Plaintiffs were not alleging a defect in the vehicle caused the accident, that is not the same as saying there was nothing beyond Mr. Rey's control. Again, the allegation, supported by evidence, is that the vehicle suffered a tire failure that caused Mr. Rey to lose control of the vehicle which is what preceded the rollover and roof crush.

[11] Plaintiffs have clarified that they are not making a design defect claim for the higher rollover propensity of the Yukon or a failure to warn of that specifically in their Motion for Leave to File their Fifth Amended Complaint. (Doc. 102.)

[12] GM Resp. at 7.

asserted that a tire puncture caused the loss of control and the vehicle rolled, upon which the seatbelt restraint system allowed excessive excursion which combined with a weak roof that collapsed in on Mr. Rey, injured him catastrophically. SUVs have a higher propensity to roll, yes, but that would be largely irrelevant if GM's vehicles had sufficient restraint systems and strong roofs. GM has admitted, through the testimony of its corporate representative, that rollovers are foreseeable events.[13] With the higher propensity to roll, GM should especially warn about the risk of injury that comes – not from the roll propensity – but from the defects that Plaintiffs have actually alleged based on the roof and restraint system. Dr. Cades' testimony is not being offered for any purpose other than to talk about the cause of the accident – not the injuries to Mr. Rey – and is barred by the enhanced injury doctrine which applies to all of Plaintiffs' claims.[14]

B. **<u>Dr. Cades' Opinions Regarding Product Misuse & Reasonable Foreseeability</u>**

GM claims Dr. Cades' opinion regarding "the increased risk of rollover and injury in rollover events attributable to excessive speed" as testimony the jury needs "to consider whether Mr. Rey's misuse of the subject vehicle…was reasonably foreseeable."[15] Without citing to legal authority that holds this, GM contends the court may not determine this issue in a *Daubert* motion.[16] Although it can, the Court does not necessarily have to decide this

---

[13] Pls. Motion, Doc. 86, at 15 citing Pls. Ex. H, Doc. 86-8 at 4, 92:2-5.
[14] GM's cite to *U.S. v. Oldrock*, is completely inapposite. GM Resp. at 9 citing 867 F.3d 934, 940 (8th Cir. 2017). This was a case concerning sexual abuse and the admission of *lay testimony* under Rule 701 offered to provide the background of how a forensic interview (of a sexual abuse victim) is conducted.
[15] GM Resp. at 9 (citing the cases of *C.C.* and *Dejana)*; 9-10 citing Cades Report at p. 27.
[16] In the Durisek Response (which it references here and the Reply to which Plaintiffs also incorporate here by reference as if set forth fully), GM cited *C.C.* for the proposition that whether that plaintiff operated the ATV at issue in that case in a reasonably foreseeable manner was a fact issue for trial. (Durisek Resp., Doc. 95 at 10 citing 2018 WL 3861354, at *3) However, the *C.C.* Court actually held: "The Court does not find this is an enhanced injury case and the Court will not limit testimony on this basis." 2018 WL 3861354, at *3. The inverse of this may very well be that if the court had found this was an enhanced injury case, it would limit testimony on this basis. In *Norman*, the court determined in the context of a motion *in limine* that "Plaintiff's fault, as well as his employer' and others, in causing the original accident is not admissible in this

issue in order to determine Dr. Cades' opinions are irrelevant and inadmissible under the enhanced injury doctrine. The doctrine says what it says.[17] That evidence is excluded as it has nothing to do with the cause of the injury. No one has alleged that the rollover itself caused Mr. Rey's injuries, including GM. Dr. Cades' testimony is entirely inadmissible. Moreover, Dr. Cades cannot testify as to what is reasonably foreseeable to GM. That is testimony that must come from GM itself.

C.     **Dr. Cades' Opinions Remain Inadmissible under *Daubert* & FRE 702**

Dr. Cades' ***First, Second, and Fourth Opinions*[18]** are similar and based upon the same unreliable foundational data to support them, rendering them inadmissible. Dr. Cades did not take into account all of the evidence as to causation without explaining or discussing why he ignored it.[19] In *Babbs v. Block*, this Court conducted an analysis of an expert report

---

crashworthiness, enhanced injury case." 2018 WL 3199487, at *3. Thus, this issue does not always have to go to a jury. In addition, misuse and even abnormal use have been held to be reasonably anticipated as Plaintiffs previously discussed. (*See* Pls. Motion at 11-16 (per Pacer pagination).) Alleged speeding (even excessively) or falling asleep or an inability to regain control cannot possibly be said to be something an automotive manufacturer cannot reasonably foresee. *See, e.g., Donze v. GM LLC*, 420 S.C. 8, 17 (2017) cited by *Norman, supra,* and which cites *Thornton v. Gray Automotive Parts Co.*, 62 S.W.3d 575, 587 (Mo. Ct. App. 2001) cited with approval the holding that "if GM was required to design a reasonably safe vehicle for its intended and reasonably foreseeable use, it should, if possible, have designed a vehicle that could reasonably withstand a crash at considerably higher speeds than in this case [which was 45-81 mph in a broad side collision]." *Id*. at *Green v. GM Corp.*, 709 A.2d 205 (N.J. Sup. Ct. App. Civ. 1998).

[17] GM relies upon *Morris v. Mitsubishi Motors N. Am., Inc.*, 782 F.Supp.2d 1149 (E.D. Wash. 2011) for its holding regarding evidence of inattentiveness which the court there held was relevant in determining the summary judgment. However, that was based on *Washington*'s dissimilar comparative fault statute.

[18] GM argues: "These challenges largely focus (improperly) on the bullet-point summary of opinions at the end of Dr. Cades' 34-page report." GM Resp. at 10. GM takes pot shots at Plaintiffs and resorts to *ad hominem* attacks on them throughout its responses, to which Plaintiffs have not responded in kind. Such is the case here. Of course, Plaintiff did not simply look to the conclusions and argue that based on those one or two pages of the report there were not sufficient bases for Dr. Cades' conclusions. Using that list provided a convenient means of summarizing *in his own words* the main points he made, which is pretty much what every party does as a starting point in such a motion as this. Plaintiffs cited to many other portions of Dr. Cades' report throughout their Motion. (*See, e.g.,* FN 36 cites pp. 31, 27 (at 32, 28 per Pacer pagination); FN 38 cites p. 5 (6); FN 39 cites pp. 19-25 (20-26); FN 45 cites pp. 11-18 (12-19); FN 46 cites p. 12 (13); FN 47 cites pp. 28-29 (29-30); FN 48 cites p. 25 (26); FN 54 cites p. 25 (26). But it must also be remembered that a lot of what is wrong with Dr. Cades' report is what is *not* there at all (thus, there is nothing to cite). Also, nine pages of Dr. Cades' report are extensive quotes from various materials such as an incident diagram and Google Maps Street View of the highway (Doc. 86-2 at 5), the Owner's Manual (Doc. 86-2 at 12-15), the Missouri Driver's Guide (Doc. 86-2 at 16), the Kansas Driving Handbook (Doc. 86-2 at 17-19).

[19] GM's cites *Olson v. Ford Motor Co.*, but the expert there actually explained why he did not use the

that contained deficiencies very much like Dr. Cades'. A number of the expert's opinions were excluded because they were "not supported by sufficient facts or data, nor [were] they the product of reliable principles and methods."[20] Opinions were also excluded where the expert did not provide "any discussion of the specific facts or data which led him to" his conclusion.[21] This Court was also "troubled" that the expert there had "not employed any techniques…which might rule out other possible sources" of the plaintiff's pain which reinforced the conclusion that the opinion was "fundamentally unsupported."[22] This Court also noted where the report failed to actually state the cause of the pain or injury "much less explain how" it was caused, failure to do so rendered the opinions inadmissible because they would not assist the jury.[23]

Dr. Cades opines about the cause of the accident, but GM admits he is not an

---

eyewitness testimony. 481 F.3d 619, 629 (8th Cir. 2007). Dr. Cades did not. Failing to do so calls into question a number of things, as Plaintiffs noted, such as: How was Mr. Rey able to hear and feel a tire blowout if he was asleep? There are *indicia* of reliability in the ignored testimony. Dr. Cades may ignore it, but he has to explain why or there is an analytical gap or an insufficiently supported opinion. Plaintiffs do not assert that his opinions have to be consistent with the testimony, but that he may not simply ignore evidence that is relevant to the facts of the case and provide alternative explanations for his conclusions – as this evidence and the other evidence he ignores – does, without explanation. (This includes testimony about Mr. Rey not being asleep, problems with the EDR data, testimony and evidence showing there was no speeding, etc.)

[20] 2017 WL 2402792, at *6 (W.D. Mo. 2017). While GM cited *Babbs* in its other responses for the same general proposition that it cited *Hose v. Chicago Nw. Transp. Co.* for here; that general proposition is only true if the opinions are sufficiently factually supported, key facts are not ignored without explanation, *etc*. 70 F.3d 968, 974 (9th Cir. 1995).

[21] *Id*. at *6. Similarly, this Court also held that where "Dr. Simon's report does not consider other possible causes" for the diagnosis (prior events, other facts), the "opinion is not supported by sufficient data, nor is it the product of reliable methods." *Id*. The absence of "consideration of evidence which might be incompatible with such a diagnosis" and explanation for it was a problem as well. *Id*. Dr. Cades' methodology must stand on its own under a *Daubert* analysis. Again, it is not that he rejected relevant facts, but that he failed to explain why. It is not that he has a different theory or conclusion, but that he does not explain how he gets there based on an examination and explanation of all relevant facts in the case, including those that do not support his theory.

[22] An expert is supposed to "account[ ] for obvious alternative explanations" which Dr. Cades did not do. *See also, Roberts*, 2015 WL 6955362, at *3 ("An expert opinion is fundamentally unsupported when it 'fails to consider the relevant facts of the case.'") citing *Nebraska Plastics, Inc. v. Holland Colors Am., Inc*., 408 F.3d 410, 416 (8th Cir. 2005).

[23] *Id*. at *7.

accident reconstructionist[24] and is, therefore, unqualified. He relies entirely on Dr. Durisek for these conclusions, which is an unreliable foundation for them.[25] None of the cases GM cites hold that an expert may rely on another expert's inadmissible, unreliable opinions or that an expert may rely on another expert's report that has been excluded on the basis of failing to meet the *Daubert* standard.[26]

Dr. Cades' **Third Opinion** suffers from the fact that he is unqualified to render this opinion, as GM concedes, because he is not an accident reconstructionist. Without addressing how he is qualified to render this decision, GM argues that he need not be certain[27] about it. Re-couching this as "crash circumstances" is not helpful given the applicable of the enhanced injury doctrine to this case. Again, he has to be *qualified* to render an opinion, it must be based on a *reliable foundation*, fit[28] the facts of the case, and

---

[24] GM Resp. at 11.
[25] In *Lipp v. Ginger C, LLC*, the court held: "This question of whether 'an expert's testimony both **rests on a reliable foundation** and is relevant to the task at hand' is known as the 'reliability and relevancy' test." 2017 WL 277613, at *2 (W.D. Mo. 2017) citing *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)) (emphasis added); *see also, Huddleston v. Baumfolder Corp.*, 2008 WL 341666, at *1 (E.D. Mo. 2008) ("…in order to adhere to 'the common law insistence upon "the most reliable sources of information,"' courts must assess a purported expert's basis for the opinion he seeks to provide.") (other citations omitted). Further, *Barrett v. Rhodia, Inc.* held that an expert's opinions about the source of the plaintiff's toxic tort exposure was properly stricken when it was based entirely on another expert's opinion which in the case "which had been deemed excessively speculative" by the court. 606 F.3d 975, 980 (8th Cir. 2010)
[26] GM cited *U.S. v. 10.02 Ac. Of Land,* 558 F.Supp. 1238, 1242 (W.D. Mo. 1983), a pre-*Daubert* case. While it held that an expert may, under FRE 703, "base his opinion on non-admissible data if he as an expert would reasonably rely upon such data in reaching conclusions in his field" there is nothing to indicate that one expert basing their opinion on another expert's unreliable opinion is admissible. This is only logical. For a court to do so would allow the original inadmissible opinion into evidence through the backdoor eviscerating the point of a *Daubert* analysis and undermining the Court's gatekeeping roll. GM cited *Storie v. Duckett Truck Center, Inc.*, 2007 WL 4454297, at *5 (E.D. Mo. 2007) which held that expert's in the field of the challenged expert would rely on another appraiser's damage estimate in place of their own. However, the court also held: "Rule 703 also requires that the information relied on be viewed as reliable by an independent, objective standard, and not just the opinion of the testifying witness." *Id.* at *4. GM also cited *Northern States Power Co. v. City of Ashland,*, 2015 WL 1745880, at *4 (W.D. Wis. 2015) which held that "experts may rely on other experts' opinions." (Other citation omitted.) However, the underlying expert opinion was not challenged or held to be unreliable.
[27] GM cites *State v. Price*, 165 S.W.3d 568, 573 (Mo. Ct. App. 2005) for the holding that an expert testified that certain scarring was "consistent with" sexual abuse, but the expert there testified as to the factual bases supporting her decision – thus, it fit the case.
[28] The lack of certainty is not the issue here, but that it is merely a general statement not tied to the facts of

it must be *relevant*. That is all missing particularly with regard to this opinion.

Dr. Cades' **Fifth Opinion** is not specific as to what he contends Mr. Rey was warned about that "would have allowed him to avoid this incident." Dr. Cades does not state what Mr. Rey could have done to avoid quadriplegia when his seatbelt allowed excessive excursion and the roof caved in on him, defects he was not warned about, and the bases of this enhanced injury *case*. If Dr. Cades has nothing to offer in that regard, his testimony is inadmissible and irrelevant under the enhanced injury doctrine. It is undisputed that Dr. Cades' never discusses warnings about roof crush or the restraint system in the Subject Vehicle in the event of a rollover, which are the bases of the failure to warn claims and are directly related to his injuries.

Dr. Cades' **Sixth Opinion** is also irrelevant because it focuses on the cause of the accident not the injuries, the point of view from which he criticizes Dr. Laux's opinions. Again, for the reasons discussed above about the enhanced injury doctrine and in Plaintiffs Motion, his criticisms also miss the mark in terms of relevance, fit, and factual support.[29]

GM has not met its burden to prove the admissibility of it by a preponderance of the evidence; Plaintiffs' motion should be granted.

---

this case. *See, e.g., Lauzon v. Senco Products, Inc.,*, 270 F.3d 681, 694 (8th Cir. 2001) citing *Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1056 (8th Cir. 2000) (Stated another way, '[e]ven a theory that might meet certain *Daubert* factors, such as peer review and publication, testing, known or potential error rate, and general acceptance, ***should not be admitted if it does not apply to the specific facts of the case.***'") (emphasis added); *Roberts,* 2015 WL 6955362, at *3 (E.D. Mo. 2015) (requiring that an expert's testimony based on general statistics fit the facts of the case to be admissible) citing *Bavlsik v. General Motors LLC*, 2015 WL 4920300, at *5 (E.D. Mo. 2015); *see also, Bavlsik* at *6 (excluding general irrelevant opinions); *see also, Abraham v. Graebel Van Lines, Inc.*, 2016 WL 1304853, at *3 (D. Wy. 2016) ("To meet the prerequisite connection, expert opinions must provide the underlying facts and basis of the expert's opinions. 'Opinions are valueless as evidence without exploration of the underlying facts and rationale showing the path from the facts to the opinions.'") (other citation omitted).

[29] Had he had something to say about the failure to warn that caused or contributed to Mr. Rey's injuries – the roof and restraint system that provide no protection in the event of a rollover – Plaintiffs would have had nothing to say about it. But he did not. Assuming he had sufficient, reliable factual support and his opinions fit the facts in the case, it would be simply a matter of experts with differing opinions. GM's case does not say otherwise.

Respectfully submitted,

**LEGER KETCHUM & COHOON, PLLC**

*/s/ Bradley L. Leger*
**BRADLEY L. LEGER**
Attorney in Charge
*(Admitted Pro Hac Vice)*
Texas State Bar No. 24039899
S.D. TX Bar No. 38360
Email: bleger@lkclawfirm.com
**KASSI DEE PATRICK MARKS**
*(Admitted Pro Hac Vice)*
Texas State Bar No. 24034550
Email: kmarks@lkclawfirm.com
10077 Grogan's Mill Road, Suite 325
The Woodlands, Texas 77380
T: 832.764.7200
F: 832.764.7211

ADAM M. EVANS
Missouri Bar #60895
Email: aevans@breneslawgroup.com
800 E. 101st Street, Suite 350
Kansas City, MO 64131
T: (949) 397-9360
F: (949) 607-4192

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I filed the foregoing on the 9th day of November, 2020, via the Court's electronic filing system, which will generate a notice to all counsel of record.

*/s/ Bradley L. Leger*
BRADLEY L. LEGER