IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

NICOLAS VALADEZ REY and
JESSICA LEANNE QUINN,

           Plaintiffs,           Civil Action No. 4:19-CV-00714-LMC

   v.

GENERAL MOTORS LLC,

           Defendant.

**DEFENDANT GENERAL MOTORS LLC'S REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF ALLAN KAM**

To hear Plaintiffs tell it, this trial stands poised to degenerate into a legalistic debate about federal regulations. Plaintiffs insist that GM LLC wants to wield Federal Motor Vehicle Safety Standard 216 as an absolute immunity shield. From that mistaken premise, Plaintiffs surmise that they should be allowed to tell their own story about what those regulations really are. To do that, they plan to enlist a former lawyer to instruct the jury on NHTSA's regulations.

Trouble is, Plaintiffs are wrong about what GM LLC intends, what this trial should be, and what role experts should play. GM LLC plans to the tell the jury that the vehicle at issue complied with federal regulations, including FMVSS 216. The law, after all, says that GM LLC can do just that. *See, e.g., Logiudice v. Mitsubishi Motors N. Am., Inc.*, No. 05-3307-CV-S-RED, 2007 WL 1395443, at *2 (W.D. Mo. May 9, 2007). In response to that unremarkable argument, Mr. Kam, a former NHTSA lawyer turned freelance regulatory critic, wants to parse the history, politics, processes, and meaning of one particular standard: FMVSS 216.

Trials are not meant to be debates about regulations. If any of the intricacies of FMVSS 216 prove relevant, then the Court – not Mr. Kam – will tell the jury what it needs to know. Meanwhile, Plaintiffs' engineering experts can grapple with any *facts* relevant to FMVSS 216 and

the adequacy of the subject roof design. This fact-focused trial cannot turn into "a battle of experts opining as to whether [GM LLC] had violated [federal] regulations" *or* what import to be given to the fact that it did not. *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003). Legal matters are for the Court. *Id.* Mr. Kam's testimony therefore is irrelevant. It is also so far afield that it will confuse the jury, waste time, and unduly prejudice GM LLC. For either reason, the Court should exclude it.

A. **Mr. Kam's opinions about the purported meaning of FMVSS 216 improperly address questions of law.**

Plaintiffs' response concedes that Plaintiffs will offer Mr. Kam to improperly testify as to "*legal issues* in this case that relate to the meaning, applicable [sic], and weight to be assigned to the Federal Motor Vehicle Safety Standards." (Doc. 124 at ii (emphasis added).) Later in the response, Plaintiffs inconsistently claim that Mr. Kam will *not* offer legal conclusions. Plaintiffs' own description of Mr. Kam's proposed testimony shows they had it right the first time. Plaintiffs want Mr. Kam to "educate the jury," this is, give his opinion, about:

> (1) the nature of FMVSS as minimum standards; (2) the fact that compliance with minimum standards does not mean that a car is 'safe' or nondefective; (3) NHTSA's regulatory and enforcement role; and (4) the history of FMVSS 216, including NHTSA's conclusion that there is a relationship between roof crush and injury, contrary to GM's "roof crush doesn't matter" argument.

(*Id.* at 10.) Plaintiffs even shout in bold-faced type that Mr. Kam will tell the jury "**what [the FMVSS] mean and <u>what they do not mean</u>**." (*Id.* at 4 (emphasis in original).)

The "meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court." *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) (allowing the jury to determine the meaning of Federal Motor Vehicle Safety Standards after a battle of the experts was "a serious mistake"; the district court should have resolved the legal interpretation of a federal regulation "and provided

the jury with the proper answer"); *accord In re Genetically Modified Rice Litig.,* 666 F. Supp. 2d 1004, 1021 (E.D. Mo. 2009) ("The meaning of the regulation is a matter of law for the court to decide; expert testimony is neither helpful nor proper.").[1] And Plaintiffs cannot solve this problem merely by recharacterizing this legal testimony as factual "history" or "background." *See, e.g.*, *Bacchi v. Mass. Mut. Life Ins. Co.*, No. 12-CV-11280-DJC, 2016 WL 1170958, at *3 (D. Mass. Mar. 23, 2016) ("[If] opinion on legislative history is offered to explain the proper interpretation of M.G.L c. 175, § 141, such opinion is improper because it invades the province of the Court[.]"); *U.S. v. Monaghan*, 648 F. Supp. 2d 658, 662 (E.D. Pa. 2009). After all, Plaintiffs are offering testimony about the "history" and "nature" of the regulations for a reason: they want the jury to

---

[1] Numerous cases around the country have held the same. *See United States v. Klaphake*, 64 F.3d 435, 438-39 (8th Cir. 1995) ("Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them."); *Garner v. Fellowes Mfg.*, No. 05-3137-CV-S-ODS, 2006 U.S. Dist. LEXIS 100835, at *4 (W.D. Mo. Oct. 25, 2006) (expert testimony on the "requirements of a statute passed by Congress is a legal conclusion"); *Contini by Contini v. Hyundai Motor Co.*, 876 F. Supp. 540, 542 (S.D.N.Y. 1995) ("[T]he meaning of FMVSS 209 S4.1(b) -- a matter of statutory construction -- is an issue for the Court and that, therefore, it should not be a subject for expert testimony before the jury.") (collecting cases); *Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443 (9th Cir. 1992) (holding that legal expert testimony about what the law is and how it should be applied must be excluded); *Payne v. A.O. Smith Corp.,* 627 F. Supp. 226, 228 (S.D. Ohio 1985) (expert could not define and interpret Consumer Product Safety Commission rules because such testimony would constitute a legal opinion as to the meaning of the rules); *GlobalRock Networks, Inc. v. MCI Communs. Servs.*, 943 F. Supp. 2d 320, 343 (N.D.N.Y. 2013) ("Experts should not testify on the meaning of words in a statute or regulation as that decision is one of law which must be made by the court.") (citation omitted); *Keller v. City of Fremont*, No. 8:10CV270, 2012 U.S. Dist. LEXIS 1075, at *4 (D. Neb. Jan. 4, 2012) ("[I]t is not the province of an expert witness to offer opinions on domestic law, or to proffer legal conclusions."); *Raley v. Hyundai Motor Co.*, No. CIV-08-0376-HE, 2010 U.S. Dist. LEXIS 3052, at *10 (W.D. Okla. Jan. 14, 2010) (Mr. Kam's "opinion that federal safety standards are 'minimum' standards is a legal conclusion, as the briefs of both plaintiff and defendants make clear, and expert testimony as to that invades the province of the court to instruct the jury. His testimony as to the effect of the legal standards -- that FMVSS does not certify vehicles as 'safe' or that compliance does not mean a vehicle is safe or state of the art -- is similarly objectionable as involving legal conclusions").

rely on that "history" and "nature" to adopt Plaintiffs' gloss on the meaning of the regulation, rather than listening to the Court's instructions about what compliance may or may not mean.

The Court's special legal knowledge makes Mr. Kam's testimony on legal opinions improper. Admitting such testimony would give the appearance that the court was shifting the responsibility to decide the meaning and application of FMVSS 216 to Mr. Kam. *See*, *e.g.*, *McClain v. Shelter Gen. Ins. Co.*, No. 97-1139-CV-W-FJG, 2005 U.S. Dist. LEXIS 34662, at *16 (W.D. Mo. Mar. 31, 2005) (striking expert testimony "offered to assist the Court in understanding Missouri insurance practices and standards" because the Court did not need expert testimony on "a legal question"; such testimony would necessarily call for the expert "to interpret federal statutes and engage in statutory interpretation. This inquiry is neither helpful nor relevant."), *aff'd in part, rev'd in part on other grounds sub nom.*, *Saunders v. Farmers Ins. Exch.*, 440 F.3d 940 (8th Cir. 2006); *Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir. 1989) (expert testimony about the requirements of the law "would give the appearance that the court was shifting to witnesses the responsibility to decide the case"); 4 Weinstein's Federal Evidence § 702.03 (2020) ("Expert testimony is not admissible to inform the trier of fact as to the law that it will be instructed to apply to the facts in deciding the case. That is a matter reserved exclusively for the trial judge."). But shifting responsibility is not the right approach. If Plaintiffs are worried about the jury being "misle[d]" by the "subtleties" of this one regulation, then Plaintiffs can seek an appropriate instruction.

These concepts are repeated over and over in federal courts near and far. For example, in *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 182 (N.D.N.Y. 2002), the court excluded expert testimony explaining federal regulations, holding that a review of federal regulations "impermissibly usurps the role of the trial judge in determining the relevant law." The court noted

4

that the "Regulatory Framework" portion of the expert's "report read[] more like a legal brief than an expert opinion." *Id.* Put another way, "[t]he evil to be avoided is having the expert offer legal conclusions on issues that will be the subject of the Court's instructions to the jury." *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, No. 08-0840-CV-W-ODS, 2012 U.S. Dist. LEXIS 103552, at *14 (W.D. Mo. July 25, 2012). That "evil" is exactly Mr. Kam's objective here.

Applying this rationale, many courts have excluded Mr. Kam's opinions because, as here, "much of [them] read[] more like a closing argument and [were] not appropriate as expert testimony." *Morris v. Goodyear Tire & Rubber Co.*, No. CIV-03-655-C, 2004 WL 5522851, at *9 (W.D. Okla. Dec. 17, 2004). In *Raley*, 2010 U.S. Dist. LEXIS 3052, at *10-12, the court noted that Mr. Kam is not an engineer and his testimony merely apes the arguments and legal conclusions of counsel. The court went on to hold that Mr. Kam's legal "conclusion that the standards are insufficient to protect the public from unreasonable risk of injury might be admissible if he were someone with expertise in the particular subject matter, such as an automotive design engineer or safety specialist, but they are not matters he is qualified to opine on by reason of familiarity with the administrative process." *Id.* at *10-11.

Plaintiffs prefer *Fox v. GM LLC*, No. 1:17-CV-209-MHC, 2019 U.S. Dist. LEXIS 145532 (N.D. Ga. Feb. 4, 2019), but that case is unpersuasive. In *Fox*, the court allowed Mr. Kam to testify as to the "factual background related to the federal safety standards" and that "meeting those standards does not mean the vehicle is without defect." 2019 U.S. Dist. LEXIS 145532, at *28-29. But the *Fox* decision never explains why the court determined that Mr. Kam's testimony did not constitute legal conclusions; one could easily imagine an instruction from this Court, for instance, on why FMVSS does not necessarily render a vehicle "defect free" under Missouri law. Beyond *Fox*, Plaintiffs also offer up a bullet-pointed list of prior cases in which Mr. Kam was admitted,

sans discussion. Of course, an expert is not immunized from exclusion merely because he has avoided that sanction a few times before. And an otherwise unexplained bullet list of cases from out-of-state courts is not persuasive, especially when it is not even clear whether the arguments raised here were raised there. And in truth, none of these cases persuasively address, much less rebut, the overwhelming authority barring witnesses, and Mr. Kam in particular, from seeking to opine to a jury as to the meaning of federal regulations like the FMVSS.

**B.      Mr. Kam's legal opinions are not necessary rebuttal "evidence".**

Striking Mr. Kam's improper testimony would not leave Plaintiffs "without a means to address [FMVSS] evidence . . . ." (Doc. 124 at 4.) Plaintiffs will argue, through engineers Brian Herbst and/or Stephen Syson, that FMVSS 216 compliance does not prove a reasonable degree of roof strength safety. They will seek, undoubtedly, to offer technical evidence as to why FMVSS 216 is inadequate or inapplicable (or both), and they will try to show why the subject vehicle's roof design is defective and unsafe. That is the way these issues *should* be addressed. Mr. Kam's testimony, then, would be cumulative. *See Stanley v. Cottrell, Inc.*, 784 F.3d 454, 461 (8th Cir. 2015) ("The exclusion of cumulative rebuttal evidence neither prejudices a party nor amounts to an abuse of discretion."). And ultimately, Plaintiffs can request that the Court step in to address any legal matters that they think the jury needs help in understanding.

Mr. Kam's proposed testimony is not "rebuttal" evidence. "Rebuttal evidence is offered to explain, repel, counteract, or disprove *evidence* of the adverse party." *U.S. v. Jean-Guerrier*, 666 F.3d 1087, 1092 (8th Cir. 2012) (emphasis added). Again: the only evidence GM LLC intends to introduce as to the FMVSS is that GM LLC complied. So, proper rebuttal evidence would be confined to that one rather narrow point; it would not embark on a wide-ranging exposition of all things NHTSA-related, as Mr. Kam's proposed testimony does. The Court need not throw open

6
Case 4:19-cv-00714-DGK   Document 130   Filed 12/07/20   Page 6 of 11

the doors to a variety of irrelevant evidence merely because GM LLC plans to reference a single safety standard. And even if this could be called rebuttal evidence, that does not solve the fundamental problem with Mr. Kam's testimony: it might then be *relevant*, but it still would not be *admissible* because it would amount to improper legal instruction from an expert witness.

C. **Mr. Kam's opinions are irrelevant, not helpful to the jury, unduly prejudicial, a waste of time, and confusing to the jury.**

Plaintiffs offer several other scattered arguments for why they believe this testimony should come in. Yet each ultimately fails.

Mr. Kam concedes that his opinions do not relate to the facts of this case – he has no opinions specific to the subject vehicle or the subject crash. (*See* Ex. 2 to Doc. 112 ("Kam Dep.") at 13:23-14:2; 37:15-22.) Even Plaintiffs' response acknowledges that federal law permits Mr. Kam to testify only about "the general nature of FMVSS as minimum standards." (Doc. 124 at 22 (quoting *Fox*, 2019 WL 3483171, at *10).) Yet Mr. Kam's "general overview of the NHTSA and relevant FMVSS will not be helpful to the jury." *See In re Toyota*, 978 F. Supp. 2d at 1068; *Ochoa-Valenzuela v. Ford Motor Co.*, 685 F. App'x 551, 554 (9th Cir. 2017) (affirming district court's exclusion of purported "federal safety standard expert, Allan Kam, as not relevant"). Mr. Kam's "general testimony regarding the NHTSA and FMVSS" instead improperly hinges on his personal interpretation of the NHTSA rulemaking process and the purported meaning of FMVSS 216. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1067 (C.D. Cal. 2013). Those opinions "lack reliability because they are not based on a reliable foundation or methodology. Instead, they amount to Kam's *ipse dixit*." *Id.*

Mr. Kam's opinions also consist of inflammatory matters that amount to a lawyer's arguments from the witness stand. For example, Mr. Kam is expected to say that the NHTSA. "exhorted" General Motors Corporation "to do more than meet the agency's minimum safety

7
Case 4:19-cv-00714-DGK   Document 130   Filed 12/07/20   Page 7 of 11

standards, identifying several 'areas for obvious improvement.'"[2] He will tell the jury that NHTSA "does not approve or certify the safety of vehicles.[3] He will say that FMVSS 216 "had little or no effect on fatality reduction,"[4] And he will dismiss NHTSA itself as a "political" body in which "[m]ajor controversial decisions on issuing, amending, and/or rescinding FMVSSs, are generally made by political appointees, not by NHTSA's expert career technical staff."[5] (One might say the same about Congress, yet our laws still have force and effect.) Last but not least, he will purport to speak for the entire U.S. government in opining that "there was more-or-less a consensus in the Government prior to MY 2006 that FMVSS 216 needed to be upgraded."[6]

Such testimony would improperly encourage the jury to think, among other things, that FMVSS 216 was insufficient due to improper activity by General Motors Corporation or that their verdict will reflect a preference for one political view over another. This testimony is not only irrelevant but also unduly prejudicial, confusing to the jury, and untrue. *See Raley*, 2010 U.S. Dist. LEXIS 3052, at *11-12 (Mr. Kam's testimony "has, at most, marginal relevance here and permitting testimony of that type has a high potential to turn this case into a trial of the adequacy of government regulation in general or a discussion of political influence and its evils, rather than focusing on the issues central to this case."); *see also In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 887 (E.D. Ark. 2008) (experts may not offer credentials rather than analysis – an expert who supplies just a bottom line supplies nothing of value to the judicial process).

---

[2] (*See* Ex. 1 to Doc. 112, Report of Allan Kam and CV at 25 ("Kam Report").)

[3] (*Id.* at 43-44.)

[4] (*Id.* at 44.)

[5] (*Id.* at 7.)

[6] (*Id.* at 21.)

Mr. Kam's testimony would also present a significant risk that the jury will be swayed by his advocacy and credentials as a former NHTSA lawyer critical of the automotive industry. *Id.* at 887 n.86 ("[E]xperts should not be permitted to 'supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence.'") (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004)); *Gibson v. Chrysler Corp.*, No. W2002-03134-COA-R3-CV, 2004 Tenn. App. LEXIS 559, at *52 (Ct. App. Aug. 26, 2004) (affirming trial court's exclusion of Mr. Kam's testimony because it "could confuse and mislead the jury").

Plaintiffs' curious attempt to soften the scope of Mr. Kam's opinions does nothing to diminish their prejudicial effect. Mr. Kam magnanimously noted at his deposition that he does not intend to use the specific term "conspiracy" or claim the auto industry "bought" the government's cooperation on rulemaking. For good reason: he has absolutely no basis for making such groundless claims. But he never backed off his intent to opine as to the political nature of the NHTSA, its efforts to "exhort[]" General Motors Corporation "to do more," the purported effect of FMVSS 216 on fatality reduction, the alleged "consensus in the Government" regarding a FMVSS 216 upgrade, or a host of other lawyer arguments meant to "confuse and mislead the jury." *Gibson* at *52. That Mr. Kam decided not to make the one final leap of accusing GM Corporation of a criminal act of conspiracy or bribery does not make other accusations any less poisonous.

Plaintiffs also seem to say that this testimony is not problematic because (they believe) it is true. GM LLC does not agree that Mr. Kam's opinions are "irrefutable fact," but a *Daubert* motion is not the place to resolve that question. For now, what matters is only whether the testimony falls within the sphere of appropriate expert testimony. Seeing as how this testimony is a narrative, legalistic exposition of federal regulatory law, it does not.

### D. Mr. Kam improperly seeks to opine as to General Motors Corporation's state of mind.

Lastly, under the guise of "special facts," Mr. Kam also seeks to testify about "[General Motors Corporation]'s knowledge by not later than 2001 … that NHTSA would likely increase roof strength requirements." (Doc. 124 at 10.). "District courts in [the Eighth Circuit] appear to be in agreement that '[e]xpert testimony on the intent, motives, or state of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.'" *Langenbau v. Med-Trans Corp.*, 167 F. Supp. 3d 983, 1002 (N.D. Iowa 2016) (collecting cases); *accord Lipp v. Ginger C, LLC*, No. 2:15-cv-04257-NKL, 2017 U.S. Dist. LEXIS 7413, at *12 (W.D. Mo. Jan. 19, 2017) ("It is well settled that expert witnesses cannot … opine on the Parties' state of mind."); *Kruszka v. Novartis Pharm. Corp.*, 28 F. Supp. 3d 920, 931 (D. Minn. 2014) ("Expert testimony on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.") (internal quotation marks omitted). This Court should join them by excluding Mr. Kam's motive-and-knowledge testimony, as "there [is no] appropriate scientific methodology to test or measure the reliability of his opinions as to what [General Motors Corporation] knew, did or did not do, or its motivation." *Tunnell v. Ford Motor Co.*, 330 F. Supp. 2d 707, 729 (W.D. Va. 2004) (mechanical engineer was unqualified to render opinions on the state of Ford's knowledge or motivation as to battery systems and as to Ford's engineering choices or motivation); *see also, e.g., DePaepe v. GMC*, 141 F.3d 715, 720 (7th Cir. 1998) ("Syson lacked any scientific basis for an opinion about the motives of GM's designers" so "he could not testify *as an expert* that GM had a particular motive.").

### D. Conclusion.

For these reasons and the reasons set forth in GM LLC's Motion, the Court should exclude the testimony of Mr. Kam.

December 7, 2020                                        Respectfully submitted,

                                                        DYKEMA GOSSETT PLLC

                                                        /s/ Michael P. Cooney
                                                        Michael P. Cooney (P39405)
                                                        Brian T. Smith (P56174)
                                                        John D. Black (P81027)
                                                        400 Renaissance Center
                                                        Detroit, MI 48243
                                                        (313) 568-6800
                                                        mcooney@dykema.com
                                                        btsmith@dykema.com
                                                        jblack@dykema.com

                                                        Michael R. Carey
                                                        4000 Wells Fargo Center
                                                        90 South Seventh Street
                                                        Minneapolis, MN 55402
                                                        (612)486-1589
                                                        mcarey@dykema.com

                                                        Stephen J. Torline MO #49483
                                                        Benjamin T. Friesen MO #67377
                                                        KUCKELMAN TORLINE KIRKLAND
                                                        10740 Nall Ave., Suite 250
                                                        Overland Park, KS 66211
                                                        T: (913) 948-8610 / F: (913) 948-8611
                                                        storline@ktk-law.com
                                                        bfriesen@ktk-law.com

                                                        *Attorneys for Defendant*