**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

NICOLAS VALADEZ REY and
JESSICA LEANNE QUINN,

        Plaintiffs,

    v.                          Civil Action No. 4:19-CV-00714-DGK

GENERAL MOTORS LLC,

        Defendant.

**DEFENDANT GENERAL MOTORS LLC'S REPLY IN SUPPORT OF MOTION TO
PARTIALLY EXCLUDE EXPERT OPINION TESTIMONY OF STEPHEN R. SYSON**

Of the many questionable opinions Stephen Syson purports to hold, GM LLC challenged only the four most egregious examples. Plaintiffs responded (Doc. 127 "Resp.") by mispresenting Syson's testimony, playing down many subjects' importance, and citing inapplicable cases. After reviewing Syson's *actual* opinions and "methodology," the Court should preclude testimony on the challenged areas.

**A.**      **Syson's "survival space" opinions lack scientific rigor and reliable methodology.**

Plaintiffs disclosed Syson and Brian Herbst to offer expert opinion testimony about the design and performance of the Yukon's roof structure and restraint systems.[1] But only Herbst arguably did enough work to opine on survival space. Syson should not be permitted to testify as though he reached the same opinion independently – because he did not. Plaintiffs talk out of both sides of their mouth. They argue that Syson's position on survival space is merely his "*observation*" of what Herbst measured, rather than his own opinion. But they then spill much ink

---

[1] Syson and Herbst's anticipated testimony substantially overlaps. GM LLC intends the raise the duplicative nature of the testimony at the relevant time.

arguing why this "*observation*" satisfies *Daubert*. Though Syson says his "general statement with regard to the roof" is "reasonably accurate," *Daubert* demands more. (Resp., p. 2.)

*First*, in response to GM LLC's argument that Syson did not tie his opinions about survival space to the facts, Plaintiffs do not dispute that Syson testified that he was wrong about there being "several inches of lateral deformation" and admitted he could not define the required "survival space" here. Plaintiffs, therefore, cannot rely on Syson's broad statement that the "referenced intrusion was well into the survival space," (*Id*. at 5) when Syson admits he cannot define what that "survival space" even was. At bottom, Syson does not know the degree of roof deformation in the subject vehicle, because he didn't measure it himself and he didn't correctly interpret others' measurements. And he does not have any metric for assessing the "survival space." Without those two things, any opinion that the roof structure was "dangerous since it failed to maintain the survival space around Mr. Rey" is pure speculation.

*Second*, GM LLC argued that Syson did not perform the testing and analysis necessary to support his opinion. Plaintiffs cite to portions of Syson's report they claim show "testing and analysis conducted by Mr. Syson and others." (*Id*. at 8.) But the only "engineering steps" listed were (1) looking at photos and (2) reviewing articles – hardly "engineering" or "testing." (*Id*. at section E.) Syson's report also says he reviewed such things as "documents produced by General Motors," "technical drawings and patents," "documents relating to other similar incidents and claims," and "Volvo documents produced by Ford." (*Id*. at 8.) Although Syson may have done some reading, Plaintiffs have not shown that he tied this reading to his opinion on survival space here. This analytic gap is fatal to Syson's opinions under *Daubert*.[2]

---

[2] *See, e.g, In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1042 (D. Minn. 2007) ("Failure to show the reliability of each step in an expert's methodology is fatal under *Daubert*.").

Further, the "focus [of the reliability analysis] must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). Thus, although Plaintiffs invoke Syson's "experience" (Resp., at 8), they do not relate that experience to *this* case. An expert relying on his experience "must explain how that experience leads to the conclusion reached, why the experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2008).[3] When an expert instead refers generally to experience and moves on, he is too often simply covering for impermissible *ipse dixit*. Syson has been known to do that:

> [W]hile the district court and we appreciate and recognize Mr. Syson's credentials and don't doubt the value someone in his field can bring to defective design cases, the evidence he proffered in this case rests on no more than his say so — and that isn't good enough to require its admission.

*Graves v. Mazda Motor Corp.*, 405 F. App'x 296, 299 (10th Cir. 2010).

Plaintiffs erroneously contend that Syson's "differential diagnosis" methodology is inherently reliable under *Harrison v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 85137 (N.D.N.Y. June 18, 2013) (Resp. at 9.) But that court actually required Syson to show his work:

> Mr. Syson asserts that his "differential analysis" was a method that he learned at GM and he conducted his analysis relying upon scientific principles that he also learned at GM when he was employed there as a research engineer. *The expert will be required, however, to set out the scientific principles that were used and will not be permitted to employ the slap or parlor trick test in this case, since that concept does not apply to real world situations.*

---

[3] *See also Borgognone v. Trump Plaza*, 98-CV-6139 (ILG), 2000 U.S. Dist. LEXIS 4081, at *13 (E.D.N.Y. Mar. 9, 2000) ("An expert, regardless of how sterling his credentials, must make clear in his proffer the methods and standards he proposes to apply in arriving at his opinions and evaluations, and must make clear in doing so that those methods and standards are reliable, and subject to objective evaluation by the expert's peers."); *Pearson v. Young*, No. CIV-99-1559-F, 2002 U.S. Dist. LEXIS 29407, at *7-8 (W.D. Okla. Jan. 17, 2002) ("[T]he expert's bald assurance of validity is not enough. Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology.").

*Id.* at \*29 (emphasis added). Similarly, Plaintiffs rely on *Harrison* to say that "lack of testing alone" is not enough to exclude Syson. But again, the problem is that Syson cannot show what work he did to support his survival space opinion – he did not use case-specific testing *or* apply any discernable engineering methodology.[4]

While *Samuel v. Toyota Motor Corp.*, No. MO-13-CV-047, 2015 U.S. Dist. LEXIS 178495, at \*7 (W.D. Tex. Feb. 27, 2015) did state that testing "is not an absolute prerequisite to the admission of expert testimony *on alternative designs*," (Resp. at n. 27) (and alternate designs is not the issue in this part of their brief) it also determined that testing "might be best practice." *Id.* at \*10-11. Most significantly, it excluded all of Syson's opinions as unreliable because they impermissibly relied on "historical data" and, as is true here as well, "did no testing of any kind" on the subject vehicle or of any alternative design. *Id.* at \*1-7.

*Third*, as noted above, although Plaintiffs insist that Syson "did not base any of his opinions on an inaccurate degree of displacement," (Resp., at 11) it is clear that this was not the case – Plaintiffs' accident reconstructionist said there was only one inch of lateral roof displacement, but Syson stated there was several. (Ex. 2 to Motion, at 126:19-127:3.) Working from that mistaken premise, he then concluded that there was inadequate survival space. Contrary to Plaintiffs' claim, Syson's opinions are indeed much like those excluded in *Roberts v. GM, LLC*, No. 4:13-CV-541 CAS, 2015 U.S. Dist. LEXIS 152183, at \*46 (E.D. Mo. Nov. 10, 2015), where "the expert inadequately controlled for relevant variables." The Court should exclude Syson's opinions for the same reasons given by courts that excluded expert testimony based on speculation or incorrect factual premises. *See, e.g.*, *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 865 (8th Cir. 2010)

---

[4] It does not help Syson's cause that he got the roof deformation measurements wrong, or that Plaintiffs have tried to hedge their bets by now saying he's really just making an "*observation*."

(affirming exclusion of expert testimony because the "report relied on incorrect factual premises"; thus, "was flawed both factually and methodologically").[5] This Court should preclude opinion testimony by Syson on "survival space."

**B.    Syson's opinions on any purported "conscious decision" are inadmissible.**

Plaintiffs state that Syson's opinion regarding General Motors Corporation's supposed "conscious decision" is supported by:

> the lack of evidence that the vehicles included the safety features reference or a roof structure designed to perform (withstand) a rollover, the lack of testing that was done, the lack of consideration of rollovers in the design of the vehicles, the deposition testimony of GM's Corporate Representative, and depositions of other GM engineers.

(Resp. at 12.) But an expert may not unjustifiably extrapolate from information or lack of information to form an unfounded conclusion. *See, e.g., FURminator, Inc. v. Kim Laube & Co., Inc.*, 758 F. Supp. 2d 797, 808 (E.D. Mo. 2010); *In re Baycol Prods. Litig.*, 495 F. Supp. 2d at 1004. Plaintiffs are not hiding that this is exactly what Syson has done, and therefore the Court should exclude his unjustifiably extrapolated "conscious decision" opinion.

Plaintiffs try to minimize the very testimony they are fighting to retain, claiming "Syson only said GM made a 'conscious decision' and otherwise ascribes no motive or intent to GM….." (Resp. at 13.) But by definition, any conscious decision requires motive and intent. Consciousness is, after all, a *form* of intent. And at least one court has expressly rejected Syson's attempt to testify as to General Motors Corporation's state of mind. *DePaepe v. GMC*, 141 F.3d 715, 720 (7th Cir.

---

[5] *See also, e.g., Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 416-17 (8th Cir. 2005) (excluding testimony where expert "failed to take into account a plethora of specific facts"); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) ("Even a theory that might meet certain *Daubert* factors, such as peer review and publication, testing, known or potential error rate, and general acceptance, should not be admitted if it does not apply to the specific facts of the case.").

1998) (finding trial court erred in allowing Syson to testify as to the motivation or purpose behind General Motors Corporation's engineering choices). That court recognized, "the whole point of *Daubert* is that experts can't 'speculate,'" and found such testimony inadmissible because "Syson lacked any scientific basis for an opinion about the motives of GM's designers," thus "could not testify *as an expert* that GM had a particular motive." *Id.* (emphasis in original).

In addition to *DePaepe*, which dealt expressly with Syson, courts in this circuit have uniformly held that expert opinion testimony regarding a corporation's conscious decisions is "inherently unreliable, based on speculation and conjecture rather than fact and informed expert opinion." *See, e.g., Lafarge N. Am., Inc. v. Discovery Grp. LLC*, No. 05-1110-CV-W-FJG, 2010 U.S. Dist. LEXIS 77288, at *12-13, *19 (W.D. Mo. July 30, 2010) ("[T]he Court finds that this proposed [expert] testimony improperly goes to [the corporation's] state of mind, and should not be admitted into evidence.").[6] Although Plaintiffs try to draw some distinction where the expert has had some personal experience with the company, *none* of the cases they rely upon support that notion. *Adams v. United States*, 2009 WL 1324231, at *1 (D. Idaho 2009), for example, just says that being an expert in an industry does not make one an expert on a particular company or its intent.[7]

---

[6] *See also, e.g., Langenbau v. Med-Trans Corp.*, 167 F. Supp. 3d 983, 1002 (N.D. Iowa 2016) ("[expert's] deposition testimony that corporate officials made 'conscious decisions' about the content of the Operations Manual cannot be twisted into an acknowledgement that [defendant] made a 'conscious business decision' to disregard the safety of others…."); *Neuharth v. NACCO Materials Handling Grp.*, 2002 U.S. Dist. LEXIS 28673, at *12 (D.S.D. Dec. 17, 2002) ("[A]n expert in a products liability case should not be allowed to speculate regarding a manufacturer's motives or purposes."); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d at 1054 (excluding "expert testimony" that "speculates as to Bayer's motive, intent or state of mind, or speculates as to motives of the FDA or what other drug companies would do").

[7] Moreover, Syson's work at General Motors Corporation occurred a half century ago, decades before the subject vehicle was designed and manufactured. According to his resume, Syson worked as Research Engineer at General Motors from February 1965 to December 1967, then again from August 1969 to February 1971. Whatever Syson might believe about General Motors

In *Mahaska Bottling Company, Inc. v. PepsiCo*, Inc., 441 F. Supp. 3d 745 (S.D. Iowa 2019), cited by Plaintiffs, the expert was not opining on the corporation's intent, but instead offering "factual testimony regarding things such as market conditions and industry trends, from which the jury could draw inferences regarding a party's intent." *Id.* at 760. That is not what Syson purports to do here.

Plaintiffs insist that "the underlying bases for Syson's opinion certainly can be [admitted] and he may likewise testify as to the state of knowledge in the industry," even if he can't say GM LLC's decision was "conscious." (Resp. at 13-14.) The two cases on which they rely are readily distinguishable. In *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-0T928, 2010 U.S. Dist. LEXIS 121442, at *162 (S.D. Fla. Oct. 21, 2010), the court partially admitted underlying facts that involved a chronology of drug labeling. Meanwhile, in *Tunnell v. Ford Motor Co.*, 330 F. Supp. 2d 707, 729 (W.D. Va. 2004), the expert was permitted to "rely on documents and other evidence" only in connection with his "feasibility/availability and unreasonably dangerous opinions." By contrast, Syson has no underlying facts, and could not cite a single document to support his "conscious decision" opinion. (Ex. 2 to Motion, at 152:17-19.) The Court should exclude Syson's testimony that goes to General Motors Corporation's purported "conscious decision" or any other state of mind.

## C.     <u>Syson's alternative design testimony lacks testing and data.</u>

Plaintiffs argue in a footnote (Resp. at n. 49) that Missouri law does not require that there be an safer alternative design. But Plaintiffs are planning on using Syson's alternate design theories

---

Corporation's motives and intent based on his short time as a low-level researcher there in the late 1960s and early 1970's, it strains credulity that he could reliably comment on what thought processes went into the decades-later design of the restraints and roof structure of the 2006 Yukon.

as a way to prove a defect in the subject vehicle. Having made that choice, those theories must satisfy *Daubert*.

Plaintiffs again argue that "[l]ack of testing alone is not a sufficient bases for excluding an expert's opinions" and in any event, Syson did test his alternative design opinions and his "experience further forms the bases for his opinions." (Resp. at 14.) Yet once again, the citations to Syson's report actually show that Syson simply proposes alternative designs that he did not test or even analyze under the facts of this crash. *See, e.g.*, *Weatherspoon v. Nissan N. Am., Inc.*, No. 3:07cv24-DPJ-LRA, 2010 U.S. Dist. LEXIS 21329, at *14 (S.D. Miss. Feb. 17, 2010) (partially excluding Syson's opinions because none of his "questions are tested or answered, and no methodology is apparent").[8] As he did in *Weatherspoon*, Syson here cites to purported methodology in his report, but then does not apply the methodologies described, which is fatal. *See, e.g., Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1060 (D. Minn. 2012) ("[A]n expert purporting to invoke [a methodology] must show he applied the methodology reliably to the facts of the case."). Most damningly, Syson admits neither he nor anyone else has tested his proposed alternatives individually, let alone as a three-part system, as Plaintiffs now claim the designs should be viewed.[9] In sum, although valid testing and research are crucial to establishing the

---

[8] *See also Wagner v. Hesston Corp.*, 450 F.3d 756, 758–59, (8th Cir. 2006) (excluding expert testimony where, *inter alia*, testing of theories was limited, largely undocumented, and performed for the purposes of another litigation).

[9] Q.   Now, Mr. Syson, your seat belt discussion section, and then the subsequent alternative design section that talks about cinching latch plates and pretensioners, is it fair to say that you've never tested the efficacy of a pretensioner and a cinching latch plate in circumstances similar to the Rey accident; correct?

 A.   I have not. That's correct. I don't know if anybody else has, but the -- the -- you know, the majority of the roll-over testing that I'm familiar with, at least, that has been done for research purposes is either CRIS testing or dolly roll-over testing or some spiral ramp testing….None of those tests is really a representation of exactly what happened here where we have a -- kind of a yaw-induced roll event. You

8

reliability of opinions in product liability cases, [10] Syson did none. The Court should exclude Syson's alternative design opinions as unreliable.

## D.  <u>Syson's general opinions about rollover accidents are irrelevant and unreliable.</u>

Plaintiffs give short shrift to the last subject of GM's motion by basically saying "Syson has training," so he can offer bald general opinions about rollover accidents, as well as unsupported statistical opinions that Plaintiffs now label "background information." (Resp. at 15.) But "opinions formulated merely upon general observations of the evidence and general scientific principles [are] unreliable." *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 646 (8th Cir.

---

know, probably the closest to that is the tests that have been done by Micky Gilbert, and none of those tests that I know of have had instrumented crash test dummies in them. They just have been primarily for reconstruction purposes and so they don't really give us much information as to how well the belts and the roof are going to work in a real world crash.

(Ex. 2 to Motion, at 220:12—221:11).

[10] *See, e.g., Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1084 (8th Cir. 1999) (the "proffered [expert] testimony … flunked the reliability prong of *Daubert*" where he "ha[d] not attempted to construct or even draw the suggested device, much less test its utility as a safety device or its compatibility with the corn head's proper function"); *Pestel v. Vermeer Mfg. Co*, 64 F.3d 382, 384 (8th Cir. 1995 ("First, the Court noted that Mr. Vidal had not tested his guard. The Court then refused to allow Mr. Vidal to use any of the testing done by Vermeer because he had not developed, participated in, or supervised the testing of his design. The Court stated that this kind of testing by the manufacturer is not legally sufficient and cannot be said to be the fair scientific testing *Daubert* addresses."); *Estate of Groff v. Aquila, Inc.*, No. 4:05-cv-0250-JAJ, 2007 U.S. Dist. LEXIS 98729, at *30 (S.D. Iowa Sep. 28, 2007) ("[T]he function of expert testimony is to explain how something happened, not to speculate as to how something could possibly have happened.") *Peitzmeier v. Hennessy Indus., Inc.,* 97 F.3d 293, 297 (8th Cir. 1996) (rejecting theories where expert Milner "concedes that he has neither designed nor tested for safety or utility any of the proposed safety devices that he claims are missing from the [product]….Milner has shown no factual basis to support an opinion that his design changes are feasible or that they would not hinder the efficacy [of the product]….We reject the suggestion that cross-examination…and the number of Milner's court appearances…can take the place of scientific peer review. Because Milner's concepts are unfinished and untested, and have not been subjected to peer review, any testimony from Milner about how his proposed design changes would have reduced [plaintiff's]injuries is wholly speculative.")

2009). And Syson's opinions in this regard are not merely "background information." For example, Syson posits, "there is no question in my mind that Mr. Rey would have survived this crash without serious injury had one or more of these technologies been incorporated to address the three prongs of the occupant protections system." (Ex. 1 to the Motion, at 14, 19.) This "general observation[] of the evidence" is unreliable given that Syson offers no testing or data to support this sweeping conclusion. *Presley*, 553 F.3d at 646; *GMC v. Harper*, 61 S.W.3d 118, 128 (Tex. App. 2001) ("Unsupported statements that an alternative design would be safer is no evidence.").

Likewise, Syson's opinion that "[a]verage consumers are not aware of this enhanced risk of injury" rests solely on his say-so.[11] He has not conducted surveys, interviewed consumers, or otherwise reviewed supporting data. And he lacks qualifications and support for his purported statistics that "SUVs are more than twice as likely as passenger cars to roll over" and cost "billions of dollars annually[.]" (Motion, at 14.) *Roberts*, 2015 U.S. Dist. LEXIS 152183, at *46 (excluding opinions on "statistical associations and comparative risk" as unreliable "because they are merely general observations about rollover accidents that have no relation to the issues in this case"). In sum, what Plaintiffs and Syson characterize as mere background, are in actuality dubious and baseless opinions, which should be precluded.

**E.    Conclusion.**

For these reasons and the reasons set forth in the Motion, the Court should exclude the four opinions of Syson set forth in GM LLC's Motion.

---

[11] *See, e.g.*, *Popovich v. Sony Music Entm't, Inc.*, No. 1:02CV359, 2005 WL 1126756, at *8 (N.D. Ohio May 2, 2005) (excluding expert who intended to testify about what "consumers are commonly aware of" where the expert was not qualified to opinion on "consumer preferences").

Respectfully submitted,

DYKEMA GOSSETT PLLC

/s/ Michael P. Cooney
Michael P. Cooney (P39405)
Brian T. Smith (P56174)
John D. Black (P81027)
400 Renaissance Center
Detroit, MI 48243
(313) 568-6800
mcooney@dykema.com
btsmith@dykema.com
jblack@dykema.com

Michael R. Carey
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612)486-1589
mcarey@dykema.com

Stephen J. Torline MO #49483
Benjamin T. Friesen MO #67377
KUCKELMAN TORLINE KIRKLAND
10740 Nall Ave., Suite 250
Overland Park, KS 66211
T: (913) 948-8610 / F: (913) 948-8611
storline@ktk-law.com
bfriesen@ktk-law.com

*Attorneys for Defendant*

Dated: December 14, 2020