# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| NICOLAS VALADEZ REY and<br>JESSICA LEANNE QUINN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: 4:19-cv-00714-DGK |
| v. | ) | |
| | ) | |
| GENERAL MOTORS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DETERMINING CHOICE OF LAW

This lawsuit stems from a single-car accident that occurred on August 31, 2019, in Parras de la Fuente, Coahuila, Mexico. In the accident, a 2006 GMC Yukon XL designed, manufactured, and sold by Defendant General Motors LLC ("GM") left the road and rolled over, collapsing the vehicle's roof, and leaving the driver paralyzed. Plaintiffs allege the vehicle was defectively designed or manufactured, unreasonably dangerous, and that GM failed to warn about the vehicle's higher rollover risk. Plaintiffs also allege GM was negligent and negligently failed to warn of the vehicle's rollover risk. GM denies the allegations.

Now before the Court are the parties' cross motions to determine the choice of substantive law the Court should apply to this lawsuit. ECF Nos. 81-82. Plaintiffs contend Missouri law should apply; GM contends the law of the Mexican state where the accident occurred, Coahuila, should govern. Finding that Missouri does not have an overriding interest which rebuts the presumption under Missouri law that the place of the injury has the most significant relationship, the Court holds Coahuila law applies to all of Plaintiffs' claims. Accordingly, Plaintiffs' motion (ECF No. 81) is DENIED and Defendant's motion (ECF No. 82) is GRANTED.

1

## Background

GM is a Delaware limited liability company with its principal place of business in Detroit, Michigan, but which is authorized to conduct business in Missouri and has a registered agent in Missouri.

Plaintiff Nicolas Rey is a Missouri resident who is a Mexican citizen. At the time of the accident, he resided in Missouri. His wife, Plaintiff Jessica Quinn, is a Missouri citizen who resides in Missouri.

The 2006 GMC Yukon XL ("Yukon") at issue in the case was assembled in Janesville, Wisconsin, and originally distributed by General Motors Corporation to Freedom Pontiac Buick GM Truck, Inc. in Odessa, Texas. The vehicle was subsequently resold by several third-parties. Eventually, Mr. Rey purchased the Yukon in June 2019 from a dealership in Kansas City, Missouri.

In July of 2019, Mr. Rey, Mrs. Quinn, and their children drove from Kansas City to the city of Torreón in Coahuila,[1] Mexico. The purpose of the trip was to see about renewing Mr. Rey's visa so he could become a permanent U.S. resident, and to visit Mr. Rey's family there. Mr. Rey, Mrs. Quinn, and their children were in Mexico for nearly a month before the accident occurred.

The day preceding the accident, August 30, 2019, Plaintiff Jessica Quinn drove the Yukon and her family, along with Mr. Rey's brother and mother to the Mexico – United States border. At the time, Mr. Rey could not cross back into the United States because his visa had expired. The original plan was for Mrs. Quinn to cross the border and return home with their children while Mr. Rey returned to Torreon with his mother and brother to complete the visa process. Once at the

---

[1] Coahuila is situated in the North of Mexico. It is the third-largest state of Mexico by square mileage, and it borders the United States for 318 miles along the Rio Grande.

border, however, Mrs. Quinn changed her mind and decided to stay in Mexico with her husband and children.  The family then began driving back to Torreón.

The family drove through the night.  Around 6:00 a.m. on August 31, Mr. Rey began driving.  Sometime after that, the accident at issue in this case occurred in Parras de la Fuente, a city in Coahuila.

After the crash, Mr. Rey received treatment at Torreon General Hospital and Angeles Hospital in Torreon, Coahuila.  Among other treatment, he underwent spinal surgery at Angeles Hospital.  He was subsequently airlifted to the United States where he has been receiving medical care, including physical and occupational therapy in the Kansas City, Missouri, area.

## Standard

A federal court exercising its diversity jurisdiction applies the choice of law rules of the state where it sits.  *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007).  In tort litigation, including product liability claims, Missouri follows section 145 of the Restatement (Second) of Conflict of Laws, which employs the "most significant relationship" approach. *Kennedy v. Dixon*, 439 S.W.2d 173, 184-85 (Mo. 1969); *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1359 (8th Cir. 1994).  It states:

> (1)  The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to that occurrence and the parties under the principles stated in § 6.
>
> (2)  Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

3

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971).

But section 146 essentially creates a presumption that the law of the jurisdiction in which the injury occurred will govern.[2] *Dorman*, 23 F.3d at 1358–59 (applying sections 145 and 146 under Missouri law where an injured Canadian saw operator brought a products liability action against a Missouri saw designer). This presumption may be rebutted, "if, as demonstrated by the principles enunciated in section 6 in light of the contacts listed in section 145, another state has a more significant relationship to the accident and the parties with respect to the particular issue in dispute." *Id.* "Under Missouri law, it is not the number of contacts with a particular state that is crucial to the analysis but the quality of these contacts." *Id.*

Finally, section 6 states in relevant part that,

> (2)  When there is no such directive, the factors relevant to the choice of the applicable rule of law include
> (a) the needs of the interstate and international system,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (Am. Law Inst. 1971).

---

[2] Section 146 states:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 146 (Am. Law Inst. 1971).

4

**Discussion**

**I.      There is an actual conflict of law.**

The threshold question for the Court here is, is there an actual conflict of law?  "Under Missouri law, a conflict of laws does not exist unless the interests of the two states cannot be reconciled."  *Interstate Cleaning Corp. v. Com. Underwriters Ins. Co.*, 325 F.3d 1024, 1028 (8th Cir. 2003).  Mexico is a civil law country, and GM has offered undisputed evidence under Coahuila law, "inexcusable negligence" by the party seeking recovery of damages provides a full defense to a damages' claim.  Coahuila Civil Code §1851; *see Day v. Amor Ministries*, No. 2013 WL 709660, at *7 n.7 (Ariz. Ct. App. Feb. 26, 2013) (noting the defendant had offered evidence that "Mexico follows a negligence system which limits damages to direct out-of-pocket expenses and bars relief to a plaintiff who is found to have contributed to his injuries.") (unpublished opinion). Missouri, on the other hand, is a pure-comparative negligence state, allowing a plaintiff to recover damages even if she is 99% at fault.  *See Gustafson v. Benda,* 661 S.W.2d 11, 15 (Mo. 1983). Since GM has suggested that Plaintiff Rey is at least partially at fault for the accident, which forum's law applies is potentially outcome determinative.  Hence, an actual conflict of law exists with respect to Plaintiffs' claims, and a choice of law analysis is required.

**II.     Under the "most significant relationship" test, the law of Coahuila, Mexico, applies.**

**A.  The presumption in section 146 applies.**

The analysis begins with the presumption created by section 146 that the applicable law is the law of the jurisdiction where the injury occurred.  *Dorman*, 23 F.3d at 1359.  Here, the injury occurred in Coahuila, so the presumption is that Coahuila law applies.

Plaintiffs' argument that this presumption is overcome because the location of the accident in Mexico was "merely fortuitous," since it happened while the family was temporarily on vacation

5

in Mexico, is unavailing. Under Missouri law, "the place of the injury is unimportant to the selection of the applicable law if it is fortuitous in that it bears little relation to the occurrence and the parties." *Id.* at 1360. A fortuitous contact is one in which the plaintiff is injured in the jurisdiction while briefly passing through or passing over it (such as on a train or airplane trip) "so that the place of the injury is inconsequential." *Id.*

Plaintiffs' contacts here with Coahuila were not fortuitous—they were intentional. Plaintiffs were on vacation in Torreon, a city in Coahuila, for a month prior to the crash, and the crash occurred in Coahuila while they were driving back from the border to stay in Torreon for some additional time. Granted, there was nothing in the accident that was particular to Mexico— the same accident could have occurred in Missouri—but the fact the accident could have happened in Missouri is irrelevant to the analysis. *See Stanley v. Cottrell, Inc.*, No. 4:10-CV-1505-HEA, 2013 WL 466232, at *4 (E.D. Mo. Feb. 7, 2013) ("While it is true that the injury could have theoretically happened elsewhere . . . every injury could *hypothetically* happen elsewhere, if the facts were changed.").

The cases cited by Plaintiffs for support that the location of the accident was fortuitous, *Bavlsik v. General Motors LLC*, 4:13-CV-509-DDN, 2015 WL 5919857 (E.D. Mo. October 9, 2015) and *Cervantes v. Bridgestone/Firestone North American Tire Company, LLC*, No. 07C-06-249-JRJ, 2010 WL 431788 (Del. Super. Ct. Feb. 8, 2010), are not persuasive. Although the facts of both cases are analogous, the conflict of law analysis in each is unconvincing. *Cervantes* does not mention section 146 at all, and while *Bavlsik* mentions section 146, it does not acknowledge the presumption in favor of the jurisdiction where the accident occurred. Indeed, *Bavlsik*—a case from the Eastern District of Missouri—does not mention *Dorman* at all, which is controlling law.

Hence, the presumption applies.

6

**B.** **The presumption in section 146 is unrebutted.**

The Court also holds this presumption is unrebutted because the principles enunciated in section 6 in light of the contacts listed in section 145 do not demonstrate that Missouri, or any other state, has a more significant relationship to the accident. Since this is a personal injury action, section 6 factors (a), (d), and (f), which concern the needs of the interstate and international system, the protection of justified expectations, and the certainty, predictability and uniformity of result, are implicated only minimally, if at all. *Dorman*, 23 F.3d at 1359. If anything, these factors reinforce the presumption, since Mexico has an interest in applying its tort law to foreign guests visiting its country.[3] *See Fallhowe v. Hilton Worldwide, Inc.*, 2015 WL 5081690, at *7 (D. Colo. Aug. 28, 2015). Similarly, paragraphs (b), (c), and (e), which address the relevant policies of the forum, the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, and the basic policies underlying the particular field of law, do not demonstrate that Missouri has a more significant relationship to the accident than Coahuila does. As for the final factor, (g), the ease in the determination and application of the law to be applied, while the Court has extensive experience determining and applying Missouri tort law, and no experience determining and applying Mexican tort law, courts around the country have successfully applied Mexican tort law, and the Court is confident it can do so too. Additionally, a court should not let its own lack of familiarity with foreign law tilt the choice of law calculus. *Bell Helicopter Textron, Inc. v Arteaga*, 113 A.3d 1045, 1060 (Del. 2015).

---

[3] Characterizing Mr. Rey as an American vacationing in Mexico is probably giving him the benefit of the doubt. Although he spent most of his life in America, at the time of the accident, he was a Mexican citizen returning to Mexico for as long as necessary to renew his visa, facts which weigh in favor of applying Mexican law.

C.      **Plaintiffs' other arguments concerning the Restatement are unavailing.**

Plaintiffs also argue that the place of injury holds little weight in the choice of law analysis because the alleged failure to warn occurred in Missouri.  This argument is unpersuasive.  The case cited by Plaintiffs for support, *Winter v. Novartis Pharmaceuticals Corp.*, is not analogous because in that case both the failure to warn and the actual injury occurred in Missouri.  739 F.3d 405, 410 (8th Cir. 2014).

Plaintiffs' argument under section 145(2) that they have "extensive" contacts in Missouri which are entitled to "great weight" in the analysis fares no better.  Even if section 146 did not control, the Court would likely reach the same result by applying the section 145(2) factors.  These are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.  The only clear factor here is where the injury occurred:  In Mexico.  The other factors are indeterminate.  The place where the conduct causing the injury occurred could be in several states, including Wisconsin (where the Yukon was assembled), Texas (where it was originally distributed), Coahuila (where it rolled over), Michigan (or wherever it was designed), or Missouri (where Mr. Rey purchased it).  The domicil, residence, nationality, place of incorporation and place of business of the parties is similarly scattered across multiple jurisdictions, including Mexico (where Mr. Rey is a citizen), and the parties' relationship is not centered in any particular place.

III.     **GM did not waive application of foreign law.**

Finally, Plaintiffs' claim that GM waived any application of Mexican law by failing to comply with Federal Rule of Civil Procedure 44.1 is without merit.  Rule 44.1 requires that "[a] party who intends to raise an issue about a foreign country's law must give notice by pleading or

8

other writing." The committee notes on the rule state the purpose of this requirement is "[t]o avoid unfair surprise," and the notice must be reasonable and in writing. Fed. R. Civ. P. 44.1, advisory committee's note to 1966 adoption. While written notice "may, but need not be, incorporated in the pleadings," "it seems best to permit a written notice to be given outside of and later than the pleadings, provided the notice is reasonable." *Id*. Since the accident here occurred in Mexico, the issue of whether Mexican law applies was likely to be raised, and GM's giving formal written notice in conjunction with its briefing on choice of law was reasonable. *See In re Griffin Trading Co.*, 683 F.3d 819, 822 (7th Cir. 2012) (holding defendants did not violate Rule 44.1 because the plaintiff's "own complaint sufficed to give notice about the applicability of foreign law" by citing a precipitating event occurring overseas as the cause of liability). Further, Plaintiffs obviously suffered no unfair surprise since they filed their own choice-of-law motion the same day GM filed its motion.

      **IT IS SO ORDERED.**

Date: October 13, 2021                /s/ Greg Kays
                                         GREG KAYS, JUDGE
                                         UNITED STATES DISTRICT COURT