IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NICOLAS VALADEZ REY and <br> JESSICA LEANNE QUINN, <br> <br> Plaintiffs, <br> <br> v. <br> <br> GENERAL MOTORS LLC, <br> <br> Defendant. | Case No.: 4:19-cv-00714-DGK |

## ORDER DISMISSING COUNT II OF THE SIXTH AMENDED COMPLAINT AND DENYING LEAVE TO FILE PROPOSED SEVENTH AMENDED COMPLAINT

This lawsuit stems from a single-car accident that occurred on August 31, 2019, in Parras de la Fuente, Coahuila, Mexico. In the accident, a 2006 GMC Yukon XL driven by Plaintiff Nicolas Rey left the road and rolled over, collapsing the vehicle's roof, and leaving Mr. Rey paralyzed. Plaintiffs allege Defendant General Motors LLC ("GM") is responsible for his injuries. GM denies the allegations.

Now before the Court are Defendant's Motion to Dismiss Count II of Plaintiffs' Sixth Amended Complaint, ECF No. 209; Plaintiffs' putative Seventh Amended Complaint, ECF No. 215; Defendant's Motion to Strike Plaintiffs' Seventh Amended Complaint, ECF No. 219; and Plaintiffs' Response in Opposition to GM's Motion to Strike and Plaintiffs' Motion for Leave to File Seventh Amended Complaint, ECF No. 222.

Because Count II in both the Sixth and Seventh Amended Complaint plead a claim for an indirect injury, namely loss of consortium, which is impermissible under Coahuilan law, Defendant's motions are GRANTED and Plaintiffs' motions are DENIED.

## Background

The procedural background to these motions is as follows. After the Court determined that Coahuilan law governs this dispute, Order Determining Choice of Law, ECF No. 172, the Court granted Plaintiffs leave to file a sixth amended complaint so Plaintiffs could replead their complaint under Coahuilan law. On October 21, 2021, Plaintiffs filed the Sixth Amended Complaint. ECF No. 197. Defendant subsequently moved to dismiss Count II, styled "Jessica's Moral Damages Under Coahuila Law," arguing it was a claim for loss of consortium, or "indirect" moral injury, which is prohibited under Coahuilan law.

On November 1, 2021, Plaintiffs filed their suggestions in opposition to the motion to dismiss. ECF No. 216. At the same time, without seeking Defendant's consent or leave of Court, they filed the proposed Seventh Amended Complaint. Later, after Defendant moved to strike the Seventh Amended Complaint, Plaintiffs filed their pending motion for leave to amend.

## Discussion

Plaintiffs filed the Seventh Amended Complaint in response to Defendant's motion to dismiss Count II. It is essentially identical to the Sixth Amended Complaint, except that Count II in the Seventh Amended Complaint, styled "Jessica Quinn's Moral Injury/Damages Claim Under CCC Art. 1895,"[1] is pled with additional factual and legal assertions.

### I. The motion to dismiss Count II is granted.

Count II of the Sixth Amended Complaint is a loss of consortium claim that Plaintiffs

---

[1] Moral injury is the injury a person suffers to his feelings, affections, beliefs, etc. as a result of an illicit act or omission. Coahuilan Civil Code, Art. 1895 ¶ 1. Moral damages is a sum of money that a court awards equal to the cost of the measures taken by the injured person to cure or deal with the moral injury. *See id.* ¶ 3. Moral damages are available to a wrongfully injured person and to the survivors of a person wrongfully killed, but not to the family members of a wrongfully injured person. *See Rodriguez v. Casa Chapa S.A., de C.V.*, No. DR:04-CV-0034-AML, 2006 WL 8433818, at *4-5 (W.D. Tex. Aug. 22, 2006) (holding moral damages available to the wrongfully injured and to the survivors of the wrongfully killed).

have couched as a moral injury claim. In relevant part, it asserts that Ms. Quinn "sustained the loss of services, society, companionship, and consortium of her husband." Sixth Am. Compl. at ¶ 68. Granted, it also asserts she sustained expenses for his medical care and treatment, and that she has "sustained extreme emotional distress and mental anguish brought about by seeing her husband's injuries . . . ." *Id*. But the former are material damages for which only he can recover under Coahuilan law, and the latter are not compensable at all because they are indirect injuries. Coahuilan Civil Code ("CCC"), Art. 2306.

Coahuilan law does not provide a cause of action for an alleged loss of consortium or any other "indirect" injury. It explicitly states, "[d]amages and losses must be a *direct and immediate* consequence of the breach of the obligation . . . ." *Id*. (emphasis added). A claim for an indirect injury, such as loss of consortium, is simply not recognized under Mexican law. *See* Manuel Bejarano Sanchez, Obligaciones Civiles 218 (6th ed. 2010) at 12.30 – Requirements for Compensation for Damages in General; Jorge A. Vargas, *Moral Damages Under the Civil Law of Mexico, Are These Damages Equivalent to U.S. Punitive Damages?*, 35 U. Miami-Am. L. Rev. 183, 193-94 (2004). Indeed, Plaintiffs explicitly acknowledged this reality of Mexican law in the Sixth Amended Complaint when they wrote: "Coahuila does not have a loss of consortium claim . . ." Sixth Am. Compl. ¶ 68.

Consequently, Count II of the Sixth Amended Complaint is dismissed for failure to state a claim.

## II. Leave to file the Seventh Amended Complaint is denied for futility.

Federal Rule of Civil Procedure 15(a)(2) provides "a party may amend its pleadings only with the opposing party's written consent or the court's leave." While "leave to amend shall be freely given when justice so requires, plaintiffs do not have an absolute or automatic right to

amend." *United States v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) (citations omitted). Denial of leave is appropriate "in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001).

At the time Plaintiffs filed the Seventh Amended Complaint, they incorrectly believed they could file it as a matter of right under Rule 15(a)(1)(B). Indeed, Plaintiffs now concede that they "misread" or "misinterpreted" Rule 15(a), and that they may amend their pleading only with Defendant's consent or the Court's leave. Pls.' Resp. in Opp'n to GM's Mot. to Strike and Pls.' Mot. for Leave to File Seventh Am. Compl. at 2, 7. Defendant's do not consent to amending the pleading, so Plaintiffs need leave of Court.

The Court declines to grant such leave because doing so would be futile. As discussed above, Count II of the Sixth Amended Complaint is an impermissible indirect injury claim. The proposed Count II in the Seventh Amended Complaint is the same thing, albeit worded more artfully. It asserts that as a "*direct result and immediate consequence*" of GM's conduct Ms. Quinn "sustained her own personal moral injury and damages to her feelings, affections, beliefs, decorum, honor, reputation, privacy, image, and/or the view that others have of her under CCC Art. 1895 and 230." Seventh Am. Compl. ¶ 83. Although cloaked in the language of a direct injury claim, it is not. It is an indirect injury claim, a derivate claim for loss of consortium dependent on GM being responsible for her husband's injuries. Any such claim possessed by Ms. Quinn sprung into existence when her husband became paralyzed as a result of GM's alleged misconduct. As paragraph 84 notes, "[t]he moment the defects in the Subject Vehicle manifested and *paralyzed her husband* is the moment that forever affected the Plaintiffs' marriage and lives

. . . [Ms. Quinn's] life was directly and immediately affected as a consequence." *Id*. ¶ 84 (emphasis added). If her husband's claim against GM fails, her claim against it also fails, thus her claim is derivative of his.

The Court is not persuaded by Plaintiffs' assertion in the Seventh Amended Complaint that—never mind what they wrote in the Sixth Amended Complaint—Coahuilan law recognizes a loss of consortium claim.

The proposed Count II consists of not just paragraphs 81 through 85 in the Seventh Amended Complaint, but also the preceding paragraphs which are incorporated by reference. This includes paragraphs 69 through 75 which suggests Coahuilan law recognizes a claim for loss of consortium. In relevant part, paragraph 69 states,

> GM is expected to argue—and already has in other pleadings—that there is no claim for pain and suffering, mental anguish, and *loss of consortium* under Mexican and Coahuilan law. *That is untrue*. In a recent law review detailing a landmark Mexican Supreme Court case that allowed not just punitive damages in a moral damages lawsuit brought by parents of their adult son, but also, explained the evolving and expanding nature of compensatory damages under Mexican law [sic].

(Emphasis added). The landmark case referred to is the *Mayan Palace* decision from 2014, which applied the Mexican Constitution and human rights treaties to the Mexico City Civil Code and held that contrary to the prevailing rule in Mexican law, a family member of a decedent in a wrongful death case may recover punitive-type damages. The law review article is a 2019 article from the Hastings International & Comparative Law Review. Edgardo Muñoz, Rodolpho Vázquez-Cabello, *New Punitive Damages in Mexican Law – Or the Chronicle of a Failed Legal Transplant Foretold?*, 42 Hastings Int'l & Comp. L. Rev. 203 (2019).

This argument is at best unavailing and at worst misleading. To begin, the *Mayan Palace*

case is distinct from this case. It concerns awarding punitive-type damages as part of a moral damages claim to the survivors of a person wrongfully killed. In the present case, Ms. Quinn is not seeking to recover expanded moral damages as the survivor of a person wrongfully killed, or even as a directly wrongfully injured person, persons who it is firmly established under Mexican law may recover moral damages. *See Rodriguez v. Casa Chapa S.A., de C.V.*, No. DR:04-CV-0034-AML, 2006 WL 8433818, at *4-5 (W.D. Tex. Aug. 22, 2006) (holding moral damages are available to the survivors of a person wrongfully killed and persons who are wrongfully injured). Rather, she is seeking to recover moral damages as an *indirectly* injured person, which is flatly prohibited under Coahuilan and Mexican law. Thus, the issues in the present case are very different from those in *Mayan Palace*.

Further, even if *Mayan Palace* suggested a loss of consortium could be recognized, as Plaintiffs' counsel knew (or should have known), even though it was issued by the Mexican Supreme Court, it "is not yet a binding precedent." *See* Muñoz et al., *supra*, at 236. A single ruling from the Mexican Supreme Court is what is known as an isolated thesis, it is not a binding precedent. In order for *Mayan Palace*'s holding to become binding precedent, the higher courts in Mexico would have to reiterate its holdings in a series of five cases, without interruption by any contradictory rulings. *Id*. Hence, even if it addressed claims for indirect injuries such as loss of consortium, which it does not, it would not be binding precedent.

Further, even if *Mayan Palace* had some precedential value, it is not clear whether it would apply to this particular dispute. As Defendant notes, the Mexican political system is a federal system similar to that of the United States. As a result of Mexico's Supremacy Clause and its federalist structure, binding jurisprudence of the Mexican Supreme Court is binding in the entire country on matters of federal authority. Thus, Mexican Supreme Court jurisprudence

6

interpreting a provision of the Federal Civil Code is binding in all situations in which the federal code applies. However, because the states are sovereign on matters of state law, that jurisprudence does not control state civil codes, such as the CCC. While a decision of a Mexican federal court or of courts of other states may be instructive, it is not binding. It is up to judges or legislators in the states to adopt or reject the Supreme Court's interpretation in applying or defining state law. Since *Mayan Palace* concerned the application of the Mexican Constitution and human rights treaties to the Mexico City Civil Code, not the CCC, its value here is limited.

Finally, it is difficult to argue that *Mayan Palace* even demonstrates Mexican law is "evolving and expanding" towards recognizing more kinds of compensatory damages as Plaintiffs' suggest, because there has been no real movement towards doing so since the decision was issued in 2014. Perhaps that why the authors of the Hastings Law Review article questioned whether the *Mayan Palace* decision was simply an attempted, but failed, legal transplant.

In short, Plaintiffs' contention in the Seventh Amended Complaint that Coahuilan law recognizes a loss of consortium claim is not persuasive.[2]

Because the Court concludes that, like Count II in the Sixth Amended Complaint, Count II in the Seventh Amended Complaint could not withstand a Rule 12(b)(6) motion to dismiss, granting leave to amend is futile. *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018).

Accordingly, Defendant's Motion to Dismiss Count II of Plaintiffs' Sixth Amended Complaint, ECF No. 209, and Defendant's Motion to Strike Plaintiffs' Seventh Amended Complaint, ECF No. 219, are GRANTED. Dismissal of Count II is with prejudice.

---

[2] If anything, it is troubling. Given Plaintiffs' acknowledgment in the Sixth Amended Complaint that a loss of consortium claim does not exist under Mexican law, such an abrupt and unsupported about-face erodes Plaintiffs' counsel's credibility with the Court.

Plaintiffs' Motion for Leave to File Seventh Amended Complaint, ECF No. 222, is DENIED.

**IT IS SO ORDERED.**

Date: February 18, 2022 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT