# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| NICOLAS VALADEZ REY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:19-cv-00714-DGK |
| ) | |
| GENERAL MOTORS LLC, ) | |
| ) | |
| Defendant. ) | |

## ORDER GRANTING IN PART GM's MOTION TO EXCLUDE THE TESTIMONY OF LILA F. LAUX, Ph.D.

This lawsuit stems from a single-car accident that occurred on August 31, 2019, in Parras de la Fuente, Coahuila, Mexico. In the accident, a 2006 GMC Yukon XL driven by Plaintiff Nicolas Rey left the road and rolled over, collapsing the vehicle's roof, and leaving Mr. Rey paralyzed. Plaintiff alleges Defendant General Motors LLC ("GM") is responsible for his injuries because of a defective design of the roof. GM denies the allegations. The Court has held that the law of the Mexican state where the accident occurred, Coahuila, governs this dispute. Order Determining Choice of Law, ECF No. 172.

Now before the Court is GM's Motion to Exclude Expert Opinion Testimony of Lila F. Laux, Ph.D. ECF No. 114. For the following reasons, the motion is GRANTED IN PART, DENIED IN PART, and TAKEN UNDER ADVISEMENT.

Ms. Laux is an expert in human factors engineering who has a doctorate in Industrial Psychology with a specialization in Human Factors Engineering, which is essentially the study of warnings, labels, and instructions, and how to effectively communicate risk information to product purchasers and users. She has researched, taught, and published extensively in this field.

To establish a failure to warn claim at trial, Plaintiff intends to offer the following opinions from Dr. Laux:

1. Mr. Rey was part of the expected user population of the 2006 GMC Yukon Denali XL because he was a licensed adult.

2. A hazard such as the propensity to roll over is a latent hazard because it is undetectable by and invisible to many users. A latent hazard is a hazard that the user of the product is not aware of and cannot easily detect or recognize.

3. At the time the 2006 GMC Yukon Denali XL in this accident was manufactured, GM knew or should have known, that SUVs, including the Yukon, were dangerously prone to rollover accidents because of their dimensions.

4. At the time the 2006 GMC Yukon Denali XL in this accident was manufactured, GM knew or should have known, that there was a heightened risk of serious injury and death to occupants in a 2006 GMC Yukon Denali XL because of its rollover propensity.

5. GM knew, or should have known, that many consumers would not be aware of or understand that there was an increased risk of a rollover in an SUV, even in single vehicle accidents. The rollover risk is a latent hazard that the average consumer, who assumes that large vehicles like an SUV are safe, does not recognize and the industry does not publish or widely distribute to the public the rollover risk in SUVs.

6. GM failed to adequately alert and inform purchasers of the 2006 GMC Yukon Denali XL about the increased risk of a rollover accident when driving a 2006 GMC Yukon Denali XL and the risks of injury or death to occupants when a rollover occurs as it provided no such warnings anywhere (such as Owner's Manuals, at dealerships, on its website, etc.) for consumers.

7. At the time the 2006 GMC Yukon Denali XL in this accident was manufactured, GM knew or should have known that there was an unreasonable risk of injury or death due to roof collapse if the 2006

GMC Yukon Denali XL rolled over, posing a serious threat to occupants.

8. At the time the 2006 GMC Yukon Denali XL in this accident was manufactured, GM failed to alert and inform purchasers of their vehicles about the risk of roof crush in a rollover accident or that seatbelts cannot protect occupants in the front seat in the event of a roof crush.

9. At the time the 2006 GMC Yukon Denali XL in this accident was manufactured, GM knew or should have known, that there was an unreasonable risk of injury or death due to crushing in of the occupant compartment if the 2006 GMC Yukon Denali XL rolled over, posing a serious threat to occupants.

10. It was foreseeable to GMC that a driver of the 2006 GMC Yukon Denali XL could lose control and the vehicle run off the road if a tire failed. It was foreseeable to GM that the 2006 GMC Yukon Denali XL could go out of control and roll during this type of event.

11. At the time the 2006 GMC Yukon Denali XL in this accident was manufactured, GM knew, or should have known, that the seat belts provided with the 2006 GMC Yukon Denali XL would fail to protect the front seat occupants in the event of a roof crush such as happened in this case.

12. An appropriate warning to be placed in the 2006 GMC Yukon Denali XL Owner's Manual regarding the rollover and roof crush hazards would include:

    a. the signal word !WARNING! with the warning triangle in black on a safety orange surround, as indicated in ANSI Z535.4 Product Safety Signs and Labels.

    b. the information:

    **ROLLOVER AND CRUSH HAZARD**

    - This 2006 GMC Yukon Denali XL has a higher likelihood of a rollover than a sedan because of its high center of gravity and narrow wheelbase.

- If this 2006 GMC Yukon Denali XL rolls over in an accident, there is a high likelihood that the roof will crush/collapse into the occupant cabin.
- The seatbelts in this 2006 GMC Yukon Denali XL will not fully protect you from being injured or killed in a rollover accident because of the forces generated when rolling and the fact that the roof and the A and B pillars may not prevent the occupant compartment from being crushed.

This warning should be placed

- just prior to the Introduction
- at the beginning of the section Seating and Safety Restraints
- at the start of the section Maintenance and Care

13. The information described above should also have been placed on the GM website where GMC Yukon Denali XLs are described. GM dealerships and authorized used car sales facilities should have been provided with the warning information and trained and instructed to inform buyers and potential buyers of the hazard.

14. Purchasers and users of the 2006 GMC Yukon Denali XL should have been informed about the rollover hazards and risks associated with a rollover, including the fact that their seatbelts might not protect them, so that they could make an informed decision regarding the purchase and use of the 2006 GMC Yukon Denali XL. This could be accomplished by taking the steps outlined above. Adequate warnings with appropriate pictorials/symbols would have communicated the hazard information to Mr. Rey.

15. Vehicle owners' lack of understanding about the rollover and crush hazard in a rollover accident was foreseeable to GM at the time this vehicle was manufacture because they failed to alert purchasers/users of the hazard and their advertisements did not suggest such a hazard. They failed to provide this information to purchasers/users of the Denali.

16. GMC showed a complete disregard for the safety of occupants in the 2006 GMC Yukon Denali XL when they failed to adequately warn and inform potential purchasers and users of the 2006 GMC Yukon Denali XL about the foreseeable rollover and roof crush risk as well

> as the fact that seatbelts would not protect them if the roof above
> them intruded.
>
> 17. Had GM provided adequate information and warnings regarding the
> foreseeable and significant rollover and roof crush risk, it is likely
> that this accident would not have occurred. GM's failure to warn
> and instruct regarding the foreseeable and significant rollover and
> roof crush risk of the 2006 GMC Yukon Denali XL shows a total
> disregard for the safety of the driver, passengers in the vehicle, and
> the driving public.

Laux Expert Report 6-9, ECF No. 114-1.

Defendant moves to exclude all of Dr. Laux's testimony on the grounds that her opinions are: (1) irrelevant because Plaintiff and Ms. Quinn's own testimony establishes that additional warnings would not have stopped them from buying the vehicle; (2) unreliable because Plaintiff misapprehends the issues here by assuming the Yukon's stability and handling are at issue; and (3) go far beyond Dr. Laux's areas of expertise.

When the admissibility of expert testimony is challenged, the district court must make "a preliminary determination of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). The party seeking to introduce the expert's testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

Under Federal Rule of Evidence ("FRE") 702, a witness may give an expert opinion if:

> (a) the expert's scientific, technical or other specialized knowledge
> will help the trier of fact to understand the evidence or to determine
> a fact in issue; (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and (d) the expert has reliably applied the principles and methods to
> the facts of the case.

In other words, the proponent must show that the expert's opinions are relevant, the expert is qualified to offer them, and "the methodology underlying his conclusions is scientifically valid." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006). Doubts should be resolved in favor of admissibility. *Marmo*, 457 F.3d at 758.

The Eighth Circuit has repeatedly observed that, as a general rule, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility," but "if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded." *Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952 (8th Cir. 2014) (internal quotation marks omitted).

Defendant's first argument concerning relevance is unavailing. In his response, Plaintiff has cited deposition testimony (beyond the limited excerpts cited by Defendant in its motion) suggesting that Plaintiff and Ms. Quinn would not have bought the vehicle had they been sufficiently warned. So this portion of the motion objecting on the basis of relevance is overruled.

That said, the Court has serious doubts about a more fundamental issue here concerning relevance, namely whether Coahuilan law even recognizes a failure to warn claim.[1] The credible legal authority the Court has reviewed suggests Mexican law does not. *See, e.g.*, Jorge A. Vargas, *Mexican Law and Personal Injury Cases: An Increasingly Prominent Area for U.S. Legal Practitioners and Judges*, 8 San Diego Int'l L.J. 475, 521 n.72 (2007) ("In Mexico, for example, there is no notion of due care; no strict liability for manufacturing defects; no negligence liability for design and warning defects . . ."). Before the Court will permit Plaintiff to adduce any evidence solely relevant to a failure to warn claim, it will have to be convinced this is a viable claim under Coahuilan law.

---

[1] The Court notes Defendant filed the pending motion before the Court ruled that Coahuilan law applies to this dispute, so this argument was unavailable to them.

The Court takes Defendant's second argument, that Plaintiff is misapprehending the specific issues applicable to this design defect case, under advisement. Given that Coahuilan law, like all of Mexican law, is unsettled and undeveloped with respect to personal injury torts, the Court will refrain from ruling on this portion of the motion until the context for her testimony is established and Plaintiff offers specific testimony from her.

Defendant's third argument, that her testimony goes beyond her area of expertise, is granted in part. The majority of her proffered opinions go well beyond the scope of her expertise. For example, Opinion 7, "[a]t the time the 2006 GMC Yukon Denali XL in this accident was manufactured, GM knew or should have known that there was an unreasonable risk of injury or death due to roof collapse if the 2006 GMC Yukon Denali XL rolled over, posing a serious threat to occupants" requires specific expertise in the state of automobile design and engineering circa 2005 that Dr. Laux lacks. Accordingly, her Opinions numbered 3, 4, 6, 7, 9 –14, 16, and 17 are excluded on the basis that they are beyond her expertise. Opinions 1, 2, 5, and 15 are not excluded on this basis, but the Court reserves ruling on other issues which may result in their exclusion as well.

**IT IS SO ORDERED.**

Date: March 8, 2022          /s/ Greg Kays
                             GREG KAYS, JUDGE
                             UNITED STATES DISTRICT COURT