IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

NICOLAS VALADEZ REY,            )
                                )
            Plaintiff,           )
                                )   Case No.: 4:19-cv-00714-DGK
v.                              )
                                )
GENERAL MOTORS LLC,             )
                                )
            Defendant.           )

## ORDER GRANTING GM'S MOTION FOR SUMMARY JUDGMENT

This lawsuit stems from a single-car accident that occurred on August 31, 2019, in Parras de la Fuente, Coahuila, Mexico. In the accident, a 2006 GMC Yukon XL driven by Plaintiff Nicolas Rey left the road and rolled over, collapsing the vehicle's roof, and leaving Mr. Rey paralyzed. Plaintiff alleges Defendant General Motors LLC ("GM") is responsible for his injuries because of a defective design of the roof. GM denies the allegations.

On March 9, the Court held a pretrial conference with the parties during which the Court reiterated its rulings concerning Coahuilan. In its subsequent order, the Court observed that in light of its rulings and the arguably lack of a genuine dispute over certain material facts, this case might be capable of resolution without a trial. Order Regarding Potentially Dispositive Legal Issues at 3, ECF No. 264. On its own motion, the Court extended the deadline to file summary judgment motions. *Id*.

Now before the Court is GM's Motion for Summary Judgment on all remaining claims. ECF No. 267. Because GM has demonstrated it is entitled to judgment as a matter of law, the motion is GRANTED.[1]

---

[1] Obviously, the Court's ruling does not change the fact that Mr. Rey has suffered a terrible injury.

**Standard**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court makes this determination by viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).

**Material Undisputed Facts**

The Court finds the material undisputed facts to be as follows.[2]

On August 31, 2019, Plaintiff Nicolas Rey ("Plaintiff") was driving a 2006 GMC Yukon XL Denali ("the Yukon") in Parras De La Fuente, Coahuila, Mexico. The Yukon was involved in a single-vehicle rollover crash. Plaintiff alleges that a tire blowout caused the crash. Plaintiff sustained physical injuries in the crash, and alleges that defects in the design of the Subject Vehicle's roof/structures and restraint system caused his injuries.

The Yukon was designed and manufactured by General Motors Corporation, and

---

[2] The Court has limited these facts to those that are undisputed and material to the pending summary judgment motion. Excluded are legal conclusions, argument presented as fact, and proposed facts not properly supported by admissible evidence. The Court has also included inferences from undisputed material facts and facts the opposing party has not controverted properly. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

assembled on or about September 22, 2005 at a plant in Janesville, Wisconsin.

Motor vehicles sold in the United States are required to comply with Federal Motor Vehicle Safety Standards ("FMVSS"), which are prescribed by the National Highway Traffic Safety Administration ("NHTSA") pursuant to its authority from the National Traffic and Motor Vehicle Safety Act of 1966. Over the years, NHTSA has promulgated and updated FMVSS.

Although the Yukon was not required to comply with the then-existing FMVSS for roof strength (FMVSS 216 (Roof Crush Resistance)) because its Gross Vehicle Weight Rating ("GVWR") exceeded 6,000 lbs., the Yukon met and exceeded that standard. The Yukon's restraint system, including the driver's seatbelt system, also complied with all applicable FMVSS, including 201 (Occupant Protection in Interior Impact), 202 (Head Restraints), 208 (Occupant Crash Protection), 209 (Seat Belt Assemblies), and 210 (Seat Belt Assembly Anchorages).

## Discussion

**I. Plaintiff cannot establish an "illicit act," that is, Plaintiff cannot demonstrate that the Yukon's design violates any law or good custom.**

**A. The Yukon's design did not violate any governmental law or regulation.**

The Court previously held that the law of Coahuila, Mexico, applies to this case. Order Determining Choice of Law, ECF No. 172. Plaintiff then filed the Sixth Amended Complaint to plead his case in conformity with Coahuilan law. ECF No. 197. Plaintiff's Complaint contained two counts alleging essentially three claims: An "illicit act" claim and a "moral damages" claim brought pursuant to the Coahuila Civil Code ("CCC") styled as "Count I – Negligence & Damages Under the Coahuila Civil Code,"[3] and a loss of consortium claim brought by Plaintiff's spouse, Jessica Quinn, styled as "Count II – Jessica's Moral Damages Under Coahuila Law." *Id*.

---

[3] The Complaint also asserted a claim for "failure to warn." In light of the Court's application of Coahuilan law, however, that claim was abandoned. Order Regarding Potentially Dispositive Legal Issues at 1, ECF No. 264.

After the parties submitted various pleadings, briefs, and other filings related to Coahuilan law, the Court issued a series of orders applying Coahuilan to the facts of this case. The Court held that Coahuilan law did not recognize Ms. Quinn's loss of consortium claim and dismissed Count II with prejudice. Order Dismissing Count II of the Sixth Am. Compl. at 3, 7, ECF No. 239.

The Court then issued its order applying Coahuilan law to Plaintiff Rey's claims and the remaining issues in the case. Order on Coahuilan Law Applicable to This Case, ECF No. 243. The relevant parts of that order are as follows.

For an "illicit acts" claim, Art. 1851 of the CCC states: "He who acting illicitly causes damage to another is obliged to indemnify him, unless he can demonstrate that the damage was caused as a result of the inexcusable fault or negligence of the victim. An act is illicit according to the terms of Article 1806." Article 1806 provides:

> An illicit act is one that is contrary to the laws of public order or good customs. . . . all human acts, positive or negative, carried out with intent or fault, that cause damage to another person or his property are illicit acts. Intent consists of the intent to harm.
>
> 'Fault' means negligence, recklessness, incompetence, lack of foresight or care, and it shall be treated as such, unless expressly provided by law, according to the circumstances of the case.

Although they are separate causes of action and a moral damages claim has a heightened burden of proof, to prevail on a moral damages claim, a plaintiff must establish the predicate that the defendant committed an "illicit act." CCC, Art. 1895; Order on Coahuilan Law Applicable to This Case at 4-5.

As the Court previously explained, for Plaintiff to prevail on an "illicit acts" claim:

> . . . he must prove that GM's conduct in designing the 2006 GMC Yukon XL was contrary to applicable law or good custom. For

4

> example, Plaintiff must show that GM violated an automobile safety standard in effect at the time, either a standard prescribed by the Government, or some specific standard used by the automobile industry at the time the Yukon at issue was designed.

*Id*. at 3. Further, it must be a *specific* standard that was in effect at the time:

> The standard must be specific. It cannot be something amorphous like, what a reasonable person or what a reasonable automobile manufacturer would have done. Good custom is not an ambiguous standard that will be left to the collective wisdom of the jury to define, as Plaintiff urges.

*Id*. n.4. And "[i]f Plaintiff cannot show that GM's design conduct was contrary to law or good custom, then Plaintiff cannot prevail on his illicit acts claim against GM." *Id*. at 3.

There is no dispute that the design of the Yukon at issue did not violate any applicable governmental law or regulation. The remaining question then is did it violate any "good custom." The answer is no.

### B. The Yukon's design does not violate any "good custom."

As a threshold matter, the longer the Court looks at the concept of "good customs" under Mexican law, the less convinced it is that it should even attempt to apply "good customs" to the facts of this case because the concept is so ill-defined and underdeveloped. The Court agrees with very little in Plaintiff's brief except his observation that "[t]he truth is that 'good customs' does not seem well-defined anywhere." Resp. at 6, ECF No. 272. The Mexican Supreme Court has not shed much light on its meaning, and "the development of any sort of law in Mexico to cover products liability cases of action has been slow to appear." Resp. at 6-7.

That said, the Court applies the concept of "good customs" to this case as follows. "Good customs" means

> the concept of morality that prevails in a community, in a certain time and space. It is the general consensus of a certain social group

5

> on the morality of a certain practice or situation. It is not about individual morality, but about social morality. Nor is it that of a religious creed, but the consciousness that predominates as a common denominator on a theme or issue. Therefore, any conduct that the prevailing opinion condemns as immoral, that which is offensive to the public sense of morality and that, consequently, arouses reprobation, will be a violation of good customs; hence it is a notion that varies from one place and from one time to another.
>
> To be lawful, legal acts also must be consistent with good customs.

Manuel Bejarano Sánchez, OBLIGACIONES CIVILES 218 (6th ed. 2010). Applied to the facts here, the Court reads "general consensus of a certain social group" to be the automotive industry generally, including automotive engineers; "the morality of a certain practice or situation" to be some standard used by the automotive industry and automotive engineers that would be relevant to Plaintiff's accident; and "in a certain time and space" to be at the time the Yukon was designed.

Plaintiff cannot show that any such standard existed at the time the Yukon was designed. Plaintiff proposed standard is "the maintenance of an occupant's survival space . . . [which] requires the vehicle to be designed to maintain survival space which is the space between the occupant's head and the roof in the event of a rollover." Pls.' Br. on the Standard for the "Illicit Act" Claim at 3, ECF No. 265. But this is not a standard, it is a concept or goal. An automotive industry standard would state specifics, such as exactly how much headspace must remain after a rollover for a passenger of a given height or given percentage of the population. For example, the standard might require there be at least 2 inches of headspace left after the rollover for someone who is 5 feet 10 inches, or alternately, one inch of headspace left for 95% of the adult population. A standard would also define what a rollover is and how rollover testing is conducted. A standard would also define the class of rollover accidents to which it applies, such as rollovers beginning at 70 mph or less on a flat surface. Plaintiff's proposed "standard" does none of these things. Indeed,

the Complaint itself acknowledges that the term "survival space" is a "concept" which "applies to all manner of impacts, from rollovers to rear-end collisions, to front or side impacts." Sixth Am. Compl. ¶ 39.[4]

Plaintiff's experts have also testified that survival space is a concept, not an actual standard. Plaintiff's expert on automotive roofs and roof structures, Brian Herbst, P.E., testified in another automotive product liability case as follows:

> Q. How do you define occupant survival space, sir?
>
> A. Well, there are a lot of different ways to define that. It certainly is dependent on what crash mode you are looking at, what size occupants you are dealing with. But in general we are trying to maintain the space around the occupant such that they could survive a given crash.

Ex. E – Dep. of B. Herbst in *Hill v. Ford* at 43:22-44:3, ECF No. 267-5. Consistent with his testimony in that case, Mr. Herbst repeatedly referred in his expert report in this case to the "concept" of "survival space." For example, he wrote "[t]he survival space concept applies to all impact modes, including frontal, side, rear and rollover." Herbst Report at 10, ECF No. 146-4. In his deposition in this case he testified that survival space is part of a "systems approach" to designing a roof:

> Q. So, Mr. Herbst, we were talking about accident survival space here in the Franchini paper on Page 9 of your report. Did you have

---

[4] Paragraph 39 states in its entirety:

> Since the late 1960s, auto manufacturers have incorporated the *concept* of "survival space" or "non-encroachment zones" within the occupant compartment, which is not to be intruded upon in a rollover. It was during this time that manufacturers became aware of the need to limit intrusion into this space in order to prevent serious injury and death of vehicle occupants. It has long been acknowledged as fact that the risk of a head injury increases as headroom is reduced. But the *concept* of maintaining occupant survival space applies to all manner of impacts, from rollovers to rear-end collisions, to front or side impacts.

(Emphasis added.)

> a concept of how much survival space is enough? Is there a threshold that you use?
>
> A. I don't have -- well, it kind of depends on the design of the vehicle. So I think the non-encroachment zone or survival space needs to be a function of how you have the occupants seated in the vehicle, the anticipated occupants you expect in the vehicle. As well as, you know, it's a – it's a system's approach. It was rollover protection system [ . . . ]

Ex. D – Dep. of B. Herbst at 120:25-17, ECF No. 267-4. He also testified that "survival space" is something that "the new [FMVSS] standard actually incorporates this concept of keeping the roof off the head of the occupant" and that "they [NHTSA] incorporated it into the roof crush standard." *Id*. at 125:5-8, 126:4-5. As Defendant rightly notes, this is a general concept that can, and according to Mr. Herbst in some circumstances has been, used to help develop or inform actual laws or regulations. But standing alone, survival space is nothing more than a general concept or design philosophy.

Plaintiff's other experts hold similar views. Plaintiff's restraints expert, Stephen Syson, also refers to "survival space" as a "concept" in his report. Syson Report at 12, ECF No. 117-1.[5] Plaintiff's accident reconstructionist and biomechanic, Dr. Mariusz Ziejewski, Ph.D., testified last November in another product liability case that "[s]urvival space is not a phrase that has unique defined definition that I am aware of. It's not – that's all that I can tell you." Ex. F – Dep. of M. Ziejewski in *Tudor v. General Motors LLC* at 116:24-25, ECF No. 267-6.

Plaintiff's argument that "the concept or industry standard or good custom of designing roofs strong enough to maintain survival space has been acknowledged in the case law as a basis for design defect claims and acknowledged as such in courts across the country," is unavailing.

---

[5] Defendant asserts Mr. Syson also testified at his deposition in this case that survival space is a "philosophy" and he has "never tried a – to – you know, conceptualize exactly how it works in every vehicle." Syson Dep. at 119:4 – 120:6, ECF No. 117-2. That portion of the deposition is not in the record.

Resp. at 2-3. In all four of the cases cited by Plaintiff, the courts were applying American tort law, not the law of Coahuila, Mexico.

In short, Plaintiff's proposed standard of "survival space" is not a specific, measurable safety standard, which is what Coahuilan law requires. Because Plaintiff has not identified, and the Court cannot find, any industry standard that GM possibly violated here, there is no violation of any "good custom" here under Coahuilan law. Hence, GM is entitled to summary judgment on Plaintiff's "illicit act" and moral damages claims.

## II. All of Plaintiff's claims are barred by the affirmative defense of fortuity.

Even if Plaintiff could identify a good custom GM violated, the Court would still grant summary judgment. Plaintiff's contention that the rollover and loss of control was caused by a tire blowout is dispositive of his claims pursuant to the doctrine of fortuity. The affirmative defense of fortuity is set forth in three articles.

> ARTICLE 2229. A fortuitus event or force majeure is understood to be any foreseeable or unforeseeable event, occurring without human intervention, or with the intervention of one or more persons, determined or undetermined, that is also unavoidable, and by virtue of which the asset is lost or the fulfillment of the obligation is impossible.
>
> ARTICLE 2230. The impossibility of fulfilling the obligation, due to a fortuitous event or force majeure, must be absolute, so that neither the debtor nor any other person could perform the action due.
>
> ARTICLE 2307. No one shall be liable for a fortuitous event or force majeure except when he has caused or contributed to it, when he has expressly accepted such liability or when the law imposes it on him.

CCC Arts. 2229, 2230, 2307, ECF No. 207-1 at 6. In sum, under Coahuilan law, "[n]o one shall be liable for a fortuitous event . . . except when he has caused or contributed to it, when he has

9
Case 4:19-cv-00714-DGK   Document 277   Filed 03/14/22   Page 9 of 10

expressly accepted such liability or when the law imposes it on him." *Id*. And, as the Court recently reaffirmed, fortuitous events can be "foreseeable or unforeseeable." *Id*.; Order Regarding Potentially Dispositive Legal Issues at 3, ECF No. 264.

While not quite the poster child for a fortuitous event—a lightning strike is the best example—a tire blowout is a good example. Additionally, Plaintiff does not allege that GM caused or contributed to the tire blowout or otherwise caused him to lose control of the Yukon, that GM somehow accepted such liability, or that Coahuilan law imposed it on GM. Likewise, Plaintiff's attempt to Americanize the CCC by inserting a "crashworthiness" standard—that is, making a distinction between the cause of the crash and the cause of the injury—is unavailing. Mexican law makes no such distinction. Under Coahuilan law, the direct cause of Plaintiff's injuries was the accident caused by the tire blowout, not a design choice related to Yukon's roof system made more than fifteen years ago.

Thus, Plaintiff's claims are also barred under Coahuilan law by the doctrine of fortuity.

## Conclusion

For the reasons discussed above, the Court holds GM is entitled to judgment as a matter of law on the remaining claims. GM's motion for summary judgment, ECF No. 267, is GRANTED.

**IT IS SO ORDERED.**

Date: March 14, 2022  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT